IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RUBICELA RAMIREZ and FRANCISCO GONZALES, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 2:18-CV-107-D-BR |
| JAMES KILLIAN, a.k.a. "JR Killian" and KENT RILEY, | § § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT KENT RILEY'S MOTION TO DISMISS**

Before the Court is the Motion to Dismiss filed by Defendant Kent Riley ("Sheriff Riley"). [ECF 7]. Plaintiffs Rubicela Ramirez and Francisco Gonzales ("Plaintiffs") filed a Response to the Motion, [ECF 10], to which Sheriff Riley filed a Reply, [ECF 11]. This Court has reviewed all the arguments of the parties set forth in these documents, as well as the Plaintiffs' complaint. For the reasons explained below, the Court recommends that the Motion to Dismiss be GRANTED in part and DENIED in part.[1]

**I. FACTUAL AND PROCEDURAL HISTORY OF THE PLAINTIFFS' CLAIMS**

**A. FACTUAL OVERVIEW OF THE COMPLAINT**

According to the complaint, the Plaintiffs were at their home located in Collingsworth County, Texas, on the evening of June 20, 2016, "watching television in their bedroom." [ECF

---

[1] The Court notes that under the Rule 16 Scheduling Order established in this case, the deadline for any motion for summary judgment on the issue of qualified immunity is no later than ninety (90) days after a party asserts the defense of qualified immunity in an answer or other pleading in lieu of an answer. [ECF 17].

1]. That same evening, Defendant James Killian ("Deputy Killian")[2] entered the Plaintiffs' home "without a warrant or probable cause" and "with his gun drawn and pepper spray in the other hand." *Id.* Deputy Killian directed profanities and insults at the Plaintiffs, pepper sprayed the Plaintiffs, shot the Plaintiffs' two dogs, and ordered the Plaintiffs to their knees. The Plaintiffs "compl[ied]" and got on their knees. *Id.* The Plaintiffs "ask[ed] what [was] going on" because they were "surprised" and "dumbfounded" by Deputy Killian's actions. *Id.* Ten minutes later, Deputy Killian handcuffed the Plaintiffs and sat them on the living room couch. The Plaintiffs "plea[ded] for help" because their eyes were burning from the pepper spray and again asked Deputy Killian "what [was] going on." *Id.*

Soon thereafter, Sheriff Riley arrived at the Plaintiffs' home and entered the living room. Although the Plaintiffs requested medical attention "several times," Deputy Killian and Sheriff Riley "den[ied]" the Plaintiffs medical attention. *Id.* While in the living room, Sheriff Riley witnessed Deputy Killian "bang" Ramirez's head against the floor and "d[id] nothing to stop him." *Id.* Sheriff Riley then transported Plaintiff Gonzales to the police station in his vehicle while Deputy Killian separately transported Plaintiff Ramirez to the police station in his vehicle. After entering Deputy Killian's vehicle, Ramirez asked Deputy Killian to "take her to the hospital" and "remove her hair from her face so she c[ould] breathe." *Id.* In response, Deputy Killian "shove[d]" Ramirez and "stab[bed] her ribs with his keys." *Id.* The Plaintiffs arrived at the police station thirty minutes after Deputy Killian had first entered the Plaintiffs' home without having received "any medical attention" and remained in jail for twenty-four hours. *Id.*

Deputy Killian "provid[ed] false information" in the Plaintiffs' arrest report, and the

---

[2] Deputy Killian has also filed a Motion to Dismiss. [ECF 15]. The Court will issue a separate Findings, Conclusions, and Recommendation regarding Deputy Killian's Motion.

Collingsworth County Sheriff's Office "charged" the Plaintiffs with "Interference with Public Duties" misdemeanors. *Id.* "These charges have yet to be accepted by the Collingsworth [County] District Attorney's Office." *Id.* In sum, the Plaintiffs were searched, seized, and arrested without a warrant or probable cause, physically, mentally, emotionally, and financially harmed, denied medical attention, and prosecuted based on "facts" that the officers "knew were untrue." *Id.*

### B. PROCEDURAL HISTORY OF THE CASE

On June 7, 2018, the Plaintiffs filed their complaint. Summonses were subsequently issued as to Sheriff Riley and Deputy Killian. On July 11, 2018, Sheriff Riley filed the Motion to Dismiss before the Court.

