

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RUBICELA RAMIREZ and FRANCISCO GONZALES, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 2:18-CV-107-D-BR |
| JAMES KILLIAN, a.k.a. "JR Killian" and KENT RILEY, | § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT JAMES KILLIAN'S MOTION TO DISMISS**

Before the Court is the Motion to Dismiss filed by Defendant James Killian ("Deputy Killian"). [ECF 15]. Plaintiffs Rubicela Ramirez and Francisco Gonzales ("Plaintiffs") filed a Response to the Motion, [ECF 19], to which Deputy Killian filed a Reply, [ECF 20]. This Court has reviewed all the arguments of the parties set forth in these documents, as well as the Plaintiffs' complaint. For the reasons explained below, the Court recommends that the Motion to Dismiss be GRANTED in part and DENIED in part.[1]

## I. FACTUAL AND PROCEDURAL HISTORY OF THE PLAINTIFFS' CLAIMS

### A. FACTUAL OVERVIEW OF THE COMPLAINT

According to the complaint, the Plaintiffs were at their home located in Collingsworth County, Texas, on the evening of June 20, 2016, "watching television in their bedroom." [ECF

---

[1] The Court notes that under the Rule 16 Scheduling Order established in this case, the deadline for any motion for summary judgment on the issue of qualified immunity is no later than ninety (90) days after a party asserts the defense of qualified immunity in an answer or other pleading in lieu of an answer. [ECF 17].

1]. That same evening, Deputy Killian entered the Plaintiffs' home "without a warrant or probable cause" and "with his gun drawn and pepper spray in the other hand." *Id.* Deputy Killian directed profanities and insults at the Plaintiffs, pepper sprayed the Plaintiffs, shot the Plaintiffs' two dogs, and ordered the Plaintiffs to their knees. The Plaintiffs "compl[ied]" and got on their knees. *Id.* The Plaintiffs "ask[ed] what [was] going on" because they were "surprised" and "dumbfounded" by Deputy Killian's actions. *Id.* Ten minutes later, Deputy Killian handcuffed the Plaintiffs and sat them on the living room couch. The Plaintiffs "plea[ded] for help" because their eyes were burning from the pepper spray and again asked Deputy Killian "what [was] going on." *Id.*

Soon thereafter, Defendant Kent Riley ("Sheriff Riley")[2] arrived at the Plaintiffs' home and entered the living room. Although the Plaintiffs requested medical attention "several times," Deputy Killian and Sheriff Riley "den[ied]" the Plaintiffs medical attention. *Id.* While in the living room, Sheriff Riley witnessed Deputy Killian "bang" Ramirez's head against the floor and "d[id] nothing to stop him." *Id.* Sheriff Riley then transported Plaintiff Gonzales to the police station in his vehicle while Deputy Killian separately transported Plaintiff Ramirez to the police station in his vehicle. After entering Deputy Killian's vehicle, Ramirez asked Deputy Killian to "take her to the hospital" and "remove her hair from her face so she c[ould] breathe." *Id.* In response, Deputy Killian "shove[d]" Ramirez and "stab[bed] her ribs with his keys." *Id.* The Plaintiffs arrived at the police station thirty minutes after Deputy Killian had first entered the Plaintiffs' home without having received "any medical attention" and remained in jail for twenty-four hours. *Id.*

---

[2] Sheriff Riley has also filed a Motion to Dismiss. [ECF 7]. The Court has issued a separate Findings, Conclusions, and Recommendation regarding Sheriff Riley's Motion.

Deputy Killian "provid[ed] false information" in the Plaintiffs' arrest report, and the Collingsworth County Sheriff's Office "charged" the Plaintiffs with "Interference with Public Duties" misdemeanors. *Id.* "These charges have yet to be accepted by the Collingsworth [County] District Attorney's Office." *Id.* In sum, the Plaintiffs were searched, seized, and arrested without a warrant or probable cause, physically, mentally, emotionally, and financially harmed, denied medical attention, and prosecuted based on "facts" that the officers "knew were untrue." *Id.*

## B. PROCEDURAL HISTORY OF THE CASE

On June 7, 2018, the Plaintiffs filed their complaint. Summonses were subsequently issued as to Sheriff Riley and Deputy Killian. On September 17, 2018, Deputy Killian filed the Motion to Dismiss before the Court.

