IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RUBICELA RAMIREZ and FRANCISCO GONZALES, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | 2:18-CV-107-Z-BR |
| JAMES KILLIAN, a.k.a. "JR Killian" and KENT RILEY, | § § § | |
| Defendants. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANT JAMES KILLIAN'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF QUALIFIED IMMUNITY**

Before the Court is the Motion for Summary Judgment on the issue of qualified immunity filed by Defendant James Killian ("Deputy Killian"), with a brief in support and appendix of evidence. [ECF 36, 37, 38, respectively]. Plaintiffs Rubicela Ramirez and Francisco Gonzales ("Plaintiffs") filed a Response to the Motion, along with a brief in opposition and an appendix of evidence. [ECF 40, 41, 42, respectively]. Deputy Killian filed a Reply and Objections to the Plaintiffs' Response and appendix of evidence. [ECF 48]. This Court has reviewed all the summary judgment evidence identified in this paragraph and all the arguments of the parties set forth in these documents.[1] For the reasons explained below, the Court recommends that the Objections be GRANTED in part and OVERRULED in part and the Motion for Summary Judgment be GRANTED in part and DENIED in part.

---

[1] The Court notes that Defendant Kent Riley ("Sheriff Riley") has filed an independent Motion for Summary Judgment on the issue of qualified immunity. [ECF 32]. The Court has not considered either the evidence or arguments attached to Sheriff Riley's independent Motion in issuing this Findings, Conclusions, and Recommendation, except to the extent it has been incorporated into Deputy Killian's Motion and the Response and Reply thereto.

# I. FACTUAL EVIDENCE BEFORE THE COURT

At approximately 12:52 p.m. on June 20, 2016, Leticia Garza called the Collingsworth County Sheriff's Office via 911 to report a "big fight going on" between "Rubicela and her dude" at the Plaintiffs' home located in Collingsworth County, Texas. [DEFENDANT KILLIAN'S MSJ APPENDIX (hereinafter "KILLIAN-APP") at 34, 44].[2] The 911 caller did not provide the Sheriff's Office with any further details regarding the fight. Deputy Killian was immediately dispatched to investigate the 911 call. *Id.* at 47. Upon his arrival at the Plaintiffs' home, Deputy Killian proceeded to the front porch where, according to his post-incident Offense Reports, he heard "loud screaming between two people" and "things being slammed/thrown" inside the home. *Id.* at 37, 40. Deputy Killian also heard "what seemed like the argument escalating." *Id.* at 37, 40. At approximately 12:56 p.m., Deputy Killian requested backup and advised dispatch that he was entering the home because it sounded like someone was "getting beat." *Id.* at 45, 47.

What follows is a general description of the encounter recorded by Deputy Killian's body camera. *See generally id.* at 41-42.[3] Deputy Killian began the recording on the front porch of the Plaintiffs' home. After entering the front door of the Plaintiffs' home with pepper spray in hand, Deputy Killian shouted "Policía!" He then unholstered his pistol and proceeded through the living room to the kitchen, where he observed Plaintiff Ramirez emerge from an entryway located on the right side of the kitchen. Deputy Killian ordered Plaintiff Ramirez to "come here" and "get over here." He then ordered her at gunpoint to "face [the] wall." When she did not

---

[2] In deciding Deputy Killian's Motion for Summary Judgment, the Court views the evidence in the light most favorable to the Plaintiffs and draws all reasonable inferences in their favor.

[3] The body camera video recording is approximately twenty-eight minutes in length.

immediately comply, he ordered her to "[g]et over there and face [the] [expletive deleted] wall, [expletive deleted]!"[4] and deployed a short burst of pepper spray to her face.

At about the same time that Deputy Killian ordered Plaintiff Ramirez to face the wall and deployed pepper spray against her, Plaintiff Gonzales emerged from the same entryway located on the right side of the kitchen. A medium-sized Pit Bull dog simultaneously emerged from a different nearby entryway, wagging its tail as it approached Plaintiff Gonzales. Deputy Killian deployed a short burst of pepper spray to Plaintiff Gonzales' face, ordered him to "get over here," warned him "I'll shoot your dog," and backed away from the kitchen into the living room. The Pit Bull then proceeded to walk towards Deputy Killian, who shot the dog once with his pistol. The dog immediately cried out and turned away from Deputy Killian, who shot the dog twice more. Deputy Killian reentered the kitchen where he ordered Plaintiff Ramirez and Plaintiff Gonzales to get on the ground and deployed a short burst of pepper spray against the both of them. Neither of the Plaintiffs immediately complied, but Plaintiff Gonzales placed his hands on his head. In the meantime, the dog crawled out of the kitchen and disappeared from view, leaving behind a trail of blood. Deputy Killian again backed away from the kitchen into the living room, where he radioed to dispatch that "I got attacked by a dog, I need backup." Suddenly, a larger, previously unseen German Shepherd dog emerged from the kitchen and walked towards Deputy Killian, who immediately reacted and shot the dog four times as he fell onto the living room couch. That dog also cried out and disappeared from view. In total, thirty-eight seconds elapsed from the time that Deputy Killian turned on the body camera until the point at which he fired the seventh and final shot as described herein.

---

[4] The Court declines to reproduce herein the various profanities that Deputy Killian shouted at the Plaintiffs during the encounter.

Deputy Killian then exited the Plaintiffs' home, where he radioed to dispatch that "I need help over here, I just had a [Pit Bull] dog sicced on me. I need help over here now." Deputy Killian reentered the home where he again ordered the Plaintiffs to the ground. After the Plaintiffs partially complied by going to their knees, Deputy Killian deployed a slightly longer burst of pepper spray against the both of them. At that point, approximately one minute into the encounter, Plaintiff Gonzales attempted to stand up but Deputy Killian kicked him to the ground. Deputy Killian again deployed a short burst of pepper spray against the Plaintiffs. Over the course of the next ten minutes, Deputy Killian repeatedly ordered the Plaintiffs to lay down on the ground. The Plaintiffs did not comply. Instead, the Plaintiffs vacillated between going to their knees and attempting to stand up. During that time the Plaintiffs frequently shouted at Deputy Killian in both English and Spanish.[5] The Plaintiffs also asked what was going on and pleaded for help because their eyes were burning from the pepper spray. At one point, Plaintiff Ramirez told Deputy Killian, "You are not going to handcuff [Plaintiff Gonzales] and take him."

Approximately eleven minutes into the encounter, both Plaintiffs agreed to be handcuffed. Deputy Killian successfully handcuffed the Plaintiffs, seated them on the living room couch, and ordered them to stay seated. Soon thereafter, approximately thirteen minutes into the encounter, Sheriff Riley entered the living room from the kitchen. Plaintiff Ramirez attempted to stand up, but Deputy Killian immediately grabbed her by the hair and took her to the ground. Among other things, Plaintiff Ramirez shouted:

> Kent,[6] Kent, help! Kent! Did you see that? You see that, Kent? You're seeing that. Ok, we didn't do nothing. Please help! Help! . . . Kent help me! . . . Kent help me! Help me Kent! . . . [H]e str[uck] me on the . . . floor, Kent. Take me in

---

[5] It appears from the video recording that Plaintiff Gonzales primarily spoke Spanish, and that Plaintiff Ramirez translated for him at times.

[6] Plaintiff Ramirez referred to Sheriff Riley by his first name (Kent) throughout the video.

Kent, with you.  Take me in with you, Kent.  Oh God.

At about the same time, another deputy appeared on the scene outside of camera view.  Sheriff

Riley then removed Plaintiff Gonzales from the living room while Plaintiff Ramirez remained on

the ground.

Approximately fifteen minutes into the encounter, Deputy Killian and the other deputy

walked Plaintiff Ramirez from the living room to Deputy Killian's vehicle.  On her way to the

vehicle, Plaintiff Ramirez shouted to a bystander, "He slammed my face on the . . . ground for no

reason."[7]  Deputy Killian then ordered Plaintiff Ramirez to enter the vehicle.  Plaintiff Ramirez

partially complied, leaving her right leg outside of the vehicle.  Upon partially entering the

vehicle, Plaintiff Ramirez told Deputy Killian that the handcuffs were too tight.  Deputy Killian

responded by ordering her to lean forward so he could attempt to loosen the handcuffs with his

keys.  After Deputy Killian finished adjusting the handcuffs, Plaintiff Ramirez shouted, "You

tightened them more!"  At that point, approximately seventeen minutes into the encounter,

another officer (not a part of the Collingsworth County Sheriff's Office) appeared on the scene in

camera view.  Deputy Killian again ordered Plaintiff Ramirez to enter the vehicle.  He then

shoved Plaintiff Ramirez into the vehicle with his left hand, in which he held his keys, and began

to secure her seatbelt.  As he secured her seatbelt, Deputy Killian stated, "Get in the . . . car and

quit it.  I've had enough of this."  Plaintiff Ramirez responded, "Oh God.  This is a nightmare."

