IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RUBICELA RAMIREZ and | § | |
| FRANCISCO GONZALES, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:18-CV-107-Z-BR |
| | § | |
| JAMES KILLIAN, a.k.a. "JR Killian" and | § | |
| KENT RILEY, | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION TO GRANT DEFENDANT KENT RILEY'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF QUALIFIED IMMUNITY

Before the Court is the Motion for Summary Judgment on the issue of qualified immunity filed by Defendant Kent Riley ("Sheriff Riley"), with a brief in support and appendix of evidence. [ECF 32, 33, 34, respectively]. Plaintiffs Rubicela Ramirez and Francisco Gonzales ("Plaintiffs") filed a Response to the Motion, along with a brief in opposition and an appendix of evidence. [ECF 43, 44, 45, respectively]. Sheriff Riley filed a Reply to the Plaintiffs' Response and appendix of evidence, as well as Objections to and a Motion to Strike the Plaintiffs' Summary Judgment Evidence. [ECF 47, 46, respectively]. This Court has reviewed all the summary judgment evidence identified in this paragraph and all the arguments of the parties set forth in these documents.[1] For the reasons explained below, the Court recommends that the Objections be GRANTED in part and OVERRULED in part, the Motion to Strike be GRANTED in part and DENIED in part, and the Motion for Summary Judgment be GRANTED.

---

[1] The Court notes that Defendant James Killian ("Deputy Killian") has filed an independent Motion for Summary Judgment on the issue of qualified immunity. [ECF 36]. The Court has not considered either the evidence or arguments attached to Deputy Killian's independent Motion in issuing this Findings, Conclusions, and Recommendation, except to the extent it has been incorporated into Sheriff Riley's Motion and the Response and Reply thereto.

## I. <u>FACTUAL EVIDENCE BEFORE THE COURT</u>

On the afternoon of June 20, 2016, a 9ll call was placed to the Collingsworth County Sheriff's Office regarding a "big fight going on" between "Rubicela and her dude" at the Plaintiffs' home.  [DEFENDANT RILEY'S MSJ APPENDIX ECF 34 (hereinafter "RILEY-APP") at 31, 33-35].[2]  Deputy Killian was immediately dispatched to investigate the 911 call.  *Id.* at 33.  Based upon his observations during arrival at the scene, Deputy Killian requested backup and advised dispatch that he was entering the home because it sounded like someone was "getting beat."  *Id*. at 34.

Deputy Killian proceeded to enter the home and the interactions between Deputy Killian and the Plaintiffs were recorded by Deputy Killian's body camera video.  *See generally id.* at 29.  The video footage reveals that Deputy Killian used the following force against Plaintiffs during the encounter: (1) firing several shots at two of the Plaintiffs' dogs; (2) deploying several bursts of pepper spray; (3) kicking Plaintiff Gonzales to take him to the ground; (4) forcing Plaintiff Ramirez to the ground by her hair after she was handcuffed; and (5) forcing Plaintiff Ramirez into his police vehicle by shoving her while holding keys.  *Id*.  The video footage also reveals that Plaintiffs were not entirely compliant with Deputy Killian's orders throughout the video.  *Id*.  During the encounter, Deputy Killian radioed dispatch that "I need help over here, I just had a dog sicced on me.  I need help over here now."  *Id*.

Sheriff Riley, Deputy Billy Doss of the Collingsworth County Sheriff's Office and another officer from a different law enforcement agency all responded to the scene based on Deputy Killian's request for backup.  *Id*.  Sheriff Riley filed a sworn affidavit in conjunction

---

[2] In deciding Sheriff Riley's Motion for Summary Judgment, the Court views the evidence in the light most favorable to the Plaintiffs and draws all reasonable inferences in their favor.

with his motion for summary judgment in which he provided a general description of what he knew regarding Deputy Killian's encounter with the Plaintiffs.  *See* [RILEY-APP at 22-24].  In his affidavit, Sheriff Riley indicated he was outside of Collingsworth County on a business errand when he "heard dispatch send Deputy Killian to [the Plaintiffs' home] on a disturbance call."  *Id*. at 22.  Sheriff Riley was "familiar with [the Plaintiff's home] and its occupants and thought the disturbance was likely domestic in nature."  *Id*.  On his way back to Collingsworth County, Sheriff Riley "heard Deputy Killian indicate he was entering the house," "heard Deputy Killian indicate he was attacked by a dog and need[ed] back[up] immediately," and "continued to hear Deputy Killian's request[s] for backup over dispatch as [he] made [his] way to the scene."  *Id*.