## II. THE PLAINTIFFS' CLAIMS FOR RELIEF IN THE COMPLAINT

The Plaintiffs make five claims in their complaint against Sheriff Riley under 42 U.S.C. section 1983:

(1) conspiracy to violate the Plaintiffs' Fourth and Fourteenth Amendment rights [ECF 1 at ¶¶ 37, 57];

(2) unreasonable search and seizure/false arrest in violation of the Plaintiffs' Fourth and Fourteenth Amendment rights [ECF 1 at ¶¶ 38-39, 57-59];

(3) use of excessive force against Ramirez in violation of her Fourth and Fourteenth Amendment rights [ECF 1 at ¶¶ 33, 45-55];

(4) failure to intervene against the use of excessive force by Deputy Killian in violation of the Fourth and Fourteenth Amendments [ECF 1 at ¶¶ 33, 45, 69-71]; and

(5) deliberate indifference to the medical needs of the Plaintiffs in violation of the Fourteenth Amendment [ECF 1 at ¶¶ 35, 49, 63-67].

The Plaintiffs bring their claims against Sheriff Riley in both his individual and official capacities.

To the extent that the Plaintiffs allege within the second, third, and fourth claims of their complaint that Sheriff Riley violated the Plaintiffs' Fourteenth Amendment substantive due process rights, such allegations are misplaced. The Supreme Court established what is known as the "more-specific provision rule" in *Graham v. Connor*, 490 U.S. 386 (1989). *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). Under *Graham*'s more-specific provision rule, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* at 842 (alteration in original). "*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *United States v. Wallace*, 885 F.3d 806, 810 (5th Cir. 2018) (alteration in original) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). A "Fourth Amendment seizure" occurs "when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) (emphasis omitted). An "arrest" is "the quintessential 'seizure of the person' under [the] Fourth Amendment." *California v. Hodari D.*, 499 U.S. 621, 624 (1991). Here, the

Plaintiffs' second, third, and fourth claims—unreasonable search and seizure/false arrest, excessive force, and failure to intervene—all arise in the context of the Plaintiffs' search and seizure/arrest. Therefore, because the Plaintiffs' second, third, and fourth claims are specifically covered by the Fourth Amendment, *Graham*'s more-specific provision rule forecloses the application of a substantive due process analysis to the claims.[3]

### III. STANDARD OF REVIEW

Sheriff Riley has moved to dismiss the Plaintiffs' claims against him under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides that a defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion to dismiss, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "However, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.' " *Ruiz v. Brennan*, 851 F.3d 464, 471 n.5 (5th Cir. 2017) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

---

[3] The Court notes that there are no facts in the complaint to show a post-trial deprivation or any liberty interest with regard to procedural due process.

possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . ."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

## IV. <u>ANALYSIS</u>

The Court's Rule 12(b)(6) analysis is divided in two parts. First, the Court addresses whether the Plaintiffs' official capacity claims are sufficiently pleaded to survive Sheriff Riley's motion to dismiss for failure to state a claim upon which relief can be granted. Second, the Court addresses whether the Plaintiffs' individual capacity claims are sufficiently pleaded to survive a motion to dismiss for failure to state a claim.

### A. OFFICIAL CAPACITY CLAIMS

"Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)). "Thus, 'an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity.' " *Id.* (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)).

"Under the decisions of the Supreme Court and [the Fifth Circuit], [local government] liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694).

> An official policy is defined as (1) "[a] policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [local government's] lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority" or (2) "[a] persistent, widespread practice of [local government] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [local government] policy."

*Estate of Shane G. Sorrells v. City of Dallas*, 45 F. App'x 325, 2002 WL 1899592, at *4 (5th Cir. 2002) (first and third alterations in original) (table) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984)); *accord Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003).