## II. <u>THE PLAINTIFFS' CLAIMS FOR RELIEF IN THE COMPLAINT</u>

The Plaintiffs make five claims in their complaint against Deputy Killian under 42 U.S.C. section 1983:

(1) conspiracy to violate the Plaintiffs' Fourth and Fourteenth Amendment rights [ECF 1 at ¶¶ 37, 57];

(2) unreasonable search and seizure/false arrest in violation of the Plaintiffs' Fourth and Fourteenth Amendment rights [ECF 1 at ¶¶ 31, 38-39, 57-59];

(3) use of excessive force in violation of the Plaintiffs' Fourth and Fourteenth Amendment rights [ECF 1 at ¶¶ 32, 43-55];

(4) providing false information in the Plaintiffs' arrest report in violation of the Fourteenth Amendment [ECF 1 at ¶ 34]; and

(5) deliberate indifference to the medical needs of the Plaintiffs in violation of the Fourteenth Amendment [ECF 1 at ¶¶ 35, 49, 63-67].

The Plaintiffs bring their claims against Deputy Killian in both his individual and official capacities.[3]

To the extent that the Plaintiffs allege within the second and third claims of their complaint that Deputy Killian violated the Plaintiffs' Fourteenth Amendment substantive due process rights, such allegations are misplaced. The Supreme Court established what is known as the "more-specific provision rule" in *Graham v. Connor*, 490 U.S. 386 (1989). *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). Under *Graham*'s more-specific provision rule, "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* at 842 (alteration in original). "*Graham* simply requires that if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997).

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable." *United States v. Wallace*, 885 F.3d 806, 810 (5th Cir. 2018) (alteration in original) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)). A "Fourth Amendment seizure" occurs "when there is a governmental termination of

---

[3] The Court notes that because claims against Deputy Killian in his official capacity are the same as claims against Collingsworth County, it has recommended the dismissal of the official capacity claim against Deputy Killian in the separate Findings, Conclusions, and Recommendation issued regarding Sheriff Riley's Motion to Dismiss. [ECF 21 at IV.A.]; *see Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009) ("Personal-capacity suits seek to impose liability upon a government official as an individual while official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent.' " (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)).

freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) (emphasis omitted). An "arrest" is "the quintessential 'seizure of the person' under [the] Fourth Amendment." *California v. Hodari D.*, 499 U.S. 621, 624 (1991). Here, the Plaintiffs' second and third claims—unreasonable search and seizure/false arrest and excessive force—all arise in the context of the Plaintiffs' search and seizure/arrest. Therefore, because the Plaintiffs' second and third claims are specifically covered by the Fourth Amendment, *Graham*'s more-specific provision rule forecloses the application of a substantive due process analysis to the claims.[4]

## III. <u>STANDARD OF REVIEW</u>

Deputy Killian has moved to dismiss the Plaintiffs' claims against him under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) provides that a defendant may file a motion to dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a Rule 12(b)(6) motion to dismiss, the Court "accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Const. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "However, 'conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.' " *Ruiz v. Brennan*, 851 F.3d 464, 471 n.5 (5th Cir. 2017) (quoting *Jones v. Alcoa, Inc.*, 339 F.3d 359, 362 (5th Cir. 2003)).