Deputy Killian subsequently talked to the other deputy, the officer, and Sheriff Riley about the

encounter.  Thereafter, approximately twenty-four minutes into the encounter, Deputy Killian

proceeded to transport Plaintiff Ramirez to the nearby police station.  Upon arriving at the police

---

[7] While Plaintiff Ramirez was on the ground in the living room of the home, she similarly stated to
another bystander that had temporarily entered the home, "[H]e slammed my face on the ground, on the
floor."

station, Deputy Killian transferred Plaintiff Ramirez to the jailor. He then washed his hands and turned off the body camera.

The following day, Deputy Killian filed two post-incident Offense Reports regarding his encounter with the Plaintiffs. *See* [KILLIAN-APP at 36-37, 39-40]. Within those Offense Reports, Deputy Killian charged the Plaintiffs with interference with public duties, misdemeanors pursuant to Texas Penal Code § 38.15. He also provided a general description of the 911 dispatch call he received, what he heard on the front porch of the Plaintiffs' home, and the events that followed.

On December 14, 2016, the Texas Rangers, at the request of Collingsworth County Attorney Keith Davis, initiated an official oppression investigation regarding Deputy Killian's encounter with the Plaintiffs. *See* [PLAINTIFFS' APPENDIX (hereinafter "PLAINTIFFS'-APP") at 4-7]. As part of their investigation, the Texas Rangers created an investigative report documenting their review of Deputy Killian's body camera footage, their review of Deputy Killian's post-incident Offense Reports, and their interview of Deputy Killian. The summary of the interview contained within the investigative report indicates that Deputy Killian stated, among other things, that "[Plaintiff] Ramirez was in fact complying with the commands he gave to her," "he did not investigate any type of disturbance once he entered the [home]," "he grabbed [Plaintiff] Ramirez by the hair when she was handcuffed and put her on the floor," "he should have never gone inside of the [home] alone," "he never questioned either [of the Plaintiffs] after they were booked," and "he did not enjoy law enforcement as a career and planned to move on from it." *Id.* at 6. The investigative report indicates that the Texas Rangers considered Deputy Killian to be a "SUSPECT." *Id.*

On January 19, 2017, Sheriff Riley signed two Separation of Licensee (F-5) reports regarding Deputy Killian. *See* [PLAINTIFFS'-APP at 2-3].[8]  The first F-5 report indicates that Deputy Killian was dishonorably discharged from the Sheriff's Office as a "County/Contract Jailer."  The second F-5 report indicates that Deputy Killian was dishonorably discharged from the Sheriff's Office as a "Peace Officer."

On November 20, 2017, Deputy Killian pleaded guilty to the charge of official oppression as alleged in a Texas information. *See* [PLAINTIFFS'-APP at 8-10].  That same day, the state trial court received Deputy Killian's plea, deferred a finding of guilt on it, placed him on a one-year term of deferred adjudication probation, and signed a deferment of adjudication.[9]

Deputy Killian subsequently filed a sworn affidavit in conjunction with his motion for summary judgment in which he provided a general description of what he heard on the front porch of the Plaintiffs' home and the events that followed. *See* [KILLIAN-APP at 2-5].  Among other things, Deputy Killian's affidavit states that he turned on his body camera after he "heard screaming and sounds like someone was getting beat" and "radioed for backup." *Id.* at 3.  Deputy Killian swore in his affidavit that the facts stated in the affidavit were "true and correct." *Id.* at 2.  He also filed an affidavit in which Assistant Chief Martin Birkenfeld Jr. provided an opinion regarding the actions taken by Deputy Killian during his encounter with the Plaintiffs. *See id.* at 12-25.

---

[8] "An F-5 report refers to the employment termination report that the head of a law enforcement agency or the head's designee is required to submit to the [Texas Commission on Law Enforcement] when an officer resigns, retires, is terminated or separates from a law enforcement agency." *Harmon v. Dallas Cty., Texas*, 248 F. Supp. 3d 814, 816 n.2 (N.D. Tex. 2017).

[9] The deferment of adjudication was filed and duly recorded in the Collingsworth County Court Records at "VOL 19 Page 550." [PLAINTIFFS'-APP at 10].  Although the deferment of adjudication is before the Court, the charging instrument (information) is not.

## II.  THE PLAINTIFFS' CLAIMS FOR RELIEF AGAINST DEPUTY KILLIAN[10]

The Plaintiffs make two claims in their Complaint against Deputy Killian under 42 U.S.C. § 1983: (1) unreasonable search and seizure/false arrest in violation of the Plaintiffs' Fourth Amendment rights and (2) use of excessive force in violation of the Plaintiffs' Fourth Amendment rights.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.[11]  "[T]he 'touchstone of Fourth Amendment analysis is reasonableness.' "  *United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).  "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances."  *Robinette*, 519 U.S. at 39.

"[A] Fourth Amendment search occurs when the government violates a subjective expectation of privacy that society recognizes as reasonable."  *United States v. Wallace*, 885 F.3d 806, 810 (5th Cir. 2018) (alteration in original) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)).  A "Fourth Amendment seizure" occurs "when there is a governmental termination of freedom of movement through means intentionally applied."  *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) (emphasis omitted); *see also Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).  An "arrest" is "the quintessential 'seizure of the person' under [the] Fourth Amendment."  *California v. Hodari D.*, 499 U.S. 621, 624 (1991).

---

[10] The Court only lists the claims here that were not dismissed by the District Judge's Order dated December 20, 2018.  *See* [ECF 27].

[11] The Fourth Amendment is "applicable through the Fourteenth Amendment to the States."  *Bailey v. United States*, 568 U.S. 186, 192 (2013).

### III.  <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A qualified immunity defense, however, alters the burden of proof, such that governmental employees need only assert the defense in good faith, putting forth no evidence, to shift the burden to the non-movant to show the defense does not apply.  *Davalos v. Johns*, No. 3:11-CV-0222-P, 2013 WL 1820313, at *3-4 (N.D. Tex. Apr. 30, 2013) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).[12]  The non-movant must demonstrate how specific evidence in the record, and all reasonable inferences therefrom, viewed by the court in a light most favorable to the non-movant, presents a genuine, material fact dispute for trial regarding all essential elements of the claim.  *Id.* at *4.  "[C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment."  *Id.* (quoting *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)).  A plaintiff's failure to produce proof as to *any* essential element of the claim renders all other facts regarding that claim immaterial.  *See Trugreen Landcare, L.L.C. v. Scott*, 512 F. Supp. 2d 613, 623 (N.D. Tex. 2007).  Summary judgment is mandatory as to the claim in question if a plaintiff fails to meet this burden.  *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994).

---

[12] Deputy Killian has asserted the defense of qualified immunity in his motion for summary judgment. Therefore, the burden has shifted to the Plaintiffs to demonstrate that he is *not* entitled to qualified immunity.

Qualified immunity is a defense that protects government officials from suit when they exercise the discretionary functions of their office. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). In order to overcome a defense of qualified immunity, a plaintiff must establish that: (1) "the official violated a statutory or constitutional right" and (2) "the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). A plaintiff must demonstrate that the defendant's conduct was objectively unreasonable in light of the legal rules clearly established at the time of her actions. *Thomas v. City of Dallas*, 175 F.3d 358, 364 (5th Cir. 1999). Conclusory allegations of wrongdoing will not satisfy these requirements. *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988). A court may examine these factors in any order. *Pearson v. Callahan*, 555 U.S. 223 (2009), *overruling in part Saucier v. Katz*, 553 U.S. 194 (2001). It is a plaintiff's burden to present evidence that a defendant is not entitled to qualified immunity when the defense is raised. *See Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001).

Claims of qualified immunity are not judged on twenty-twenty hindsight, or in light of knowledge ascertained after an event, but by looking through the eyes of the public official, considering what that official knew about the situation at the relevant time. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012). When properly applied, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "[P]re-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997)

(emphasis and citation omitted).  "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citing *Malley*, 475 U.S. at 341).

## IV.  <u>ANALYSIS</u>

The Court's analysis is divided in two parts.  First, the Court addresses whether Deputy Killian's objections to the Plaintiffs' appendix of evidence should be granted or overruled.  Second, the Court addresses whether the Plaintiffs' claims—i.e., unreasonable search and seizure/false arrest and excessive force—overcome Deputy Killian's qualified immunity defense at the summary judgment stage.