When Sheriff Riley arrived at the scene, he "entered the home through the back door." *Id*. at 23.  At that time, he "smelled the odor of pepper spray," "saw an injured dog," and "knew that Deputy Killian had reported a dog attacking him," but he was otherwise "unaware as to what else had transpired in the [home]." *Id*.  Sheriff Riley subsequently entered the living room where he saw Plaintiff Gonzales on the ground and Plaintiff Ramirez secured on the ground by Deputy Killian.  *See id*.  Approximately thirteen minutes into the twenty-eight-minute encounter, Sheriff Riley arrived on the scene and entered the living room from the kitchen.  *Id.* at 29.  Plaintiff Ramirez, already handcuffed and order by Deputy Killian to remain seated, attempted to stand up.  *Id*.  In response, Deputy Killian immediately grabbed her by the hair and took her to the ground.  *Id.*  In response to his actions, Plaintiff Ramirez shouted:

> Kent,[3] Kent, help!  Kent!  Did you see that?  You see that, Kent?  You're seeing that.  Ok, we didn't do nothing.  Please help!  Help! . . .  Kent help me! . . .  Kent help me!  Help me Kent! . . .  [H]e str[uck] me on the . . . floor, Kent.  Take me in Kent, with you.  Take me in with you, Kent.  Oh God.

---

[3] Plaintiff Ramirez referred to Sheriff Riley by his first name (Kent) throughout the video.

*Id.*  Although Sheriff Riley's affidavit indicates that he "did not see Deputy Killian bang [Plaintiff Ramirez's] head against the ground," the above evidence from the body camera video indicates that Plaintiff Ramirez called out to Sheriff Riley and indicated that "[Deputy Killian] str[uck] me on the … floor." *See id.* at 29.  At about the same time, Sheriff Riley "saw Deputy Billy Doss standing in the front entryway, appearing to [have] just arrive[d] on the scene as well."  *Id.* at 23.  Sheriff Riley then "determined that [he] needed to secure [Plaintiff Gonzales] in an attempt to deescalate and secure the scene," and he "knew Deputy Doss was present and was staying with Deputy Killian to ensure the situation remained calm and under control."  *Id.* "By the time [Sheriff Riley] had secured [Plaintiff Gonzales in his vehicle] and made [his] way to Deputy Killian's vehicle, [Plaintiff Ramirez] was [already] secured in [Deputy Killian's] vehicle."  *Id.*

While Sheriff Riley was with Plaintiff Gonzales, Deputy Killian and the other deputy walked Plaintiff Ramirez from the living room to Deputy Killian's vehicle.  *Id.* at 29.  Deputy Killian then ordered Plaintiff Ramirez to enter the vehicle.  *Id.*  Plaintiff Ramirez partially complied, leaving her right leg outside of the vehicle.  *Id.*  Upon partially entering the vehicle, Plaintiff Ramirez told Deputy Killian that the handcuffs were too tight.  *Id.*  Deputy Killian attempted to loosen the handcuffs with his keys.  After Deputy Killian finished adjusting the handcuffs, Plaintiff Ramirez shouted, "You tightened them more!"  *Id.*  Another officer (not part of the Collingsworth County Sheriff's Office) appeared on the scene.  *Id.*  Deputy Killian again ordered Plaintiff Ramirez to enter the vehicle.  *Id.*  He then shoved Plaintiff Ramirez into the vehicle with his left hand, in which he held his keys, and began to secure her seatbelt.  *Id.*  As he secured her seatbelt, Deputy Killian stated, "Get in the . . . car and quit it.  I've had enough of this."  *Id.*  Plaintiff Ramirez responded, "Oh God.  This is a nightmare."  *Id.*

Deputy Killian subsequently talked to the other deputy, the officer, and Sheriff Riley about the encounter. *Id.* The information provided reflected Deputy Killian's opinion that Plaintiffs' failed to comply with his orders and that Plaintiffs' dogs attempted to attack Deputy Killian. *Id.* Deputy Killian did not provide any information on the encounter to Sheriff Riley prior to securing Plaintiff Ramirez for transport, and no further force was used by Deputy Killian on Plaintiff Ramirez after she was secured in the vehicle. *Id.*

On November 20, 2017, Deputy Killian pleaded guilty to the charge of official oppression as alleged in a Texas information. *See* [PLAINTIFFS' MSJ RESPONSE APPENDIX ECF 45 (hereinafter "PLAINTIFFS'-APP") at 8-10]. That same day, the state trial court received Deputy Killian's plea, deferred a finding of guilt on it, placed him on a one-year term of deferred adjudication probation, and signed a deferment of adjudication.[4]

Sheriff Riley also filed a declaration under penalty of perjury by Margo Frasier's, a law enforcement expert and the former Sheriff of Travis County, Texas, that provided an opinion regarding the actions taken by Sheriff Riley at the scene of the encounter between Deputy Killian and the Plaintiffs. *See id.* at 8-20.