"When a plaintiff sues a county or municipal official in her official capacity, the county or municipality is liable for the resulting judgment and, accordingly, may control the litigation on behalf of the officer in her official capacity. A suit against the Sheriff in his official capacity is a suit against the County." *Bennett v. Pippin*, 74 F.3d 578, 584 (5th Cir. 1996). Claims against local government officials in their official capacities are properly dismissed when they are duplicative of claims against the local government entity itself. *See, e.g.*, *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (affirming district court's dismissal under Rule 12(b)(6) of official capacity claims against municipal officers as duplicative of the claims against the governmental entities); *Palo ex rel. Estate of Palo v. Dallas Cty.*, No. 3:05-CV-0527-D, 2006 WL 3702655, at *8 (N.D. Tex. Dec. 15, 2006) (dismissing section 1983 claims against sheriff sued in her official capacity as duplicative of claims against county).

As an initial matter, the Court accepts the County's argument that the Plaintiffs' claim against Sheriff Riley in his official capacity—i.e., the Plaintiffs' claim against the County—should be dismissed because the Plaintiffs have failed to allege facts within their complaint that would plausibly support a local government liability claim under section 1983. Nothing within the complaint alleges that Sheriff Riley was a policymaker or that an official policy of any kind existed in the Sheriff's office. Tellingly, the complaint does not even mention the words policy, practice, or custom. It is therefore recommended that the official capacity claim as against Sheriff Riley be dismissed.

The Court also accepts the County's argument that the Plaintiffs' claim against Deputy Killian in his official capacity should be dismissed because the claim is redundant and duplicative of the Plaintiffs' official capacity claim against Sheriff Riley.[4] It is therefore recommended that the official capacity claim as against Deputy Killian be dismissed.

## B. INDIVIDUAL CAPACITY CLAIMS

### 1. CONSPIRACY

"To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.' " *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)). "In the context of § 1983, '[t]he elements of civil conspiracy are (1) an actual

---

[4] The Court notes that it is addressing the official capacity claim against Deputy Killian in this Findings, Conclusions, and Recommendation because: (1) claims against Deputy Killian in his official capacity are the same as claims against Collingsworth County and (2) the County may control the litigation on behalf of Deputy Killian in his official capacity. *See Goodman.*, 571 F.3d at 395 ("Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " (quoting *Monell*, 436 U.S. at 690 n.55); *Bennett v. Pippin*, 74 F.3d at 584 ("When a plaintiff sues a county or municipal official in her official capacity, the county or municipality is liable for the resulting judgment and, accordingly, may control the litigation on behalf of the officer in her official capacity. A suit against the Sheriff in his official capacity is a suit against the County.").

violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Morris v. Bria*, No. 7:17-CV-034-O-BP, 2018 WL 2436724, at *10 (N.D. Tex. May 30, 2018) (alteration in original) (quoting *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999), *abrogated on other grounds by Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003)). "In pleading a conspiracy, plaintiffs 'must plead the operative facts upon which their claim is based. Mere conclusory allegations are insufficient.' " *Ellis v. Crawford*, No. CIV.A. 3:03CV2416D, 2005 WL 525406, at *28 (N.D. Tex. Mar. 3, 2005) (quoting *Holdiness v. Stroud*, 808 F.2d 417, 424 (5th Cir. 1987)). "A bald allegation that a conspiracy exists, unsupported by any factual allegations, is insufficient." *Thomas v. State*, 294 F. Supp. 3d 576, 610 (N.D. Tex. 2018) (citing *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987)).

The Plaintiffs allege within their complaint that Sheriff Riley conspired with Deputy Killian to violate the Plaintiffs' Fourth and Fourteenth Amendment rights. However, this bald, conclusory allegation fails to survive the procedural hurdle of Rule 12(b)(6). Even assuming for purposes of the conspiracy allegations that Sheriff Riley violated the Plaintiffs' Fourth and Fourteenth Amendment rights, nothing within the complaint suggests that Sheriff Riley agreed to undertake a scheme with Deputy Killian to deprive the Plaintiffs of their constitutional rights. For example, the Plaintiffs do not allege that Sheriff Riley was aware of Deputy Killian's actions prior to entering the Plaintiffs' home. Nor do the Plaintiffs allege that Sheriff Riley coordinated with Deputy Killian to cover up Deputy Killian's actions—or Sheriff Riley's actions—before, during, or after the Plaintiffs' search and seizure/arrest. Viewing the complaint in the light most favorable to the Plaintiffs, the Plaintiffs have simply failed to allege facts that would plausibly

support a claim of conspiracy. It is therefore recommended that the conspiracy claim be dismissed.