---

[4] The Court notes that there are no facts in the complaint to show a post-trial deprivation or any liberty interest with regard to procedural due process.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . ."). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Iqbal*, 556 U.S. at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

Deputy Killian has also moved to dismiss the Plaintiffs' claims against him based on the defense of qualified immunity. When a Rule 12(b)(6) motion attacks the sufficiency of the complaint and raises qualified immunity as a defense, the Court must first determine whether the claims within the complaint are sufficiently pleaded before addressing the defense of qualified immunity. *See Peña v. City of Rio Grande City*, 879 F.3d 613, 618 (5th Cir. 2018) ("We have outlined the proper procedural framework for addressing § 1983 claims at the pleading stage. Regardless of whether [qualified immunity] is asserted, a district court must first 'determine whether the plaintiff has "file[d] a short and plain statement of his complaint, a statement that rests on more than conclusions alone." ' " (second alteration in original) (quoting *Anderson v. Valdez*, 845 F.3d 580, 589 (5th Cir. 2016)); *Anderson v. Valdez*, 845 F.3d at 590, 599 (evaluating whether the complaint had sufficiently pleaded the elements of a First Amendment retaliation claim before proceeding to the qualified immunity analysis). The Court must then determine

whether the sufficiently pleaded claims, if any, are able to overcome the defense of qualified immunity. *See Lincoln v. Turner*, 874 F.3d 833, 847 (5th Cir. 2017) ("Although we hold that [the plaintiff] has adequately pled her claims to survive a Rule 12(b)(6) challenge, her claims may still be barred on the basis of qualified immunity."); *Babb v. Dorman*, 33 F.3d 472, 475 n.5 (5th Cir. 1994) ("To survive a motion to dismiss in cases where the qualified immunity defense is raised, a plaintiff must state facts, which if proven, would defeat the defense.").

## IV. ANALYSIS

The Court's Rule 12(b)(6) analysis is divided in two parts. First, the Court addresses whether the Plaintiffs' individual capacity claims are sufficiently pleaded to survive a motion to dismiss for failure to state a claim upon which relief can be granted. Second, the Court addresses whether the Plaintiffs' sufficiently pleaded individual capacity claims, if any, are able to overcome Deputy Killian's qualified immunity defense.

### A. INDIVIDUAL CAPACITY CLAIMS

### 1. CONSPIRACY

"To state a section 1983 claim, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.' " *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008) (quoting *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 2000)). "In the context of § 1983, '[t]he elements of civil conspiracy are (1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right." *Morris v. Bria*, No. 7:17-CV-034-O-BP, 2018 WL 2436724, at *10 (N.D. Tex. May 30, 2018) (alteration in original) (quoting *Kerr v.*

*Lyford*, 171 F.3d 330, 340 (5th Cir. 1999), *abrogated on other grounds by Castellano v.*

*Fragozo*, 352 F.3d 939 (5th Cir. 2003)). "In pleading a conspiracy, plaintiffs 'must plead

the operative facts upon which their claim is based. Mere conclusory allegations are

insufficient.' " *Ellis v. Crawford*, No. CIV.A. 3:03CV2416D, 2005 WL 525406, at *28 (N.D.

Tex. Mar. 3, 2005) (quoting *Holdiness v. Stroud*, 808 F.2d 417, 424 (5th Cir. 1987)). "A bald

allegation that a conspiracy exists, unsupported by any factual allegations, is insufficient."

*Thomas v. State*, 294 F. Supp. 3d 576, 610 (N.D. Tex. 2018) (citing *Lynch v. Cannatella*, 810

F.2d 1363, 1370 (5th Cir. 1987)).

The Plaintiffs allege within their complaint that Deputy Killian conspired with Sheriff

Riley to violate the Plaintiffs' Fourth and Fourteenth Amendment rights. However, this bald,

conclusory allegation fails to survive the procedural hurdle of Rule 12(b)(6). Even assuming for

purposes of the conspiracy allegations that Deputy Killian violated the Plaintiffs' Fourth and

Fourteenth Amendment rights, nothing within the complaint suggests that Deputy Killian agreed

to undertake a scheme with Sheriff Riley to deprive the Plaintiffs of their constitutional rights.