### A.  OBJECTIONS TO EVIDENCE

### 1.  EXHIBIT A

Deputy Killian's first objection is to Exhibit A.  Exhibit A contains a diagram depicting the general layout of the Plaintiffs' home.  *See* [PLAINTIFFS'-APP at 1].  Deputy Killian argues, among other things, that Exhibit A should be excluded because it was not disclosed in the Plaintiffs' Rule 26(a)(1) disclosures.[13]  The Court agrees.

The Court concludes that Deputy Killian's Rule 26(a)(1) disclosure objection is sufficient.  Federal Rule of Civil Procedure 37(c)(1) provides in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

---

[13]Deputy Killian additionally argues that Exhibit A should be excluded because it is not properly authenticated, there is no foundation for its entry, and it is not relevant to the analysis of the Motion for Summary Judgment.  Because the Court ultimately concludes that Exhibit A should be excluded on other grounds, the Court declines to address those arguments.

In evaluating whether a violation of Rule 26 is substantially justified or harmless, courts examine four factors:

(1) "the importance of the evidence;"

(2) "the prejudice to the opposing party of including the evidence;"

(3) "the possibility of curing such prejudice by granting a continuance;" and

(4) "the explanation for the party's failure to disclose."

*Davidson v. AT&T Mobility, LLC*, No. 3:17-CV-0006-D, 2018 WL 1609756, at *1 (N.D. Tex. Apr. 3, 2018). "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Id.* (quoting *Current v. Atochem N. Am., Inc.*, No. W-00-CA-332, 2001 WL 36101282, at *2 (W.D. Tex. Sept. 18, 2001)). The Plaintiffs never requested leave to file a sur-reply to Deputy Killian's reply or made any other attempt to explain their failure to disclose the diagram contained within Exhibit A. Therefore, the Plaintiffs have failed to demonstrate the importance of the evidence to their case or what prejudice might occur if it were excluded. Further, the Plaintiffs have failed to show that their failure to comply with Rule 26(a)(1) was substantially justified or harmless. The Court, having carefully considered the relevant four factors, is of the opinion that Exhibit A should be excluded.[14]

## 2. EXHIBIT B

Deputy Killian's second objection is to Exhibit B. Exhibit B contains two F-5 reports indicating that Deputy Killian was dishonorably discharged from the Sheriff's Office either "in relation to allegations of criminal misconduct" or "for insubordination or untruthfulness." *See* [PLAINTIFFS'-APP at 2-3]. Deputy Killian argues, among other things, that Exhibit B should

---

[14] Of course, the Court is able to ascertain some aspects of the layout of the Plaintiff's home through the video evidence in the record.

be excluded because it was not disclosed in the Plaintiffs' Rule 26(a)(1) disclosures, and it is not a criminal conviction and therefore violates Federal Rules of Evidences 608 and 609.[15]   The Court agrees.

As an initial matter, the Court concludes that Deputy Killian's Rule 26(a)(1) disclosure objection is sufficient.  The Plaintiffs never requested leave to file a sur-reply to Deputy Killian's reply or made any other attempt to explain their failure to disclose the two F-5 Reports contained within Exhibit B.  Therefore, the Plaintiffs have failed to demonstrate how the evidence is important to their case or what the prejudice would be if the evidence were excluded.  The Plaintiff's also have not shown that their failure to comply with Rule 26(a)(1) was substantially justified or harmless.  The Court, having carefully considered the relevant four factors, is of the opinion that Exhibit B should be excluded.

Additionally, the Court concludes that Deputy Killian's criminal conviction objection is sufficient.  Rule 608(b) provides in pertinent part: "Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness."  The plain language of Rule 608(b) thus "prohibits the introduction of extrinsic evidence [other than conviction of a crime as provided in Rule 609] to attack the witness's [character for truthfulness]."  *United States v. Lopez*, 979 F.2d 1024, 1033 (5th Cir. 1992); *see, e.g.*, *United States v. Dvorin*, 817 F.3d 438, 449 n.3 (5th Cir. 2016).  "Extrinsic evidence is evidence offered through other witnesses, rather than

---

[15] Deputy Killian additionally argues that Exhibit B should be excluded because it is not properly authenticated and it is not relevant to the analysis of the Motion for Summary Judgment.  Because the Court ultimately concludes that Exhibit B should be excluded on other grounds, the Court declines to address those arguments.

through cross-examination of the witness himself or herself." *United States v. McNeill*, 887 F.2d 448, 453 (3d Cir. 1989).

The F-5 Report describes the circumstances under which an officer left the agency, and whether he was honorably discharged, generally discharged, or dishonorably discharged. Tex. Occ. Code § 1701.452. The F-5 Report becomes part of the officer's permanent Texas Commission on Law Enforcement Officers Standards and Education ("TCLEOSE") record. If the officer seeks employment with another law enforcement agency, the agency is required to review employment termination reports before hiring the officer. 37 Tex. Admin. Code § 217.7(a)(1); *Harmon v. Dallas Cty., Texas*, 248 F. Supp. 3d 814, 817 (N.D. Tex. 2017). An F-5 report refers to the employment termination report that the head of a law enforcement agency or the head's designee is required to submit to the TCLEOSE when an officer resigns, retires, is terminated or separates from a law enforcement agency. As this type of report is not based on cross-examination of the witness himself, it constitutes extrinsic evidence. The Plaintiffs are apparently attempting to introduce extrinsic evidence, namely, these two F-5 Reports contained within Exhibit B, to attack Deputy Killian's character for truthfulness. Because neither of the F-5 reports are criminal convictions under Rule 609, Rule 608(b) prohibits such an attack.[16]

### 3. EXHIBIT C

Deputy Killian's third objection is to Exhibit C. Exhibit C contains an investigative report by the Texas Rangers in relation to "an official oppression investigation" regarding

---

[16] Another portion of Rule 608(b) provides that "the court may, on cross-examination, allow [specific instances of the witness's conduct] to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . the witness." Fed. R. Evid. 608(b). However, that portion of Rule 608(b) does not permit "the introduction of extrinsic evidence"; it merely permits "questioning on collateral instances of misconduct that go to credibility." *Sanchez v. Davis*, 888 F.3d 746, 750 (5th Cir. 2018); *see, e.g.*, *United States v. Simpson*, 709 F.2d 903, 907 (5th Cir. 1983) ("Although Rule 608(b) permits a party to cross-examine a witness concerning specific instances of misconduct affecting one's veracity other than a criminal conviction, the rule expressly prohibits proof of such misconduct by extrinsic evidence. The cross-examining attorney must take the witness' answer.").

Deputy Killian's encounter with the Plaintiffs. *See* [PLAINTIFFS'-APP at 4-7]. Deputy Killian argues that Exhibit C should be excluded because it was not disclosed in the Plaintiffs' Rule 26(a)(1) disclosures.[17] The Court agrees.

The Court concludes that Deputy Killian's Rule 26(a)(1) disclosure objection is sufficient. The Plaintiffs never requested leave to file a sur-reply to Deputy Killian's reply or made any other attempt to explain their failure to disclose the investigative report contained within Exhibit C. Again, the Plaintiffs have made no showing of the importance of the evidence or any prejudice resulting from its exclusion. Further, the Plaintiffs have failed to demonstrate that their failure to comply with Rule 26(a)(1) was substantially justified or harmless. The Court, having carefully considered the relevant four factors, is of the opinion that Exhibit C should be excluded.

In any event, the Court concludes sua sponte that Exhibit C should be excluded pursuant to Federal Rule of Evidence 403. Rule 403 provides that a court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The investigative report contained within Exhibit C indicates that the Texas Rangers conducted an official oppression investigation regarding Deputy Killian's encounter with the Plaintiffs. In other words, the Texas Rangers investigated Deputy Killian for a possible crime related to the subject matter of this case and subsequently memorialized their factual findings within a report. Such evidence poses a great risk of unfair prejudice and substantially outweighs any probative value. *Cf. Walker v. Wilburn*, No. 3:13-CV-

---

[17] Deputy Killian additionally argues that Exhibit C should be excluded because it is it is not properly authenticated and it contains hearsay. Because the Court ultimately concludes that Exhibit C should be excluded on other grounds, the Court declines to address those arguments.

4896-D, 2018 WL 5848857, at *4 (N.D. Tex. Nov. 8, 2018) ("It is axiomatic that a person who is merely charged with a criminal offense is innocent until proved guilty. An unproved accusation has minimal probative value, and poses a great risk of unfair prejudice."). This is especially true in light of the Court's conclusion below that Deputy Killian's objection to Exhibit D should be sustained.