## II.  **THE PLAINTIFFS' CLAIM FOR RELIEF AGAINST SHERIFF RILEY**[5]

The Plaintiffs make one claim in their Complaint against Sheriff Riley under 42 U.S.C. § 1983: failure to intervene against the use of excessive force by Deputy Killian. That claim is specifically covered by the Fourth Amendment. *See* [ECF 21].

---

[4] The deferment of adjudication was filed and duly recorded in the Collingsworth County Court Records at "VOL 19 Page 550." [PLAINTIFFS'-APP at 10]. Although the deferment of adjudication is before the Court, the information is not. The consideration of this evidence by the Court is the subject of evidentiary objections discussed herein. Further, Deputy Killian's after the fact plea is not relevant to what Sheriff Riley knew when he was at the scene and failed to separate Deputy Killian from Plaintiff Ramirez.

[5] The Court only lists the claim here that was not dismissed by the District Judge's Order dated December 20, 2018. *See* [ECF 27].

The Fourth Amendment guarantees "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const.

amend. IV.[6]  "[T]he 'touchstone of Fourth Amendment analysis is reasonableness.' "  *United

States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) (quoting *Ohio v. Robinette*, 519 U.S. 33, 39

(1996)).  "Reasonableness, in turn, is measured in objective terms by examining the totality of

the circumstances."  *Robinette*, 519 U.S. at 39.

### III.  <u>STANDARD OF REVIEW</u>

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law."  A dispute about a material fact is "genuine" if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson

v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The party seeking summary judgment "always

bears the initial responsibility of informing the district court of the basis for its motion."  *Celotex

Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A qualified immunity defense, however, alters the

usual summary judgment burden of proof, such that governmental employees need only assert

the defense in good faith, putting forth no evidence, to shift the burden to the non-movant to

show the defense does not apply.  *Davalos v. Johns*, No. 3:11-CV-0222-P, 2013 WL 1820313, at

*3-4 (N.D. Tex. Apr. 30, 2013) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).[7]

The non-movant must demonstrate how specific evidence in the record, and all reasonable

inferences therefrom, viewed by the court in a light most favorable to the non-movant, presents a

---

[6] The Fourth Amendment is "applicable through the Fourteenth Amendment to the States."  *Bailey v.
United States*, 568 U.S. 186, 192 (2013).

[7] Sheriff Riley has asserted the defense of qualified immunity in his motion for summary judgment.
Therefore, the burden has shifted to the Plaintiffs to demonstrate that he is *not* entitled to qualified immunity.

genuine, material fact dispute for trial regarding all essential elements of the claim. *Id.* at \*4. "[C]onclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment." *Id.* (quoting *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010)). A plaintiff's failure to produce proof as to *any* essential element of the claim renders all other facts regarding that claim immaterial. *See Trugreen Landcare, L.L.C. v. Scott*, 512 F. Supp. 2d 613, 623 (N.D. Tex. 2007). Summary judgment is mandatory as to the claim in question if a plaintiff fails to meet this burden. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994).

Qualified immunity is a defense that protects government officials from suit when they exercise the discretionary functions of their office. *See Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). In order to overcome a defense of qualified immunity, a plaintiff must establish that: (1) "the official violated a statutory or constitutional right" and (2) "the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). A plaintiff must demonstrate that the defendant's conduct was objectively unreasonable in light of the legal rules clearly established at the time of her actions. *Thomas v. City of Dallas*, 175 F.3d 358, 364 (5th Cir. 1999). Conclusory allegations of wrongdoing will not satisfy these requirements. *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988). A court may examine these factors in any order. *Pearson v. Callahan*, 555 U.S. 223 (2009), *overruling in part Saucier v. Katz*, 553 U.S. 194 (2001). It is a plaintiff's burden to present evidence that a defendant is not entitled to qualified immunity when the defense is raised. *See Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 489 (5th Cir. 2001).

Claims of qualified immunity are not judged on twenty-twenty hindsight, or in light of knowledge ascertained after an event, but by looking through the eyes of the public official, considering what that official knew about the situation at the relevant time. *Graham v. Connor*, 490 U.S. 386, 396-97 (1989); *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012). When properly applied, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 34l (1986). "[P]re-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Pierce v. Smith*, 117 F.3d 866, 882 (5th Cir. 1997) (emphasis and citation omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005) (citing *Malley*, 475 U.S. at 341).