## 2. UNREASONABLE SEARCH AND SEIZURE/FALSE ARREST

"The Fourth Amendment clearly protects people from unreasonable searches and seizures within their homes." *United States v. Paige*, 136 F.3d 1012, 1017 (5th Cir. 1998). "It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.' " *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 134 S. Ct. 2473, 2482 (2014). "A search conducted pursuant to consent is one of the well-settled exceptions to the Fourth Amendment's warrant requirement." *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997). "A search conducted pursuant to probable cause and exigent circumstances is [another well-settled] exception to the Fourth Amendment's warrant requirement." *United States v. Morales*, 171 F.3d 978, 981 (5th Cir. 1999).

The Fifth Circuit has provided guidance on what constitutes consent, probable cause, and exigent circumstances in the Fourth Amendment context. The Fifth Circuit has explained that:

- "[t]he police may search without a warrant when they have [voluntary] consent to do so from a person with authority to give consent," *United States v. Ibarra*, 948 F.2d 903, 906 (5th Cir. 1991);

- "[p]robable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense,' " *Childers v. Iglesias*, 848 F.3d 412, 414 (5th Cir. 2017) (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004)); and

- "[a]s a general rule, exigent circumstances exist when there is a genuine risk that officers or innocent bystanders will be endangered, that suspects will escape, or that evidence will be destroyed if entry is delayed until a warrant

can be obtained," *United States v. Menchaca-Castruita*, 587 F.3d 283, 289 (5th Cir. 2009).

The Plaintiffs allege within their complaint that they were unreasonably searched and seized/falsely arrested by Sheriff Riley in violation of the Fourth Amendment. However, this allegation fails to plausibly state a claim against Sheriff Riley. It is readily apparent from the face of the complaint that the Plaintiffs were searched and seized/arrested by Deputy Killian—not by Sheriff Riley. By the time that Sheriff Riley arrived at the Plaintiffs' home and entered the living room, Deputy Killian had already subdued the Plaintiffs with pepper spray and detained them with handcuffs. The only assistance that Sheriff Riley allegedly provided at the scene of the search and seizure/arrest was to transport Plaintiff Gonzales to the police station in his vehicle. Moreover, even assuming that Deputy Killian lacked the authority to search and seize/arrest the Plaintiffs, nothing within the complaint suggests that Sheriff Riley knew or reasonably should have known of that fact when he entered the Plaintiffs' home to assist Deputy Killian.[5] It is therefore recommended that the unreasonable search and seizure/false arrest claim be dismissed sua sponte.[6]

### 3. EXCESSIVE FORCE

To prevail on a Fourth Amendment excessive-force claim under section 1983, a plaintiff must show:

(1) "an injury;"

(2) "that the injury resulted directly from the use of excessive force;" and

(3) "that the excessiveness of the force was unreasonable."

---

[5] This conclusion is contingent upon the dismissal of the conspiracy claim.
[6] The Court sua sponte recommends the dismissal of the unreasonable search and seizure/false arrest claim under Rule 12(b)(6). The Court notes that the fourteen-day time frame for filing objections to a recommended dismissal provides the Plaintiffs with notice and an opportunity to respond to the Court's sua sponte recommendation. *E.g.*, *Thomas v. State*, 294 F. Supp. 3d 576, 619 (N.D. Tex. 2018).

*Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)). As to the first element, "A plaintiff alleging an excessive force violation must show that she has suffered 'at least some injury.' " *Flores v. City of Palacios*, 381 F.3d 391, 397 (5th Cir. 2004) (quoting *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993)).

> Although a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances. *Any* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only. Consequently, only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment. In short, as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force.

*Sam v. Richard*, 887 F.3d 710, 713 (5th Cir. 2018) (quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017)).

> The second and third elements collapse into a single objective-reasonableness inquiry, *see Scott v. Harris*, 550 U.S. 372, 381 (2007), guided by the following *Graham* factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (quoting *Graham*, 490 U.S. at 396).

The Plaintiffs allege within their complaint that Sheriff Riley used excessive force against Ramirez in violation of the Fourth Amendment by failing to intervene against the use of excessive force by Deputy Killian. Deputy Killian allegedly used excessive force by:

(1) pepper spraying both of the Plaintiffs;

(2) banging Ramirez's head against the living room floor; and

(3) stabbing Ramirez in the ribs with a pair of keys while transporting her in the

>Deputy's vehicle.