For example, the Plaintiffs do not allege that Sheriff Riley was aware of Deputy Killian's actions

prior to entering the Plaintiffs' home. Nor do the Plaintiffs allege that Sheriff Riley coordinated

with Deputy Killian to cover up Deputy Killian's actions—or Sheriff Riley's actions—before,

during, or after the Plaintiffs' search and seizure/arrest. Viewing the complaint in the light most

favorable to the Plaintiffs, the Plaintiffs have simply failed to allege facts that would plausibly

support a claim of conspiracy. It is therefore recommended that the conspiracy claim be

dismissed.

## 2. UNREASONABLE SEARCH AND SEIZURE/FALSE ARREST

"The Fourth Amendment clearly protects people from unreasonable searches and seizures within their homes." *United States v. Paige*, 136 F.3d 1012, 1017 (5th Cir. 1998). "It is a 'basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.' " *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 134 S. Ct. 2473, 2482 (2014). "A search conducted pursuant to consent is one of the well-settled exceptions to the Fourth Amendment's warrant requirement." *United States v. Tompkins*, 130 F.3d 117, 121 (5th Cir. 1997). "A search conducted pursuant to probable cause and exigent circumstances is [another well-settled] exception to the Fourth Amendment's warrant requirement." *United States v. Morales*, 171 F.3d 978, 981 (5th Cir. 1999).

The Fifth Circuit has provided guidance on what constitutes consent, probable cause, and exigent circumstances in the Fourth Amendment context. The Fifth Circuit has explained that:

- "[t]he police may search without a warrant when they have [voluntary] consent to do so from a person with authority to give consent," *United States v. Ibarra*, 948 F.2d 903, 906 (5th Cir. 1991);

- "[p]robable cause exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense,' " *Childers v. Iglesias*, 848 F.3d 412, 414 (5th Cir. 2017) (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004)); and

- "[a]s a general rule, exigent circumstances exist when there is a genuine risk that officers or innocent bystanders will be endangered, that suspects will escape, or that evidence will be destroyed if entry is delayed until a warrant can be obtained," *United States v. Menchaca-Castruita*, 587 F.3d 283, 289 (5th Cir. 2009).

The Plaintiffs allege within their complaint that they were unreasonably searched and seized/falsely arrested by Deputy Killian in violation of the Fourth Amendment. Viewing the

complaint in the light most favorable to the Plaintiffs, this allegation plausibly states a claim against Deputy Killian. According to the complaint, Deputy Killian allegedly entered the Plaintiffs' home without a warrant or probable cause, pepper sprayed the Plaintiffs, shot the Plaintiffs' two dogs, ordered the Plaintiffs to their knees, and handcuffed the Plaintiffs. The Plaintiffs state they asked Deputy Killian what was going on multiple times during the encounter because they were surprised and dumbfounded by the Deputy's actions and that they complied with Deputy Killian's orders throughout the encounter. Nothing within the complaint suggests that Deputy Killian's warrantless entry into the Plaintiffs' home was justified by consent, probable cause and exigent circumstances, or any other exception to the warrant requirement.[5] To the contrary, the only conclusion that can be drawn from the facts as stated in the complaint is that Deputy Killian unreasonably searched and seized/falsely arrested the Plaintiffs. The Court concludes that Plaintiffs' allegations—taken as true—plausibly show that Deputy Killian violated the Plaintiffs' Fourth Amendment right to be free from unreasonable search and seizure/false arrest. It is therefore recommended that the motion to dismiss as to the unreasonable search and seizure/false arrest claim be denied.

### 3. EXCESSIVE FORCE

To prevail on a Fourth Amendment excessive-force claim under section 1983, a plaintiff must show:

(1) "an injury;"

(2) "that the injury resulted directly from the use of excessive force;" and

(3) "that the excessiveness of the force was unreasonable."

---

[5] The complaint indicates that the Plaintiffs were subsequently charged by the Sheriff's Office with Interference with Public Duties misdemeanors. However, nothing within the complaint suggests that Deputy Killian had probable cause to believe that the Plaintiffs had interfered with him, Sheriff Riley, or any other law enforcement officer prior to entering the Plaintiffs' home. Further, even assuming that Deputy Killian had probable cause for purposes of the unreasonable search and seizure/false arrest claim, nothing within the complaint suggests that exigent circumstances existed to justify the warrantless entry.

*Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)). As to the first element, "A plaintiff alleging an excessive force violation must show that she has suffered 'at least some injury.' " *Flores v. City of Palacios*, 381 F.3d 391, 397 (5th Cir. 2004) (quoting *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993)).

> Although a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances. *Any* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only. Consequently, only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment. In short, as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force.

*Sam v. Richard*, 887 F.3d 710, 713 (5th Cir. 2018) (quoting *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th Cir. 2017)).

> The second and third elements collapse into a single objective-reasonableness inquiry, *see Scott v. Harris*, 550 U.S. 372, 381 (2007), guided by the following *Graham* factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Peña*, 879 F.3d at 619 (quoting *Graham*, 490 U.S. at 396).

The Plaintiffs allege within their complaint that Deputy Killian used excessive force in violation of the Fourth Amendment by:

> (1) pepper spraying both of the Plaintiffs;
>
> (2) banging Ramirez's head against the living room floor; and
>
> (3) stabbing Ramirez in the ribs with a pair of keys while transporting her in the Deputy's vehicle.

[ECF 1 at 3-4]. As explained previously, the Plaintiffs have plausibly shown that they were unreasonably searched and seized/falsely arrested by Deputy Killian. Viewing the complaint in the light most favorable to the Plaintiffs, the Plaintiffs have successfully alleged all of the facts necessary to state a prima facie claim of excessive force against Deputy Killian with respect to the pepper spraying, head banging, and ribs stabbing. According to the complaint, Deputy Killian allegedly pepper sprayed the Plaintiffs after entering the Plaintiffs' home without a warrant or probable cause, "bang[ed]" Ramirez's head against the living room floor of the home even though she was handcuffed and had previously complied with the Deputy's orders, and "stab[bed]" Ramirez in the ribs with a pair of keys after "shov[ing]" her in the back of the Deputy's vehicle while presumably still handcuffed simply because she requested that the Deputy take her to the hospital and remove her hair from her face so she could breathe.

As a result of Deputy Killian's claimed actions, the Plaintiffs allegedly suffered physical pain and unspecified mental and emotional injuries. Based on the four corners of the complaint, none of the *Graham* factors justified the pepper spraying, head banging, or ribs stabbing because nothing within the complaint suggests that the Plaintiffs had committed any crime, posed an immediate threat to Deputy Killian or others, or actively resisted arrest or attempted to evade arrest. To the contrary, the only conclusion that can be drawn from the facts as stated in the complaint is that Deputy Killian unreasonably used excessive force against the Plaintiffs. On the facts as recounted by the Plaintiffs, the Court concludes that Deputy Killian's alleged use of force was objectively unreasonable, which necessarily exceeds the de minimis threshold applicable in the excessive force context. The Court further concludes that Plaintiffs' allegations—taken as true—plausibly show that Deputy Killian violated the Plaintiffs' Fourth

Amendment right to be free from excessive force. It is therefore recommended that the motion to dismiss as to the excessive force claim be denied.

### 4. FALSE INFORMATION WITHIN AN ARREST REPORT

A plaintiff may state a claim under section 1983 for a violation of his or her "[Fourteenth Amendment substantive] due process right not to have police deliberately fabricate evidence and use it to frame and bring false charges against a person." *Cole v. Carson*, 802 F.3d 752, 771 (5th Cir. 2015), *cert. granted, judgment vacated on other grounds sub nom. Hunter v. Cole*, 137 S. Ct. 497 (2016), *opinion reinstated in part*, Nos. 14-10228 & 15-10045, 2018 WL 4577156 (5th Cir. Sept. 25, 2018). As the Fifth Circuit explained in *Cole*, "Where police intentionally fabricate evidence and successfully get someone falsely charged with a felony as cover for their colleagues' actions, and the Fourth Amendment is unavailing, there may be a [substantive] due process violation." *Id.* at 773. Therefore, in order to state a fabricated evidence claim within the meaning of *Cole*, a plaintiff must allege: (1) the police deliberately fabricated evidence and (2) the police successfully used the fabricated evidence to bring false charges against a person. *See id.* at 771, 773.