### 4. EXHIBIT D

Deputy Killian's fourth objection is to Exhibit D. Exhibit D contains a deferment of adjudication indicating that Deputy Killian pleaded guilty to the charge of official oppression. *See* [PLAINTIFFS'-APP at 8-10]. Deputy Killian argues, among other things, that Exhibit D should be excluded because it was not disclosed in the Plaintiffs' Rule 26(a)(1) disclosures, and it is not a criminal conviction and therefore violates Rules of Evidence 608 and 609.[18] The Court agrees.

The Court concludes that Deputy Killian's Rule 26(a)(1) disclosure objection is sufficient. The Plaintiffs never requested leave to file a sur-reply to Deputy Killian's reply or made any other attempt to explain their failure to disclose the deferment of adjudication contained within Exhibit D. Therefore, the Plaintiffs have failed to demonstrate the importance of the evidence to their case or what prejudice might occur if it were excluded. Further, the Plaintiffs have failed to show that their failure to comply with Rule 26(a)(1) was substantially justified or harmless. The Court, having carefully considered the relevant four factors, is of the opinion that Exhibit D should be excluded.

---

[18] Deputy Killian additionally argues that Exhibit D should be excluded because it is not properly authenticated and it is not relevant to the analysis of the Motion for Summary Judgment. Because the Court ultimately concludes that Exhibit D should be excluded on other grounds, the Court declines to address those arguments.

Moreover, the Court concludes that Deputy Killian's criminal conviction objection is sufficient.  The deferment of adjudication contained within Exhibit D is extrinsic evidence.  It is not, however, a criminal conviction under Rule 609.  *See, e.g.*, *United States v. Valentine*, 401 F.3d 609, 615 (5th Cir. 2005) ("[W]e [have] held that a Texas deferred adjudication leaves a defendant without an adjudication of guilt or 'conviction' under Federal Rule of Evidence 609. . . .  Consequently, a deferred adjudication does not subject a witness to impeachment with the use of a prior 'conviction.' " (citing *United States v. Hamilton*, 48 F.3d 149, 153 (5th Cir. 1995)).  Therefore, in light of Rule 608(b), Exhibit D is not admissible to attack Deputy Killian's character for truthfulness.[19]

## 5. EXHIBIT E

Deputy Killian's fifth and final objection is to Exhibit E.  Exhibit E contains a picture depicting Plaintiff Ramirez with a partial black eye.  *See* [PLAINTIFFS'-APP at 11].  Deputy

---

[19] Although the parties have not raised the issue, the Court has carefully considered the possibility that the extrinsic evidence of the deferment of adjudication could be admissible to contradict and possibly disprove Deputy Killian's sworn affidavit as to a material issue of the case.  *See, e.g.*, *Lopez*, 979 F.2d at 1034 ("Extrinsic evidence . . . is admissible under the general standards of Rules 402 and 403 to contradict specific testimony, as long as the evidence is relevant and its probative value is not substantially outweighed by the danger of unfair prejudice."); *United States v. Farias-Farias*, 925 F.2d 805, 810 (5th Cir. 1991) ("Rule 608(b) [does] not stand as a bar to the admission of [extrinsic] evidence introduced to contradict, and which the jury might find disproves, a witness's testimony as to a material issue of the case."  (quoting *United States v. Opager*, 589 F.2d 799, 803 (5th Cir. 1979)).  However, even assuming arguendo that the Plaintiffs' failure to disclose the deferment of adjudication was substantially justified or harmless, that avenue is foreclosed to the Plaintiffs because nothing within the deferment of adjudication contradicts any portion of Deputy Killian's sworn affidavit.  The deferment of adjudication indicates that Deputy Killian pleaded guilty to the charge of official oppression as alleged in the information.  When viewed in the light most favorable to the Plaintiffs, the deferment of adjudication is sufficient to show that Deputy Killian pleaded guilty to intentionally subjecting the Plaintiffs to a search, seizure, and/or arrest that he knew was unlawful.  *See* Tex. Penal Code § 39.03(a)(1) ("A public servant acting under color of his office or employment commits [the] offense [of official oppression] if he: (1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful[.]").  But Deputy Killian's sworn affidavit did not mention his guilty plea or otherwise comment on whether he intentionally subjected the Plaintiffs to a search, seizure, and/or arrest that he knew was unlawful.  Instead, Deputy Killian's sworn affidavit merely provided a general description of what he heard on the front porch of the Plaintiffs' home and the events that followed.  Simply put, the Court cannot conclude on this record that the deferment of adjudication is admissible as contradiction evidence.

Killian argues that Exhibit E should be excluded because it is not properly authenticated, there is no foundation for its entry, and it contains hearsay.  The Court disagrees.

The Court concludes that Deputy Killian's authentication and foundation objections are insufficient.  Plaintiffs were under no legal obligation to authenticate Exhibit E or provide a foundation for its entry on summary judgment.  *See Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) ("At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.").  As the Fifth Circuit explained in *Maurer*, "materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.' " *Id.* (quoting *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016)).  As previously stated, the picture contained within Exhibit E depicts Plaintiff Ramirez with a partial black eye.  The picture is presumably in the possession of Plaintiff Ramirez or the person who took the picture.  Pictures are regularly used and admitted at trial.  Exhibit E is certainly capable of being presented in a form that would be admissible at an eventual trial.

The Court concludes that Deputy Killian's hearsay objection is also insufficient.  "Under Federal Rule of Evidence 801(c), hearsay is a statement, other than one made by the declarant while testifying at trial or a hearing, offered in evidence to prove the truth of the matter asserted." *United States v. St. Junius*, 739 F.3d 193, 202 (5th Cir. 2013).  "Therefore, the hearsay rule applies only to out of court statements, which the photograph in this case is not." *Blair v. City of Dallas, Texas*, No. 3:14-CV-01515-P, 2015 WL 12940189, at *6 (N.D. Tex. July 2, 2015).  The photograph contained within Exhibit E does not contain any out-of-court statements whatsoever.  As such, Exhibit E is not hearsay.

\*\*\*

For the above reasons, the undersigned respectfully recommends that Deputy Killian's objections to Exhibits A, B, C, and D be granted, and that his objections to Exhibit E be overruled.

## B.  QUALIFIED IMMUNITY

### 1.  UNREASONABLE SEARCH AND SEIZURE/FALSE ARREST

The Plaintiffs' claim of unreasonable search and seizure/false arrest encompasses three issues:

(1) the search of the Plaintiffs' home by Deputy Killian;

(2) the seizure of the Plaintiffs' dogs by Deputy Killian; and

(3) the arrest of the Plaintiffs by Deputy Killian.

The Court addresses each issue in turn.

#### i.  Unreasonable Search

"The Fourth Amendment clearly protects people from unreasonable searches . . . within their homes."  *United States v. Paige*, 136 F.3d 1012, 1017 (5th Cir. 1998).  "It is a 'basic principle of Fourth Amendment law that searches . . . inside a home without a warrant are presumptively unreasonable.' "  *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006) (quoting *Groh v. Ramirez*, 540 U.S. 551, 559 (2004)).  "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement."  *Riley v. California*, 573 U.S. 373, 382 (2014).  "A search conducted pursuant to probable cause and exigent circumstances is one exception to the Fourth Amendment's warrant requirement."  *United States v. Morales*, 171 F.3d 978, 981 (5th Cir. 1999).  Probable cause to search a home exists if under the totality of the circumstances there is a fair probability that someone in the home has

committed, is committing, or is about to commit an illegal act.  *See, e.g.*, *United States v. Thompson*, No. 3:11-CR-272-D (01), 2012 WL 1161609, at *3 (N.D. Tex. Apr. 9, 2012) (citing *United States v. Newman*, 472 F.3d 233, 236-37 (5th Cir. 2006)).  "Exigent circumstances exist where, inter alia, officers must enter a home to provide emergency assistance to preserve life or prevent serious injury." *Linicomn v. Hill*, 902 F.3d 529, 536 (5th Cir. 2018); *e.g.*, *Brigham City*, 547 U.S. at 403 ("[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.").[20]

Deputy Killian argues, inter alia, that he is entitled to qualified immunity on the unreasonable search issue because the summary judgment evidence does not create a genuine issue of material fact supporting the first element necessary to overcome the defense of qualified immunity.  The Court agrees.