## IV.  ANALYSIS

The Court's analysis is divided in two parts. First, the Court addresses whether Sheriff Riley's objections to the Plaintiffs' appendix of evidence should be overruled and whether his corresponding motion to strike should be denied. Second, the Court addresses whether the Plaintiffs' claim—i.e., failure to intervene—overcomes Sheriff Riley's qualified immunity defense.

### A.  OBJECTIONS TO AND MOTION TO STRIKE EVIDENCE

### 1.  EXHIBIT D

Sheriff Riley's first objection is to Exhibit D. Exhibit D contains a deferment of adjudication indicating that Deputy Killian pleaded guilty to the charge of official oppression. *See* [PLAINTIFFS'-APP at 8-10]. Sheriff Riley argues, among other things, that Exhibit D

should be excluded because it was not disclosed in the Plaintiffs' Rule 26(a)(1) disclosures. The Court agrees.[8]

The Court concludes that Sheriff Riley's Rule 26(a)(1) disclosure objection is sufficient. Federal Rule of Civil Procedure 37(c)(1) provides in relevant part:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

In evaluating whether a violation of Rule 26 is substantially justified or harmless, courts examine four factors:

(1) "the importance of the evidence;"

(2) "the prejudice to the opposing party of including the evidence;"

(3) "the possibility of curing such prejudice by granting a continuance;" and

(4) "the explanation for the party's failure to disclose."

*Davidson v. AT&T Mobility, LLC*, No. 3:17-CV-0006-D, 2018 WL 1609756, at *1 (N.D. Tex. Apr. 3, 2018). "Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness." *Id.* (quoting *Current v. Atochem N. Am., Inc.*, No. W-00-CA-332, 2001 WL 36101282, at *2 (W.D. Tex. Sept. 18, 2001)). The Plaintiffs never responded to Sheriff Riley's motion to strike or made any other attempt to explain their failure to disclose the

---

[8] Sheriff Riley additionally argues that Exhibit D should be excluded because it is not properly authenticated and it is not relevant to the analysis of the Motion for Summary Judgment. Regarding the relevancy analysis, the Court agrees (authentication objections, however, do not appear to be sustainable at this stage of proceedings). However, because the Court ultimately concludes that Exhibit D should be excluded on disclosure grounds, the Court declines to address the authentication argument. As to relevancy, the Court notes that Sheriff Riley's entitlement to qualified immunity is not based on the 20/20 hindsight or learning that Deputy Killian reevaluated his use of force after the fact, but rather is based on "what that official knew about the situation at the relevant time." *Graham*, 490 U.S. at 396-97. Sheriff Riley only knew that Deputy Killian believed he needed to use force in response to a domestic violence situation escalated by dog attacks, where individuals were not complying with his orders.

deferment of adjudication contained within Exhibit D.  Therefore, the Plaintiffs have failed to demonstrate the importance of the evidence to their case or what prejudice might occur if it were excluded.  Further, the Plaintiffs have failed to show that their failure to comply with Rule 26(a)(1) was substantially justified or harmless.  The Court, having carefully considered the relevant four factors, is of the opinion that Exhibit D should be excluded.

## 2.  EXHIBIT E

Sheriff Riley's second and final objection is to Exhibit E.  Exhibit E contains a picture depicting Plaintiff Ramirez with a partial black eye.  *See* [PLAINTIFFS'-APP at 11].  Sheriff Riley argues that Exhibit E should be excluded because it is not properly authenticated, there is no foundation for its entry, and it contains hearsay.  The Court disagrees.

The Court concludes that Sheriff Riley's authentication and foundation objections are insufficient.  Plaintiffs were under no legal obligation to authenticate Exhibit E or provide a foundation for its entry on summary judgment.  *See Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) ("At the summary judgment stage, evidence need not be authenticated or otherwise presented in an admissible form.").  As the Fifth Circuit explained in *Maurer*, "materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.' " *Id.* (quoting *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016)).  As stated above, the picture contained within Exhibit E depicts Plaintiff Ramirez with a partial black eye.  The picture is presumably in the possession of Plaintiff Ramirez or the person who took the picture.  Pictures are regularly used and admitted at trial.  Exhibit E is certainly capable of being presented in a form that would be admissible at an eventual trial.

The Court concludes that Sheriff Riley's hearsay objection is also insufficient. "Under Federal Rule of Evidence 801(c), hearsay is a statement, other than one made by the declarant while testifying at trial or a hearing, offered in evidence to prove the truth of the matter asserted." *United States v. St. Junius*, 739 F.3d 193, 202 (5th Cir. 2013). "Therefore, the hearsay rule applies only to out of court statements, which the photograph in this case is not." *Blair v. City of Dallas, Texas*, No. 3:14-CV-01515-P, 2015 WL 12940189, at *6 (N.D. Tex. July 2, 2015). The photograph contained within Exhibit E does not contain any out-of-court statements whatsoever. As such, Exhibit E is not hearsay.