[ECF 1 at 3-4]. Viewing the complaint in the light most favorable to the Plaintiffs, Sheriff Riley only witnessed the second alleged use of excessive force. But the Plaintiffs confuse their excessive force claim with a failure to intervene claim, which the Court addresses below. Regardless of whether Sheriff Riley failed to intervene against the alleged use of excessive force by Deputy Killian, nothing within the complaint suggests that Sheriff Riley injured Ramirez in any manner whatsoever. It is therefore recommended that the excessive force claim be dismissed.

### 4. FAILURE TO INTERVENE

"[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). To establish a failure to intervene claim under section 1983, a plaintiff must allege that an officer:

>(1) "knew that a fellow officer violated an individual's constitutional rights";

>(2) "had a reasonable opportunity to prevent the harm"; and

>(3) "chose not to act."

*Garrett v. Crawford*, No. SA-15-CV-261-XR, 2016 WL 843391, at *9 (W.D. Tex. Mar. 1, 2016) (citing *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)).

The Plaintiffs allege within their complaint that Sheriff Riley failed to intervene against the use of excessive force by Deputy Killian in violation of the Fourth Amendment. This allegation fails to survive Sheriff Riley's 12(b)(6) motion to dismiss with respect to the Plaintiffs' exposure to pepper spray and Ramirez's possible head injury because the Plaintiffs fail to allege that Sheriff Riley knew that Deputy Killian had violated either of the Plaintiffs'

constitutional rights prior to entering the Plaintiffs' home and witnessing the head banging.[7] However, the Plaintiffs' allegation survives Sheriff Riley's motion to dismiss with respect to Ramirez's possible ribs injury. The Plaintiffs allege that Sheriff Riley personally observed Deputy Killian bang Ramirez's head against the living room floor while she was handcuffed—an act of harm that any reasonable officer should know was unconstitutionally excessive absent unique circumstances.[8] Observing this particular alleged act of harm would have: (1) placed Sheriff Riley on notice that Deputy Killian might further violate Ramirez's constitutional rights if given the opportunity and (2) called into question the reasonableness of the deployment of pepper spray by Deputy Killian prior to Sheriff Riley's arrival.[9] Nevertheless, Sheriff Riley left Deputy Killian alone with Ramirez in Deputy Killian's vehicle and, as a result, Deputy Killian allegedly used excessive force by stabbing Ramirez in the ribs with a pair of keys on the way to the police station. Sheriff Riley thus cannot escape the allegation that he had a reasonable opportunity to act to prevent Deputy Killian from further violating Ramirez's constitutional rights, yet declined to do so. *See Whitley*, 726 F.3d at 648 (rejecting a bystander liability claim as to two police officers in part because "they acted reasonably in attempting to stop [another police officer] from *further* abusing [the Plaintiff] and other minors" (emphasis added)); c*f. O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (explaining in the context of a failure to intercede claim that although a police officer had "no realistic opportunity" to prevent the beating of the victim by his fellow officers, he could be found liable "[w]ith respect to the subsequent dragging of [the victim] across the floor" by another officer because "[h]aving seen the victim beaten, he was alerted to the need to protect [the victim] from further abuse"). It is therefore recommended

---

[7] This conclusion is also contingent upon the dismissal of the conspiracy claim.
[8] For example, nothing within the complaint suggests that Deputy Killian reasonably acted out of concern for his own safety.
[9] Even though Sheriff Riley was not present when Deputy Killian used the pepper spray, the Sheriff was present when the Plaintiffs complained of the effects of the spray.

that the motion to dismiss the failure to intervene claim be granted as to the Plaintiffs' exposure to pepper spray, granted as to Ramirez's possible head injury, but denied as to Ramirez's possible ribs injury.