The Plaintiffs allege within their complaint that Deputy Killian provided "false information" in the Plaintiffs' arrest report in violation of the Fourteenth Amendment. In other words, the Plaintiffs allege that Deputy Killian deliberately fabricated evidence. However, the Plaintiffs have not alleged that the arrest report was used to bring the Interference with Public Duties misdemeanor charges against the Plaintiffs. It is therefore recommended that the false information claim be dismissed sua sponte.[6]

---

[6] Because the Court sua sponte recommends the dismissal of the false information claim under Rule 12(b)(6), the Court declines to address Deputy Killian's argument that the claim should be dismissed under Federal Rule of Civil Procedure 9(b). The Court notes that the fourteen-day time frame for filing objections to a recommended dismissal provides the Plaintiffs with notice and an

## 5. DELIBERATE INDIFFERENCE

"After the initial incidents of a seizure have concluded and an individual is being detained by police officials but has yet to be booked, an arrestee's right to medical attention, like that of a pretrial detainee, derives from the Fourteenth Amendment." *Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473 (5th Cir. 1996); *see Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998) (explaining that "once an arrest is complete, pretrial detainees are protected by the due process clause of the Fifth or Fourteenth Amendments"). "A pretrial detainee's right to medical care is violated if 'an officer acts with deliberate indifference to a substantial risk of serious medical harm and resulting injuries.' " *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011) (quoting *Mace v. City of Palestine*, 333 F.3d 621, 625 (5th Cir. 2003)). Deliberate indifference in the context of an episodic failure to provide reasonable medical care to a pretrial detainee means that:

(1) "the official was aware of facts from which an inference of substantial risk of serious harm could be drawn;"

(2) "the official actually drew that inference;" and

(3) "the official's response indicates the official subjectively intended that harm occur."

*Thompson v. Upshur Cty., TX*, 245 F.3d 447, 458-59 (5th Cir. 2001) (citing *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 643, 649-50 (5th Cir. 1996)). "To reach the level of deliberate indifference, official conduct must be 'wanton,' which is defined to mean 'reckless.' " *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 420 (5th Cir. 2017) (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). "Actions and decisions by officials that are merely inept,

---

opportunity to respond to the Court's sua sponte recommendation. *E.g.*, *Thomas v. State*, 294 F. Supp. 3d 576, 619 (N.D. Tex. 2018).

erroneous, ineffective, or negligent do not amount to deliberate indifference." *Id.* (quoting *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999)).

The Plaintiffs allege within their complaint that Deputy Killian was deliberately indifferent to the medical needs of the Plaintiffs in violation of the Fourteenth Amendment. However, this allegation fails to survive Deputy Killian's 12(b)(6) motion to dismiss with respect to the Plaintiffs' exposure to pepper spray. This Court cannot conclude that Deputy Killian was plausibly aware of facts from which could be drawn an inference that the Plaintiffs were at a substantial risk of serious harm from the exposure to pepper spray because the Plaintiffs have not alleged that they suffered any symptoms from the pepper spray that might suggest a serious injury. To the contrary, the Plaintiffs merely allege that the pepper spray caused a burning sensation of indeterminate intensity and length. *See generally Byrd v. Harrell*, No. 6:14CV986, 2017 WL 3633773, at *3 (E.D. Tex. Aug. 23, 2017) (explaining that "the effects of pepper spray normally wear off in about an hour and a half"). Similarly, the Plaintiffs' allegation fails to survive Deputy Killian's motion to dismiss with respect to Ramirez's possible head injury. The Court acknowledges that head injuries can be serious. But this Court cannot conclude that Deputy Killian was plausibly aware of facts from which could be drawn an inference that Ramirez was at a substantial risk of serious harm from the head banging because the Plaintiffs have not alleged any factual details about the possible head injury. *See Dyer v. City of Mesquite*, No. 3:15-CV-2638-B, 2016 WL 2346740, at *4 (N.D. Tex. May 3, 2016) ("There is a broad spectrum of head injuries, and not all of them require immediate treatment.").[7] Nor can this