The Court finds that the Plaintiffs have failed to present any competent summary judgment evidence reasonably showing that Deputy Killian searched the Plaintiffs' home in violation of the Fourth Amendment.  An audio recording contained within the summary judgment record indicates that on June 20, 2016, Leticia Garza, a citizen-informant,[21] called the Sheriff's Office via 911 to report a "big fight going on" between "Rubicela and her dude" at the Plaintiffs' home.  [KILLIAN-APP at 34]; *see also id.* at 44.  Radio call audio recordings before the Court indicate that Deputy Killian was immediately dispatched to investigate the 911 call.

---

[20] "As a general rule, exigent circumstances exist when there is a genuine risk that officers or innocent bystanders will be endangered, that suspects will escape, or that evidence will be destroyed if entry is delayed until a warrant can be obtained." *United States v. Menchaca-Castruita*, 587 F.3d 283, 289 (5th Cir. 2009).

[21] "[C]ourts generally presume that a citizen-informant or a victim who discloses his or her identity and basis of knowledge to the police is both reliable and credible." *United States v. Kehoe*, 893 F.3d 232, 238 (4th Cir. 2018).

*Id.* at 47.  Upon arriving at the Plaintiffs' home, Deputy Kilian proceeded to the front porch where, according to his post-incident Offense Reports, he heard "loud screaming between two people," "things being slammed/thrown" inside the home, and "what seemed like the argument escalating."  *Id.* at 37, 40.  Another radio call audio recording before the Court indicates that Deputy Killian requested backup and advised dispatch that he was entering the home because it sounded like someone was "getting beat."  *Id.* at 47; *see also id.* at 45.  Deputy Killian stated in his sworn summary judgment affidavit that he turned on his body camera after he "heard screaming and sounds like someone was getting beat" and "radioed for backup."  *Id.* at 3.  Under the totality of the circumstances known to Deputy Killian at the time he entered (and thereby searched) the Plaintiff's home, an objectively reasonable officer could have concluded that there was a fair probability that someone inside the home was actively committing the crime of assault.

An objectively reasonable officer could have also concluded that it was necessary to enter the home to provide emergency assistance to prevent serious injury to someone inside the home during a possible domestic dispute.  If a person's health and safety are threatened by a domestic abuser, exigent circumstances would justify immediate removal of the abuser from the premises. *See Fernandez v. California*, 571 U.S. 292, 318 (2014); *see also Georgia v. Randolph*, 547 U.S. 103, 107 (2006) ("[T]his case has no bearing on the capacity of the police to protect domestic victims.... No question has been raised, or reasonably could be, about the authority of the police to enter a dwelling to protect a resident from domestic violence...."); *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006) ("[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury."). Domestic abuse is indeed "a serious problem in the United States," *Randolph*, 547 U.S. at 117

(citing statistics); *see also Tierney v. Davidson*, 133 F.3d 189, 197 (2d Cir. 1998) ("Courts have recognized the combustible nature of domestic disputes, and have accorded great latitude to an officer's belief that warrantless entry was justified by exigent circumstances when the officer had substantial reason to believe that one of the parties to the dispute was in danger."); *United States v. Ayala*, No. 4:10-CR-234, 2011 WL 1769146, at *5 (E.D. Tex. May 9, 2011) ("[T]he officers' warrantless and unannounced entry into Defendant's home was justified by a reasonable belief that there was an assault in progress and that someone might be in need of assistance.").

The Court recognizes that in certain domestic violence incidences, warrantless entry was not justified if the threat appears to have dissipated. *See United States v. Davis*, 290 F.3d 1239, 1244 (10th Cir. 2002) (finding no exigent circumstances justifying entry when police responded to a domestic disturbance report, officers heard no noise, the defendant told officers that his wife was out of town, and the wife appeared at the door seemingly unharmed but resisted the husband's efforts to close the door); *Hannon v. State*, 125 Nev. 142, 207 P.3d 344, 348 (2009) (suppressing evidence found after an officer's warrantless entry because the searching officer "arrived at a quiet apartment in response to a 911 dispatch call regarding a possible domestic disturbance that—by all accounts—seemed to have already dissipated" and "had no reason to believe that [the defendant] or [his girlfriend] had been injured, and had even less reason to believe that [the defendant's] apartment may have harbored an unidentified third person in need of emergency assistance"). The Court, viewing the evidence in the light most favorable to the Plaintiffs, concludes that the summary judgment record indicates that Plaintiffs have failed to meet their burden to show that Deputy Killian is not entitled to qualified immunity. Reasonable officers could determine based on these facts that Deputy Killian was justified in entering the

home without a warrant after hearing ongoing sounds of violence when responding to a report of domestic violence at a specific location.

The Plaintiffs primarily argue that Deputy Killian's warrantless entry into the Plaintiff's home was unreasonable under the Fourth Amendment because he purportedly violated the knock-and-announce rule. The Court disagrees. The Court finds that the Plaintiffs have failed to present any competent summary judgment evidence reasonably showing that it was necessary for Deputy Killian to knock and announce prior to entering the Plaintiff's home.[22] The evidence before the Court indicates that Deputy Killian was dispatched to the Plaintiffs' home to investigate a "big fight." During the course of his investigation, Deputy Killian stood on the front porch of the Plaintiffs' home and heard sounds reasonably consistent with those of an ongoing assault. Significantly, Deputy Killian entered the home after hearing what sounded like someone "getting beat." The Court, viewing the summary judgment evidence in the light most favorable to the Plaintiffs, concludes that a reasonable officer in Deputy Killian's circumstances could find that Deputy Killian's no-knock-and-announce entry into the Plaintiffs' home was justified by an ongoing threat of physical violence to someone inside home. *See, e.g.*, *Timmann*, 741 F.3d at 1179; *Tierney*, 133 F.3d at 197; *Ayala*, No. 4:10-CR-234, 2011 WL 1769146, at *5.

---

[22] "[T]he Fourth Amendment incorporates the common law requirement that police officers entering a dwelling must knock on the door and announce their identity and purpose before attempting forcible entry." *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997) (citing *Wilson v. Arkansas*, 514 U.S. 927 (1995)). Thus the "common-law 'knock and announce' principle forms a part of the reasonableness inquiry under the Fourth Amendment." *Wilson*, 514 U.S. at 929. However, the Supreme Court has explained that it is not necessary to knock and announce "when circumstances present a threat of physical violence, or if there is reason to believe that evidence would likely be destroyed if advance notice were given, or if knocking and announcing would be futile." *Hudson v. Michigan*, 547 U.S. 586, 589-90 (2006) (internal quotation marks, citations, and alteration omitted). An officer need only "have a reasonable suspicion under the particular circumstances that one of these grounds for failing to knock and announce exists." *Id.* at 590 (internal quotation marks, citation, and alterations omitted). "The reasonableness of the officer's suspicion is evaluated as of the time of the entry." *Trent v. Wade*, 776 F.3d 368, 378 (5th Cir. 2015).

The Plaintiffs globally assert based on their summary judgment evidence that Deputy Killian's statements on this matter have been found to be untruthful and unreliable. However, the Court finds that there is no summary judgment evidence before it to suggest that Deputy Killian has made any untruthful statement whatsoever regarding his encounter with the Plaintiffs. The Plaintiffs also assert that it is impossible for Defendant Killian to have heard any screaming or noise from the front porch of the home when no windows were open. But that argument is wholly conclusory and unsupported by any competent summary judgment evidence.

It is therefore recommended that summary judgment be granted on the unreasonable search issue.

### ii. Unreasonable Seizure

"[T]he Fourth Amendment protects individuals against unreasonable seizures of [personal] property." *John Corp. v. City of Houston*, 214 F.3d 573, 577 (5th Cir. 2000).[23] "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.' " *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). To determine whether a seizure was reasonable, courts "look to the totality of the circumstances, balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.' " *Grant v. City of Houston*, 625 F. App'x 670, 675 (5th Cir. 2015) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014)). "[A]n officer's shooting of a pet dog is in some circumstances a seizure under the Fourth Amendment." *Jones v. Lopez*, 689 F.

---

[23] "Although the Fourth Amendment uses the word 'effects,' the Supreme Court has long equated that term with personal property." *Mayfield v. Bethards*, 826 F.3d 1252, 1256 (10th Cir. 2016). Pet dogs are "personal property" under Texas law. *See Lira v. Greater Houston German Shepherd Dog Rescue, Inc.*, 488 S.W.3d 300, 304 (Tex. 2016) ("We recently recognized pet dogs as 'property in the eyes of the law,' and a 'special form of personal property.' " (quoting *Strickland v. Medlen*, 397 S.W.3d 184, 185, 192 (Tex. 2013)).