*    *    *

For the above reasons, the undersigned recommends that Sheriff Riley's objection to Exhibit D be granted, that his objections to Exhibit E be overruled, and that his motion to strike be granted in part and denied in part accordingly.

## B. QUALIFIED IMMUNITY

## 1. FAILURE TO INTERVENE

The Plaintiffs' claim of failure to intervene encompasses one issue, namely, whether Sheriff Riley failed to intervene to protect Plaintiff Ramirez from the allegedly excessive force used when Deputy Killian "stabbed" Plaintiff Ramirez in the ribs with a set of keys while securing her in his patrol vehicle. The Court addresses that issue below.

### i. Ribs Stabbing

"[A]n officer who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). To establish a failure to intervene claim under section 1983, a plaintiff must allege that an officer:

(1) "*knew that a fellow officer violated an individual's constitutional rights*";

(2) "had a reasonable opportunity to prevent the harm"; and

(3) "chose not to act."

*Garrett v. Crawford*, No. SA-15-CV-261-XR, 2016 WL 843391, at *9 (W.D. Tex. Mar. 1, 2016)
(emphasis added) (citing *Whitley v. Hanna*, 726 F.3d 631, 646 (5th Cir. 2013)).

Sheriff Riley argues, inter alia, that he is entitled to qualified immunity on the ribs
stabbing issue because the summary judgment evidence does not create a genuine issue of
material fact supporting the first element necessary to overcome the defense of qualified
immunity. The Court agrees.

The Court finds that the Plaintiffs have failed to meet their summary judgment burden to
identify evidence reasonably showing that Sheriff Riley failed to intervene when Deputy Killian
allegedly stabbed Plaintiff Ramirez in the ribs with a pair of keys while ordering her to enter his
vehicle in violation of the Fourth Amendment. To meet this burden, Plaintiffs must present
evidence sufficient to create a genuine issue of material fact that Sheriff Riley *knew* that Deputy
Killian used excessive force against Plaintiff Ramirez, such that he needed to intervene to
prevent the further use of excessive force (i.e. that Sheriff Riley knew Deputy Killian's prior use
of force against Plaintiffs was excessive—the only one he observed or knew of at the time was
when Deputy Killian took Plaintiff Ramirez to the ground after she was handcuffed—*prior to*
failing to separate Deputy Killian from Plaintiff Ramirez when Deputy Killian transported her to
his vehicle and secured her into that vehicle). *See Whitley*, 726 F.3d at 646.

The body camera video recording before the Court indicates that Sheriff Riley entered the
living room from the kitchen at about the same time that Deputy Killian grabbed Plaintiff
Ramirez by the hair and took her to the ground. [RILEY-APP at 29]. Additionally, Plaintiff

Ramirez can be heard on the video asking for help from Sheriff Riley after Deputy Killian took her to the ground. *Id.* When viewed in the light most favorable to the Plaintiffs, the recording indicates that Sheriff Riley witnessed or was told that Deputy Killian banged Plaintiff Ramirez's head against the living room floor.[9]

Sheriff Riley's sworn affidavit indicates that at about the same time he "saw Deputy Billy Doss standing in the front entryway, appearing to [have] just arrive[d] on the scene as well." [RILEY-APP at 18].[10] He then "determined that [he] needed to secure [Plaintiff Gonzales] in an attempt to deescalate and secure the scene." *Id.* Sheriff Riley "left [Plaintiff Ramirez] with Deputy Doss and Deputy Killian, and escorted [Plaintiff Gonzales] out the back door to [Sheriff Riley's] vehicle." *Id.* Sheriff Riley "was not present when Deputy Killian secured [Plaintiff Ramirez] in [Deputy Killian's] vehicle." *Id.* However, he "knew Deputy Doss was present and was staying with Deputy Killian to ensure the situation remained calm and under control." *Id.* "By the time [Sheriff Riley] had secured [Plaintiff Gonzales in his vehicle] and made [his] way to Deputy Killian's vehicle, [Plaintiff Ramirez] was [already] secured in [Deputy Killian's] vehicle." *Id.*

Under the totality of the circumstances presented, an objectively reasonable officer could have concluded that it was necessary to remove Plaintiff Gonzales from the living room in order to deescalate the situation. *See* [RILEY-APP at 8-10] (declaration of law enforcement expert

---

[9] The Court acknowledges that Sheriff Riley stated in his sworn affidavit that he "did not see Deputy Killian bang [Plaintiff Ramirez's] head against the ground." [RILEY-APP at 18]. That may very well be the case. However, at this stage of the proceedings, the Court must construe all reasonable inferences in favor of the Plaintiffs.