### 5. DELIBERATE INDIFFERENCE

"After the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pretrial detainee, derives from the Fourteenth Amendment." *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996); *see Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998) (explaining that "once an arrest is complete, pretrial detainees are protected by the due process clause of the Fifth or Fourteenth Amendments"). "A pretrial detainee's right to medical care is violated if 'an officer acts with deliberate indifference to a substantial risk of serious medical harm and resulting injuries.' " *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011) (quoting *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003)). Deliberate indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee means that:

> (1) "the official was aware of facts from which an inference of substantial risk of serious harm could be drawn;"
>
> (2) "the official actually drew that inference;" and
>
> (3) "the official's response indicates the official subjectively intended that harm occur."

*Thompson v. Upshur Cty., TX*, 245 F.3d 447, 458-59 (5th Cir. 2001) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 643, 649-50 (5th Cir. 1996)). "To reach the level of deliberate indifference, official conduct must be 'wanton,' which is defined to mean 'reckless.' " *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (quoting *Johnson v. Treen*,

759 F.2d 1236, 1238 (5th Cir. 1985)). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference." *Id.* (quoting *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

The Plaintiffs allege within their complaint that Sheriff Riley was deliberately indifferent to the medical needs of the Plaintiffs in violation of the Fourteenth Amendment. However, this allegation fails to survive Sheriff Riley's 12(b)(6) motion to dismiss with respect to the Plaintiffs' exposure to pepper spray. This Court cannot conclude that Sheriff Riley was plausibly aware of facts from which could be drawn an inference that the Plaintiffs were at a substantial risk of serious harm from the exposure to pepper spray because the Plaintiffs have not alleged that they suffered any symptoms from the pepper spray that might suggest a serious injury. To the contrary, the Plaintiffs merely allege that the pepper spray caused a burning sensation of indeterminate intensity and length. *See generally Byrd v. Harrell*, No. 6:14CV986, 2017 WL 3633773, at *3 (E.D. Tex. Aug. 23, 2017) (explaining that "the effects of pepper spray normally wear off in about an hour and a half"). Similarly, the Plaintiffs' allegation fails to survive Sheriff Riley's motion to dismiss with respect to Ramirez's possible head injury. The Court acknowledges that head injuries can be serious. But this Court cannot conclude that Sheriff Riley was plausibly aware of facts from which could be drawn an inference that Ramirez was at a substantial risk of serious harm from the head banging because the Plaintiffs have not alleged any factual details about the possible head injury. *See Dyer v. City of Mesquite*, No. 3:15-CV-2638-B, 2016 WL 2346740, at *4 (N.D. Tex. May 3, 2016) ("There is a broad spectrum of head injuries, and not all of them require immediate treatment.").[10] Nor can this Court

---

[10] The Plaintiffs state in their response brief that "[t]he banging of [Ramirez's] head against the floor caused her to get a black eye and her face to swell up." [ECF 10]. However, the Plaintiffs' statement is not properly presented for this Court's consideration because no such allegation is contained within the four corners of the complaint. *See Samaratunga Family Tr. v. Am. Tower, Inc.*, No. A-17-CV-097 LY, 2017 WL 2274491, at *5 (W.D. Tex. May 24, 2017) (explaining that "in deciding

conclude that Sheriff Riley was plausibly aware of facts from which could be drawn an inference that Ramirez was at a substantial risk of serious harm from the key stabbing because the Plaintiffs have not alleged any factual details about the possible ribs injury. It is therefore recommended that the deliberate indifference claim be dismissed.

## V. RECOMMENDATION

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion to Dismiss [ECF 7] filed by Sheriff Riley be GRANTED in part and DENIED in part. Specifically, it is the RECOMMENDATION of the Magistrate Judge that the Motion to Dismiss be GRANTED as to the official capacity claim as against Sheriff Riley, GRANTED as to the official capacity claim as against Deputy Killian, GRANTED as to the individual capacity claims of conspiracy, excessive force, failure to intervene as to the Plaintiffs' exposure to pepper spray and Ramirez's possible head injury, and deliberate indifference as against Sheriff Riley, and DENIED as to the individual capacity claim of failure to intervene as to Ramirez's possible ribs injury as against Sheriff Riley. It is further RECOMMENDED that the individual capacity claim of unreasonable search and seizure/false arrest be DISMISSED sua sponte as against Sheriff Riley.

---

a motion to dismiss, the Court is limited to the four corners of the complaint, and any attachments incorporated into the complaint").

## VI. INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED November 5, 2018.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). *Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed* as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).