---

[7] The Plaintiffs state in their response brief that "[t]he banging of [Ramirez's] head against the floor caused her to get a black eye and her face to swell up." [ECF 19]. However, the Plaintiffs' statement is not properly presented for this Court's consideration because no such allegation is contained within the four corners of the complaint. *See Samaratunga Family Tr. v. Am. Tower, Inc.*, No. A-17-CV-097 LY, 2017 WL 2274491, at *5 (W.D. Tex. May 24, 2017) (explaining that "in deciding a motion to dismiss, the Court is limited to the four corners of the complaint, and any attachments incorporated into the complaint").

Court conclude that Deputy Killian was plausibly aware of facts from which could be drawn an inference that Ramirez was at a substantial risk of serious harm from the key stabbing because the Plaintiffs have not alleged any factual details about the possible ribs injury. It is therefore recommended that the deliberate indifference claim be dismissed.

***

Having concluded that two of the Plaintiffs' individual capacity claims—unreasonable search and seizure/false arrest and excessive force—are able to overcome Deputy Killian's motion to dismiss, the Court now turns its attention to Deputy Killian's qualified immunity defense.

## B. QUALIFIED IMMUNITY

"The doctrine of qualified immunity serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Thompson*, 245 F.3d at 456. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably." *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Wernecke v. Garcia*, 591 F.3d 386, 392 (5th Cir. 2009) (alteration in original) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)).

"To defeat a claim of qualified-immunity, the plaintiff has the burden to demonstrate the inapplicability of the defense." *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017). "[A] plaintiff seeking to overcome qualified immunity must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.' " *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.' " *Lincoln v. Barnes*, 855 F.3d 297, 301 (5th Cir. 2017) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). "This inquiry 'does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.' " *Id.* (quoting *al-Kidd*, 563 U.S. at 741). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Jones v. Lowndes Cty., Miss.*, 678 F.3d 344, 351 (5th Cir. 2012) (quoting *Lytle v. Bexar Cty., Tex.*, 560 F.3d 404, 410 (5th Cir. 2009)).

> [W]here the complained of conduct is a law enforcement warrantless search of a residence, qualified immunity turns not only on whether it was then clearly established that such a search required probable cause and exigent circumstances, but *also* on whether it was then "clearly established that the circumstances with which" the officer "was confronted did not constitute probable cause and exigent circumstances."

*Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997) (quoting *Anderson*, 483 U.S. at 640-41). Similarly, "Courts do not analyze a use of force 'with the 20/20 vision of hindsight,' but rather 'from the perspective of a reasonable officer on the scene.' " *Mendez v. Poitevent*, 823 F.3d 326, 331 (5th Cir. 2016) (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2020 (2014)).

### 1. UNREASONABLE SEARCH AND SEIZURE/FALSE ARREST

The Court has already concluded that the Plaintiffs sufficiently alleged violations of their Fourth Amendment right to be free from unreasonable search and seizure/false arrest. Therefore, the sole question remaining for qualified immunity purposes is whether that right was clearly established. The Court concludes that the Plaintiffs' unreasonable search and seizure/false arrest claim is able to overcome Deputy Killian's qualified immunity defense at this stage of the litigation because the Plaintiffs have plausibly shown that their Fourth Amendment right to be free from unreasonable search and seizure/false arrest was clearly established.