App'x 337, 339 (5th Cir. 2017) (citing *Stephenson v. McClelland*, 632 F. App'x 177, 184 (5th Cir. 2015); *Grant*, 625 F. App'x at 675)).

Deputy Killian argues that he is entitled to qualified immunity on the unreasonable seizure issue because the summary judgment evidence does not create a genuine issue of material fact necessary to overcome the defense of qualified immunity.  The Court disagrees.

The Court finds that there is a genuine dispute of material fact as to whether the Plaintiffs' dogs objectively posed a threat to Deputy Killian that justified his use of force against them.  The body camera video recording before the Court indicates that after Deputy Killian entered the Plaintiffs' home, he proceeded through the living room to the kitchen.  There he encountered Plaintiff Ramirez, Plaintiff Gonzales, and a medium-sized Pit Bull in quick succession.  After the dog entered the kitchen, it wagged its tail and approached Plaintiff Gonzales.[24]  It then turned towards Deputy Killian.  Deputy Killian stated in his sworn affidavit that "the dog began to move toward [him] in what [he] perceived as an aggressive attack." [KILLIAN-APP at 3].  However, a reasonable jury could reach a contrary conclusion in light of the body camera video recording.  The dog never once growled, barked, barred its teeth, or jumped at Deputy Killian.  It never ran towards him or attempted to bite him.  Instead, the dog simply walked towards Deputy Killian as he backed away from the kitchen into the living room. Deputy Killian shot the dog once with his pistol.  The dog immediately cried out and turned away from Deputy Killian, who shot the dog twice more.  The Court, construing the evidence in

---

[24] Deputy Killian stated in his sworn affidavit that Plaintiff Gonzales "said something to the dog which [he] did not understand."  [KILLIAN-APP at 3].  That may very well be the case.  However, the Court cannot determine from the body camera video recording what, if anything, Plaintiff Gonzales said to the dog.  The video recording indicates that after Deputy Killian shot both dogs, he radioed to dispatch that he "just had a [Pit Bull] dog sicced on [him]."  But a reasonable jury could reach a contrary conclusion in light of the body camera video recording.  The Court notes that Plaintiff Gonzales did not make any gestures towards Deputy Killian prior to the shooting of the Pit Bull.

the light most favorable to the Plaintiffs and acknowledging the totality of the circumstances with which Deputy Killian was presented, concludes that there is a genuine material fact dispute as to whether the Pit Bull objectively posed a threat to Deputy Killian that justified his firing a first, second, and third shot into it. *See Jones*, 689 F. App'x at 340 (affirming the district court's determination that there was a genuine dispute of material fact as to what danger a dog posed to two officers under circumstances in which the plaintiffs allegedly "never saw [the dog] threaten to attack the officers, never heard him growl, or otherwise pose the threat identified by the officers").

Although the shooting of the German Shepherd dog is a closer question, the Court finds that the Plaintiffs have presented sufficient evidence to demonstrate a genuine dispute of material fact as to whether the German Shepherd objectively posed a threat to Deputy Killian that justified his use of force against it. The body camera video recording before the Court indicates that after Deputy Killian shot the Pit Bull, he backed away from the kitchen into the living room, where he radioed to dispatch that "I got attacked by a dog, I need backup." Suddenly, a larger, previously unseen German Shepherd emerged from the kitchen and walked towards Deputy Killian, who immediately reacted and shot the dog four times. Deputy Killian stated in his affidavit that "the dog entered the [living] room and approached [him] in what [he] perceived as an aggressive manner." [KILLIAN-APP at 4]. However, once again, there is a genuine material fact dispute as to whether the German Shepard objectively posed a threat to Deputy Killian. The Court, acknowledging the totality of the circumstances and viewing the evidence in the light most favorable to the Plaintiffs, concludes that a reasonable jury could find that the shooting of the German Shepherd was not justified. *See id.*

The Court, in reaching this conclusion, understands that Deputy Killian was placed in a dangerous situation in response to the domestic violence call and appearance of two unleashed dogs and two individuals who were not entirely complying with his commands. The Court has looked at the facts "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," because the Court has the benefit of the body camera footage in this instance. *See Lytle v. Bexar County, Texas*, 560 F.3d 404, 411 (5th Cir. 2009) (quoting *Graham v. Conner*, 490 U.S. 386, 397 (1989)). However, the Court notes that "the reasonableness of an officer's conduct under the Fourth Amendment is often a question that requires the input of a jury" in these circumstances. *See Kincheloe v. Caudle*, A–09–CA–010 LY, 2009 WL 3381047 (W.D. Tex. Oct. 16, 2009). The Fifth Circuit determined:

> [R]easonableness under the Fourth Amendment should frequently remain a question for the jury. To put the matter more directly, since we lack a clearly defined rule for declaring when conduct is unreasonable in a specific context, we rely on the consensus required by a jury decision to help ensure that the ultimate legal judgment of "reasonableness" is itself reasonable and widely shared.

*Lytle*, 560 F.3d at 411 (quoting *Abraham v. Raso*, 183 F.3d 279, 290 (3d Cir. 1999)). Where, as here, the law frequently distinguishes between small details in determining whether the shooting of a dog is justified in a particular circumstance, the Court finds a fact question is created in a close call such as this case.

It is therefore recommended that summary judgment be denied on this issue.

### iii. False Arrest

The Fourth Amendment creates a "right to be free from false arrest." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009). "In order to prevail in a § 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment." *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007). "Probable cause

exists 'when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.' " *Childers v. Iglesias*, 848 F.3d 412, 414 (5th Cir. 2017) (quoting *Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004)).

"Texas law . . . recognizes the crime of 'interference with public duties.' " *Huang v. Harris Cty.*, 264 F.3d 1141, 2001 WL 822534, at *7 (5th Cir. 2001); *see* Tex. Penal Code § 38.15. "A person commits [the] offense [of interference with public duties] if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with: (1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law[.]" Tex. Penal Code § 38.15(a)(1).[25]

Deputy Killian argues, inter alia, that he is entitled to qualified immunity on the false arrest issue because the summary judgment evidence does not create a genuine issue of material fact supporting the first element necessary to overcome the defense of qualified immunity. The Court agrees.

The Court finds that the Plaintiffs have failed to present any competent summary judgment evidence reasonably showing that Deputy Killian arrested the Plaintiffs in violation of the Fourth Amendment. The body camera video recording before the Court indicates that the Plaintiffs persistently failed to comply with Deputy Killian's orders throughout much of the encounter. For example, during one ten-minute period, Deputy Killian repeatedly ordered the Plaintiffs to lay down on the ground. Deputy Killian's orders were both verbal (e.g., telling the

---

[25] "A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint." Tex. Penal Code § 6.03(d).

Plaintiffs to lay down on the ground) and non-verbal (e.g., pointing at the ground and moving his hand back and forth). The Plaintiffs did not comply. Instead, the Plaintiffs vacillated between going to their knees and attempting to stand up. As explained previously, the summary judgment record before the Court indicated that a reasonable officer in these circumstances could find that Deputy Killian's warrantless entry into the Plaintiffs' home was justified by probable cause and exigent circumstances. The body camera video recording plainly shows that the Plaintiffs' failure to comply with Deputy Killian's lawful orders interfered with his ability to conduct an assault investigation. Under the totality of the circumstances known to Deputy Killian at the moment he arrested the Plaintiffs, an objectively reasonable officer could have concluded that the Plaintiffs had committed the crime of interference with public duties. The Court, viewing the evidence in the light most favorable to the Plaintiffs, concludes that Deputy Killian is entitled to qualified immunity in the arrest of the Plaintiffs. *See, e.g.*, *Childers*, 848 F.3d at 415 (concluding that "a reasonable officer could have believed that there was a fair probability that [the appellant] violated Texas Penal Code § 38.15" under circumstances in which he "failed to move his truck when [an officer] instructed him to do so" and "[t]his instruction was made within the scope of the official duty [the officer] was performing"); *Key v. State*, 88 S.W.3d 672, 676 (Tex. App. 2002) (affirming conviction for interference with public duties under circumstances in which police were investigating the reason for a disturbance call, an officer directed the appellant to stay on the sidewalk six times, and the appellant disobeyed the officer's directives by stepping off of the sidewalk six times); *cf. Berrett v. State*, 152 S.W.3d 600, 604 (Tex. App. 2004) (affirming conviction for interference with public duties under circumstances in which the appellant responded to an officer's attempt to arrest him by repeatedly moving his arm out of the

officer's reach to prevent the officer from placing him in handcuffs despite the officer's multiple commands to place his arm behind his back).