[10] Deputy Doss does not appear on the body camera video recording until approximately forty-five (45) seconds after Sheriff Riley leaves the living room with Plaintiff Gonzales. However, such is reasonably explained by the fact that: (1) Deputy Killian was facing away from the front door and (2) Deputy Doss was standing in the front doorway.

Margo Frasier stating that "[a]t the time of the incident in question, [Sheriff] Riley would have had, based on his training and observations, a rational basis for his belief that [Plaintiff] Ramirez and [Plaintiff] Gonzales should be separated to deescalate the situation and that the best choice was for him to take [Plaintiff] Gonzales outside the house").  An objectively reasonable officer could have also concluded that it was unnecessary to remain in the living room with Deputy Killian and Plaintiff Ramirez in light of Deputy Doss's presence.  *See id.* (declaration of law enforcement expert Margo Frasier stating that "[a]t the time of the incident in question, [Sheriff] Riley would have had, based on his training and observations, a rational basis for his belief that [Plaintiff] Ramirez *was not in danger of a violation of her constitutional rights* if [Deputy] Killian and the off-duty deputy escorted her to [Deputy] Killian's patrol unit").  This is especially true given Sheriff Riley's limited knowledge of what had occurred in the home prior to his arrival and whether Deputy Killian's use of force in taking Plaintiff Ramirez to the ground was reasonable in light of what had transpired outside of Sheriff Riley's presence.

To be obligated to intervene to prevent the alleged use of force against Plaintiff Ramirez where the keys were involved, Sheriff Riley must have had reason to believe Deputy Killian acted or would act with excessive force.  "The rationale underlying the bystander liability theory is that a bystanding officer, by choosing not to intervene, functionally participates in the unconstitutional act of his fellow officer. If the bystander lacks such specific knowledge, he cannot be a participant in the unlawful acts, and the imposition of personal liability is impermissible." *Montgomery v. Hollins*, No. 3:18-CV-1954-M-BN, 2019 WL 2424053, at *3 (N.D. Tex. May 8, 2019), report and recommendation adopted, No. 3:18-CVV-1954-M-BN, 2019 WL 2422493 (N.D. Tex. June 10, 2019) (citing *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 204 n.24 (4th Cir. 2002)).

The Court finds, taking the facts in the light most favorable to Plaintiffs, that Sheriff Riley was aware that Deputy Killian banged Plaintiff Ramirez's head on the ground; nevertheless, Sheriff Riley did not observe the preceding interactions between Deputy Killian and the Plaintiffs such that he could determine such force was excessive and unreasonable and that he needed to intervene in future actions between Plaintiff Ramirez and Deputy Killian. Sheriff Riley, according to his affidavit, overheard Deputy Killian's calls for backup over the radio, smelled the odor of pepper spray when he entered the home, observed Deputy Killian keeping Plaintiff Ramirez on the ground, and decided he needed to deescalate the situation. According to the video evidence, Sheriff Riley heard and possibly observed Deputy Killian take Plaintiff Ramirez to the ground one time, striking her head on the floor. These facts could also indicate to Sheriff Riley that Plaintiffs were non-compliant with Deputy Killian's orders. Absent observation of force used in the face of compliance, which is lacking in this summary judgment record, Sheriff Riley is entitled to qualified immunity on Plaintiff Ramirez's failure to intervene to prevent excessive force claim because his actions "could reasonably have been believed to be legal." *See Whitley*, 726 F.3d at 638.

In considering the reasonableness of Sheriff Riley's failure to intervene to prevent any further force by Deputy Killian against Plaintiff Ramirez, the Court has considered the expert opinion provided by Margo Frasier. The Fifth Circuit has explained that "[a] court considers the expertise and experience of the law enforcement officials when considering what a 'reasonable person' would have concluded." *Mack v. City of Abilene*, 461 F.3d 547, 552 n.1 (5th Cir. 2006). However, the Fifth Circuit has also explained that courts need not necessarily follow expert opinions in the objective-reasonableness context:

an expert's opinion does not establish reasonableness as a matter of law, especially when directly contradicted by another expert's well-supported opinion. *See Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242 (1986) (holding that credibility determinations are to be determined by the trier of fact, not by the court on a summary judgment motion); 7 Wigmore on Evidence § 1920, at 18 (Chadborn rev., 1978) (holding that an expert cannot usurp the jury's function as a trier of fact because the jury can choose to reject the expert's opinion).  We can still conclude, of course, that one expert accurately expresses what a reasonable police officer would do, but we are not forced to so conclude by the mere presence of an expert's opinion.