The contours of the Fourth Amendment right to be free from unreasonable search and seizure/false arrest were sufficiently clear such that every reasonable deputy confronted with the same circumstances as Deputy Killian would have understood that they were entering a home without a warrant, probable cause and exigent circumstances, or any other exception to the warrant requirement, in violation of that constitutional right. *See, e.g.*, *Groh*, 540 U.S. at 564 ("No reasonable officer could claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional."); *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) ("[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home."); *Wernecke*, 591 F.3d at 393 ("Warrantless searches of a person's home are presumptively unreasonable unless the person consents, or unless probable cause and exigent circumstances justify the search." (quoting *Gates v. Texas Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 420 (5th Cir. 2008)). The Court notes that it must accept all well-pleaded facts within the complaint as true and view them in the light most favorable to the Plaintiffs at this juncture in the proceedings. It is therefore recommended that the qualified immunity defense be denied as to the unreasonable search and seizure/false arrest claim.

## 2. EXCESSIVE FORCE

The Court has already concluded that the Plaintiffs sufficiently alleged violations of their Fourth Amendment right to be free from excessive force. Therefore, the sole question remaining for qualified immunity purposes is whether that right was clearly established. The Court concludes that the Plaintiffs' excessive force claim is able to overcome Deputy Killian's qualified immunity defense because the Plaintiffs have plausibly shown that their Fourth Amendment right to be free from excessive force was clearly established.

The contours of the Fourth Amendment right to be free from excessive force were sufficiently clear such that every reasonable deputy confronted with the same circumstances as Deputy Killian would have understood that entering a home without a warrant, probable cause and exigent circumstances, or any other exception to the warrant requirement, pepper spraying the occupants of the home, banging the head of one of the occupants of the home against the living room floor, and stabbing the same occupant of the home in the ribs with a pair of keys, when none of the *Graham* factors justified the pepper spraying, head banging, or ribs stabbing, violates that constitutional right. *See, e.g.*, *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 733 (5th Cir. 2018) ("The law is clear that the degree of force an officer can reasonably employ is reduced when an arrestee is not actively resisting. . . . Moreover, at the time of the alleged misconduct [in 2013] it was clearly established that violently slamming or striking a suspect who is not actively resisting arrest constitutes excessive use of force." (citations omitted)); *Carroll v. Ellington*, 800 F.3d 154, 177 (5th Cir. 2015) ("The law was clearly established at the time of the deputies' conduct that, once a suspect has been handcuffed and subdued, and is no longer resisting, an officer's subsequent use of force is excessive."); *Newman v. Guedry*, 703 F.3d 757,

764 (5th Cir. 2012) (acknowledging that " 'in an obvious case,' the *Graham* excessive-force factors themselves 'can "clearly establish" the answer, even without a body of relevant case law' " (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)); *cf. Levins v. Smith*, 285 F. App'x 197, 198 (5th Cir. 2008) ("[W]e cannot say that the use of pepper spray, tackling and choking, twisting an arm until it fractures, and striking someone in the head with a flashlight are objectively reasonable uses of force where a motorist merely exits his automobile at the commencement of a traffic stop."). The Court again notes that it must accept all well-pleaded facts within the complaint as true and view them in the light most favorable to the Plaintiffs at this stage of the proceedings. It is therefore recommended that the qualified immunity defense be denied as to the excessive force claim.

## V. <u>RECOMMENDATION</u>

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion to Dismiss [ECF 15] filed by Deputy Killian be GRANTED in part and DENIED in part. Specifically, it is the RECOMMENDATION of the Magistrate Judge that the Motion to Dismiss be GRANTED as to the individual capacity claims of conspiracy and deliberate indifference as against Deputy Killian, and DENIED as to the individual capacity claims of unreasonable search and seizure/false arrest and excessive force as against Deputy Killian. It is further RECOMMENDED that the individual capacity claim of false information within an arrest report be DISMISSED sua sponte as against Deputy Killian.

## VI. <u>INSTRUCTIONS FOR SERVICE</u>

The United States District Clerk is directed to send a copy of these Findings,

Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED November 5, 2018.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). *Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed* as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

CIVIL\RAMIREZ\MTD.FCR-GRANT-DENY:4