The Plaintiffs argue that Deputy Killian lacked probable cause to arrest the Plaintiffs because their conduct purportedly consisted exclusively of speech. The Court disagrees. The Court finds that the Plaintiffs have failed to present any competent summary judgment evidence reasonably showing that their conduct consisted of speech only (which is protected by Texas law).[26] It did not. As explained above, the body camera video recording before the Court indicates that the Plaintiffs persistently failed to comply with Deputy Killian's orders throughout much of the encounter. Texas law protected the Plaintiffs' speech; it did not protect their failure to comply with Deputy Killian's lawful orders. *See, e.g.*, *Childers*, 848 F.3d at 415 (officer entitled to qualified immunity where the appellant "did more than just argue with police officers; he failed to comply with an officer's instruction, made within the scope of the officer's official duty and pertaining to physical conduct rather than speech"); *Eisenbach v. Zatzkin*, 728 F. App'x 307, 311 (5th Cir. 2018) ("[D]isobeying the instruction of a police officer who is performing official duties may be sufficient to establish probable cause for an arrest under section 38.15, at least where the instruction pertains to the arrestee's conduct, as opposed to his or her speech. . . . As to [the appellant's] contention that his actions were limited to speech, a reasonable officer could have believed that, in approaching the delivery truck, contrary to [the officer's] instruction, [the appellant's] actions went beyond the realm of speech." (citation omitted)); *Key*, 88 S.W.3d at 676 (concluding that the appellant "engaged in conduct other than speech" in refusing to obey the directives of the officer to stay on the sidewalk during the course of a police investigation).

---

[26] "It is a defense to prosecution [for interference with public duties] that the interruption, disruption, impediment, or interference alleged consisted of speech only." Tex. Penal Code § 38.15(d).

It is therefore recommended that summary judgment be granted on the false arrest issue.

## 2. EXCESSIVE FORCE

The Plaintiffs' claim of excessive force encompasses three issues:

(1) the pepper spraying of both Plaintiffs by Deputy Killian;

(2) the head banging of Plaintiff Ramirez by Deputy Killian; and

(3) the ribs stabbing of Plaintiff Ramirez by Deputy Killian.

The Court addresses each issue in turn.

"The Fourth Amendment creates a 'right to be free from excessive force during a seizure.'" *Trammell v. Fruge*, 868 F.3d 332, 339-340 (5th Cir. 2017) (quoting *Poole*, 691 F.3d at 627). To prevail on a Fourth Amendment excessive-force claim under section 1983, a plaintiff must show:

(1) "an injury;"

(2) "that the injury resulted directly from the use of excessive force;" and

(3) "that the excessiveness of the force was unreasonable."

*Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (citing *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)). Whether the force used was excessive or unreasonable depends on the "totality of the circumstances." *Tennessee v. Garner*, 471 U.S. 1, 9 (1985).

As to the first element, "A plaintiff alleging an excessive force violation must show that she has suffered 'at least some injury.'" *Flores v. City of Palacios*, 381 F.3d 391, 397 (5th Cir. 2004) (quoting *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993)).

> Although a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is directly related to the amount of force that is constitutionally permissible under the circumstances. *Any* force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only. Consequently, only one inquiry is required to determine whether an officer used

excessive force in violation of the Fourth Amendment. In short, as long as a plaintiff has suffered some injury, even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force.

*Sam v. Richard*, 887 F.3d 710, 713 (5th Cir. 2018) (quoting *Alexander v. City of Round Rock*,

854 F.3d 298, 309 (5th Cir. 2017)).

The second and third elements collapse into a single objective-reasonableness inquiry, *see Scott v. Harris*, 550 U.S. 372, 381 (2007), guided by the following *Graham* factors: "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (quoting *Graham*, 490 U.S.

at 396).

### i. Pepper Spraying

Deputy Killian argues, inter alia, that he is entitled to qualified immunity on the pepper

spraying issue because the summary judgment evidence does not create a genuine issue of

material fact supporting the first element necessary to overcome the defense of qualified

immunity. The Court agrees.

The Court finds that the Plaintiffs have failed to meet their summary judgment burden to

identify evidence reasonably showing that Deputy Killian pepper sprayed the Plaintiffs in

violation of the Fourth Amendment. The evidence before the Court indicates that Deputy Killian

was dispatched to the Plaintiffs' home to investigate a "big fight." During the course of his

investigation, Deputy Killian stood on the front porch of the Plaintiffs' home, heard sounds

reasonably consistent with those of an ongoing assault, and entered the home after hearing what

sounded like someone "getting beat." The body camera video recording before the Court

indicates that after Deputy Killian entered the Plaintiffs' home, he proceeded through the living

room to the kitchen. There he encountered Plaintiff Ramirez, Plaintiff Gonzales, and a medium-

sized Pit Bull in quick succession.  Deputy Killian ordered Plaintiff Ramirez to "face [the] wall."

When she did not immediately comply, he deployed a short burst of pepper spray to her face, and

then to Plaintiff Gonzales's face.  He subsequently shot the Pit Bull.[27]  After shooting the dog,

Deputy Killian ordered Plaintiff Ramirez and Plaintiff Gonzales to get on the ground and

deployed another short burst of pepper spray against the both of them.  Neither of the Plaintiffs

immediately complied, but Plaintiff Gonzales placed his hands on his head.  Deputy Killian then

encountered and shot a larger, previously unseen German Shepherd.  After shooting the second

dog, Deputy Killian again ordered the Plaintiffs to the ground.  After the Plaintiffs partially

complied by going to their knees and after Deputy Killian's order for Plaintiff Gonzales to "get

over here" was ignored, Deputy Killian deployed a third slightly longer burst of pepper spray

against the both of them.  At that point, approximately one minute into the encounter, Plaintiff

Gonzales attempted to stand up, but Deputy Killian kicked him to the ground.  Deputy Killian

again deployed a fourth short burst of pepper spray against the Plaintiffs.

Deputy Killian's encounter with the Plaintiffs was fraught with risk. Deputy Killian

believed he was entering a home in which an assault was occurring.  The inherent danger in

investigating the potential ongoing assault was compounded by the fact that it ostensibly

involved family violence.  *See* [KILLIAN-APP at 37, 40] (post-incident Offense Reports

indicating that Deputy Killian was dispatched to the Plaintiff's home "as a couple living at said

address were heard screaming/fighting loudly"); *id.* (post-incident Offense Reports indicating

that Deputy Killian drew his pistol after entering the home because he "knew from

training/experience that family violence is dangerous for law enforcement officers").  Family

---

[27] The references to the shooting of the dogs are solely to place the events concerning the pepper spray deployments in chronological order and do not factor into the Court's excessive force analysis.

violence is particularly prone to volatility and escalation.  *See, e.g.*, *Rockwell v. City of Garland, Tex.*, No. 3:08-CV-251-M, 2010 WL 3384833, at *8 (N.D. Tex. June 10, 2010) ("Courts have noted that domestic disputes are particularly combustible and have therefore noted special deference to officers at the scene of such disputes.").

Deputy Killian not only encountered Plaintiff Ramirez, Plaintiff Gonzales, and a medium-sized Pit Bull in the kitchen, a relatively confined space, but Plaintiff Ramirez failed to immediately comply with his order that she "face [the] wall."  Deputy Killian was by himself. He made a split-second judgment to deploy a short burst of pepper spray to Plaintiff Ramirez's face, and then to Plaintiff Gonzales' face.  He subsequently deployed three additional bursts of pepper spray against the Plaintiffs.  Each time that Deputy Killian deployed pepper spray against the Plaintiffs, one or more of them was failing to comply with his lawful orders.  Under the totality of the circumstances with which Deputy Killian was presented, an objectively reasonable officer could have concluded that it was necessary to deploy pepper spray against the Plaintiffs.

The Court concludes that the evidence before it is sufficient to show that the Plaintiffs received some injury from pepper spray.  For example, it is readily apparent from the body camera video recording that the Plaintiffs' eyes were burning from the pepper spray. Nevertheless, the Court concludes that Deputy Killian is entitled to qualified immunity because the use of force was not excessive or unreasonable.  Deputy Killian was investigating reports and indications of a serious crime (domestic violence) by himself, and the Plaintiffs were actively failing to comply with Deputy Killian's lawful orders throughout much of the encounter.

It is therefore recommended that summary judgment be granted on the pepper spraying issue.

### ii. Head Banging

Deputy Killian argues, inter alia, that he is entitled to qualified immunity on the head banging issue because the summary judgment evidence does not create a genuine issue of material fact supporting the first element necessary to overcome the defense of qualified immunity.  The Court agrees.