*Gutierrez v. City of San Antonio*, 139 F.3d 441, 447 (5th Cir. 1998) (footnote omitted).  This is

because "objective reasonableness in a qualified immunity context is a question of law for the

court to decide, not an issue of fact."  *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 256 (5th

Cir. 2005) (abrogated on other grounds).

      Sheriff Riley submitted the affidavit of expert Margo Fraiser regarding his use of force

against Plaintiffs. [RILEY-APP at 2-17].  Ms. Fraiser determined that:

"[a]t the time of the incident in question, [Sheriff] Riley would have had, based on his training and observations, a rational basis for his belief that [Plaintiff] Ramirez and [Plaintiff] Gonzales should be separated to deescalate the situation and that the best choice was for him to take [Plaintiff] Gonzales outside the house" and "[a]t the time of the incident in question, [Sheriff] Riley would have had, based on his training and observations, a rational basis for his belief that [Plaintiff] Ramirez was not in danger of a violation of her constitutional rights if [Deputy] Killian and the off-duty deputy escorted her to [Deputy] Killian's patrol unit."

[RILEY-APP at 2].  Plaintiffs did not submit competing testimony from an expert on the issue of

the reasonableness of Sheriff Riley's actions.  Ms. Fraiser's opinion is persuasive to the Court in

that the Court has reviewed the affidavit of Sheriff Riley and the body camera video of Deputy

Killian and determines that, in the light most favorable to Plaintiff Ramirez, Sheriff Riley was

aware that Deputy Killian used force against Plaintiff Ramirez by taking her to the floor when

Sheriff Riley first entered the room.  However, this factual dispute of observing force does not

create an issue regarding the legal question of the reasonableness of Sheriff Riley's behavior.

      The Court further concludes that the Plaintiffs have not met their burden to show that it

was clearly established law as of June 20, 2016, that an officer could be held liable under the

Fourth Amendment for a failure to intervene to stop a second brief instance of excessive force by

another officer against a previously non-compliant handcuffed suspect if, after witnessing the first brief instance of excessive force involving the same, he:

(1) attempted to deescalate the situation by removing another non-compliant suspect from the scene;

(2) did so with the knowledge that a third officer was present and was staying with the other officer and the handcuffed suspect to ensure the situation remained calm and under control;

(3) was not present when the second brief instance of alleged excessive force by the other officer against the handcuffed suspect occurred; and

(4) returned to the scene shortly thereafter.

Ultimately, the Court determines Plaintiffs failed to present summary judgment evidence creating a genuine issue of material fact that Sheriff Riley *knew* that Deputy Killian had used excessive and unreasonable force against Plaintiff Ramirez sufficient to warrant his need to intervene.

Having concluded that Plaintiffs failed to create a genuine issue of material fact that Sheriff Riley had the requisite knowledge that the force used by Deputy Killian was excessive at the time Sheriff Riley allegedly failed to intervene to prevent further force, the Court alternatively concludes that Sheriff Riley is entitled to qualified immunity because Deputy Killian did not in fact use excessive force.[11]—based on Plaintiffs' repeated failure to comply with Deputy Killian's lawful commands—and that any force used by Deputy Killian was not unconstitutionally excessive or unreasonable. *See, e.g., Poole v. City of Shreveport*, 691 F.3d

---

[11] The Court has discussed each interaction between Deputy Killian and Plaintiffs in the Findings, Conclusions and Recommendation on the Motion for Summary Judgment filed by Deputy Killian and found that Deputy Killian did not use excessive force against Plaintiff Ramirez. However, as outlined herein, the Court alternatively concludes that even if Deputy Killian had used excessive force, Plaintiffs failed to present evidence that Sheriff Riley knew or should have known the force was excessive. Absent a showing by the Plaintiffs that Sheriff Riley knew the force used was excessive at the time he failed to separate Deputy Killian and Plaintiff Ramirez, Sheriff Riley had no duty to intervene.

624, 629-30 (5th Cir. 2012) (concluding that "the force the officers used in arresting [the appellant] was not objectively excessive or clearly unreasonable" under circumstances in which the officers "responded with 'measured and ascending' actions that corresponded to [the appellant's] escalating verbal and physical resistance"); *see also Galvan v. City of San Antonio*, 435 F. App'x 309, 311 (5th Cir. 2010) (holding that "the officers did not violate the Fourth Amendment by using excessive force" under circumstances in which "the officers reacted [to the suspect's noncompliance] with measured and ascending responses," namely, "verbal warnings, pepper spray, hand-and arm-manipulation techniques, and then the use of a taser"). The Court finds that Deputy Killian's use of force against Plaintiff Ramirez in taking her to the ground by her hair was not objectively excessive or clearly unreasonable based on her non-compliance with his commands throughout the encounter. As such, Sheriff Riley had no duty to intervene.