The Court finds that the Plaintiffs have failed to meet their summary judgment burden to identify evidence reasonably showing that Deputy Killian banged Plaintiff Ramirez's head against the living room floor of their home in violation of the Fourth Amendment.  The body camera video recording before the Court indicates that the Plaintiffs persistently failed to comply with many of Deputy Killian's orders during the first eleven minutes of the encounter.  Approximately eleven minutes into the encounter, both Plaintiffs agreed to be handcuffed.  Deputy Killian successfully handcuffed the Plaintiffs, seated them on the living room couch, and ordered them to stay seated.  Soon thereafter, approximately thirteen minutes into the encounter, Sheriff Riley entered the living room from the kitchen.  Plaintiff Ramirez attempted to stand up, but Deputy Killian immediately grabbed her by the hair and took her to the ground.  *See* [KILLIAN-APP at 4] (sworn affidavit indicating that Plaintiff Ramirez "began to scream and attempted to rise from the [living room couch] when Sheriff [Riley] arrived, at which time [Deputy Killian] took her to the ground so as to maintain control of her").[28]  By attempting to stand up, Plaintiff Ramirez once again failed to comply with Deputy Killian's orders.  Under the totality of the circumstances with which Deputy Killian was presented, an objectively reasonable

---

[28] The Plaintiffs acknowledge in their response briefing that Plaintiff Ramirez attempted to stand up when Sheriff Riley entered the room.  *See* [ECF 41 at 14].

officer could have concluded that it was necessary to take Plaintiff Ramirez to the ground to maintain control over her.

The Court concludes that the evidence before it is sufficient to show that Plaintiff Ramirez received some injury from the head banging. Specifically, the summary judgment record contains a picture depicting Plaintiff Ramirez with a partial black eye. *See* [PLAINTIFFS'-APP at 11]. Nevertheless, the Court concludes that Deputy Killian is entitled to qualified immunity because the force used was not excessive or unreasonable. As explained previously, Plaintiff Ramirez persistently failed to comply with many of Deputy Killian's orders during the first eleven minutes of the encounter. Nevertheless, Deputy Killian did not immediately resort to using physical force against her. To the contrary, he responded with four less-intrusive, non-physical attempts to gain her compliance with pepper spray. Deputy Killian eventually gained Plaintiff Ramirez's compliance, successfully handcuffed her, seated her on the living room couch, and ordered her to say seated. Shortly thereafter, Plaintiff Ramirez attempted to stand up, once again failing to comply with one of Deputy Killian's lawful orders. Deputy Killian immediately responded with a single, more-intrusive physical attempt to gain Plaintiff Ramirez's compliance by grabbing her by the hair and taking her to the ground. The Court, acknowledging the totality of the circumstances and viewing the evidence in the light most favorable to the Plaintiffs, concludes that the takedown and resultant head banging of Plaintiff Ramirez by Deputy Killian was a measured and ascending response to her persistent noncompliance with his orders. *See, e.g.*, *Poole*, 691 F.3d at 629 (concluding that "the force the officers used in arresting [the appellant] was not objectively excessive or clearly unreasonable" under circumstances in which the officers "responded with 'measured and ascending' actions that corresponded to [the appellant's] escalating verbal and physical resistance"); *Galvan v. City*

*of San Antonio*, 435 F. App'x 309, 311 (5th Cir. 2010) (holding that "the officers did not violate the Fourth Amendment by using excessive force" under circumstances in which "the officers reacted [to the suspect's noncompliance] with measured and ascending responses," namely, "verbal warnings, pepper spray, hand-and arm-manipulation techniques, and then the use of a taser").

It is therefore recommended that summary judgment be granted on the head banging issue.

### iii.  Ribs Stabbing

Deputy Killian argues, inter alia, that he is entitled to qualified immunity on the ribs stabbing issue because the summary judgment evidence does not create a genuine issue of material fact supporting the first element necessary to overcome the defense of qualified immunity.  The Court agrees.

The Court finds that the Plaintiffs have failed to meet their summary judgment burden to identify evidence reasonably showing that Deputy Killian stabbed Plaintiff Ramirez in the ribs with a pair of keys while ordering her to enter his vehicle in violation of the Fourth Amendment. The body camera video recording before the Court indicates that approximately fifteen minutes into the encounter, Deputy Killian and another deputy walked Plaintiff Ramirez from the living room to Deputy Killian's vehicle.  Deputy Killian then ordered Plaintiff Ramirez to enter the vehicle.  Plaintiff Ramirez partially complied, leaving her right leg outside of the vehicle.  Upon partially entering the vehicle, Plaintiff Ramirez told Deputy Killian that the handcuffs were too tight.  Deputy Killian responded by ordering her to lean forward so he could attempt to loosen the handcuffs with his keys.  After Deputy Killian finished adjusting the handcuffs, Plaintiff Ramirez shouted, "You tightened them more!"  At that point, approximately seventeen minutes

into the encounter, another officer appeared on the scene in camera view.  Deputy Killian again

ordered Plaintiff Ramirez to enter the vehicle.  He then shoved Plaintiff Ramirez into the vehicle

with his left hand, in which he held his keys, and began to secure her seatbelt.  As he secured her

seatbelt, Deputy Killian stated, "Get in the . . . car and quit it.  I've had enough of this."  Deputy

Killian stated in his sworn affidavit that Plaintiff Ramirez was "belligerent while being placed in

the patrol vehicle."  [KILLIAN-APP at 4].  He also stated that "[i]n order to safely transport

[Plaintiff] Ramirez, I needed [her] to be completely in the vehicle, with a seatbelt applied."

Although Plaintiff Ramirez was handcuffed, she was actively failing to comply with Deputy

Killian's lawful order to enter the vehicle.  Under the totality of the circumstances with which

Deputy Killian was presented, an objectively reasonable officer could have concluded that it was

necessary to shove Plaintiff Ramirez into the vehicle in order to transport her to the nearby police

station.

       Deputy Killian admits he shoved Plaintiff Ramirez into his police vehicle while holding

keys, and that the keys may have contacted Plaintiff Ramirez during this time. *Id.*  Thus, a fact

question exists as to whether the keys contacted Plaintiff Ramirez's ribs.  The Court, having

concluded that Deputy Killian's act of shoving Plaintiff Ramirez into the vehicle was related to

continued noncompliance, finds that the fact issue of whether the keys contacted Plaintiff

Ramirez is not material.  Plaintiff Ramirez must show more than the use of force; she must show

such force was unreasonable or excessive to the need and resulted in some actionable injury.

There is no indication from the video footage or other summary judgment evidence that Deputy

Killian wielded the keys as a weapon to apply force meant to punish Plaintiff Ramirez.

Although Plaintiff Ramirez submitted a photograph of a black eye allegedly sustained from the

"head banging" incident, she did not submit any evidence of injury sustained from the key

incident.  The lack of this evidence combined with the reasonable application of some force render the factual question of whether any contact with the keys occurred immaterial to a determination of excessive force.  Plaintiff Ramirez did not file an affidavit alleging she was bruised, sore, cut or otherwise harmed during the incident with the keys, and she made no contemporaneous statements of injury during the video footage of the incident concerning contact with the keys.  Although Plaintiff Ramirez made allegations in her complaint about physical pain and mental and emotional injuries generally related to the entire incident, she failed to meet the summary judgment burden to overcome Deputy Killian's entitlement to qualified immunity by establishing a fact question that she sustained an injury from an application of force that was excessive to the need.

It is therefore recommended that summary judgment be granted on the ribs stabbing issue.

## V.  <u>RECOMMENDATION</u>

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that Deputy Killian's Objections to Exhibits A, B, C, and D be GRANTED, and that his objections to Exhibit E be OVERRULED.  It is further RECOMMENDED that Deputy Killian's Motion for Summary Judgment be GRANTED on the claim of unreasonable search and seizure/false arrest as it relates to both the issues of (i) the search of the Plaintiffs' home by Deputy Killian and (ii) the arrest of the Plaintiffs by Deputy Killian, GRANTED on the claim of excessive force as it relates to the issues of (i) the pepper spraying of both Plaintiffs by Deputy Killian; (ii) the head banging of Plaintiff Ramirez by Deputy Killian; and (iii) the ribs stabbing of Plaintiff Ramirez by Deputy Killian, and DENIED

on the claim of unreasonable search and seizure/false arrest as it relates to the issue of the seizure of Plaintiffs' dogs.

## VI.  INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED August 20, 2019.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated above the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). *Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed* as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).