Additionally, the Court finds that Deputy Killian did not act with excessive force during the alleged key-stabbing incident. Although Plaintiff Ramirez was handcuffed, she was actively failing to comply with Deputy Killian's lawful order to enter the vehicle. Deputy Doss's sworn affidavit indicates that as he approached the front door of the home he "could see Deputy Killian holding down [Plaintiff Ramirez] on the [living room] floor," "[Plaintiff Gonzales] on the [living room] floor," and "Sheriff Riley standing near [Plaintiff Gonzales]." *Id.* at 20. Deputy Doss subsequently observed Sheriff Riley leave with Plaintiff Gonzales, but he remained with Deputy Killian and Plaintiff Ramirez. *Id.* He and Deputy Killian then "escorted [Plaintiff Ramirez] to Deputy Killian's patrol vehicle." *Id.* at 20-21. At that time another officer "arrived at the vehicle as Deputy Killian was attempting to get [Plaintiff Ramirez] in the [vehicle]." *Id.* at 21.

While standing near the vehicle, Deputy Doss observed Deputy Killian make "multiple requests for [Plaintiff Ramirez] to get in the [vehicle]." *Id.* Plaintiff Ramirez was "agitated,"

"non-cooperative," "screaming," and "refus[ing] to comply with [Deputy Killian's] commands." *Id.* Although Deputy Doss saw Deputy Killian "place [Plaintiff Ramirez] in the vehicle with his hands," he "did not see Deputy Killian 'stab' [Plaintiff Ramirez] with his [vehicle] keys during this process." *Id.* He "only saw Deputy Killian securing [Plaintiff Ramirez] in the vehicle after she continually refused to comply with commands and became more agitated." *Id.* Under the totality of the circumstances with which Deputy Killian was presented, an objectively reasonable officer could have concluded that it was necessary to shove Plaintiff Ramirez into the vehicle in order to transport her to the nearby police station. The Court also notes that by this point, Sheriff Riley had already made the determination to transport Plaintiff Gonzales to his vehicle while Deputy Doss and Deputy Killian transported Plaintiff Ramirez; it is that decision, and not further interactions, that the Court analyzes for reasonableness on the part of Sheriff Riley. Thus, reasonableness of the force used in the ribs stabbing incident is only relevant insofar as Sheriff Riley also cannot be held liable for failing to intervene in the use of force that was not ultimately excessive.

Because the Plaintiffs have failed to create a genuine issue of material fact that Deputy Killian violated Plaintiff Ramirez's Fourth Amendment rights, Sheriff Riley cannot be liable on the ribs stabbing issue for failure to intervene. *See Gilbert v. French*, 364 F. App'x 76, 83 (5th Cir. 2010) ("Since we conclude no officer used excessive force in apprehending [the suspect], we simultaneously conclude that no officer unconstitutionally failed to intervene."). Thus, as Plaintiff Ramirez has failed to show that the force used against her was excessive, it follows that she cannot show Sheriff Riley failed to protect her from such force or intervene in the use of such force. The first factor of the Fifth Circuit *Whitley* test requires a violation of an individual's constitutional rights to have occurred as a predicate to the need to intervene by another law

enforcement official.  *See Whitley*, 726 F.3d at 646.  If no violation of rights occurred (i.e. if the force used was not objectively unreasonable) by Deputy Killian, then it follows that Sheriff Riley had no duty to intervene.  *See id*.

It is therefore recommended that summary judgment be granted on Plaintiff Ramirez's claim of failure to intervene in the use of excessive force by Deputy Killian.

## V.  RECOMMENDATION

For the above reasons, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that Sheriff Riley's objection to Exhibit D be GRANTED, that his objections to Exhibit E be OVERRULED, and that his motion to strike be GRANTED in part and DENIED in part accordingly.  It is further RECOMMENDED that Sheriff Riley's Motion for Summary Judgment be GRANTED on the claim of failure to intervene as it relates to the use of force against Plaintiff Ramirez by Deputy Killian.

## VI.  INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED August 20, 2019.

_Lee Ann Reno_
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions, and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is

fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). *Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed* as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions, and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir. 1988).

CIVIL\RAMIREZ\FCR-MSJ-RILEY-GRANT:4