

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

AUG 1 2 2022

CLERK, U.S. DISTRICT COURT

By_____
Deputy

| | | |
|---|---|---|
| RUBICELA RAMIREZ, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:18-CV-107-Z-BR |
| | § | |
| JAMES KILLIAN, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

Before the Court is Defendant James Killian's ("Defendant") Renewed Motion for Judgment as a Matter of Law, Alternative Motion for New Trial, and Alternative Motion for Conditional Remittitur ("Motion") (ECF No. 141), filed on April 22, 2022.[1] Having considered the Motion and applicable law, the Court **GRANTS** the Motion. Because the Court grants the Motion, the Court **DENIES** as moot Plaintiffs' Motions for Attorney's Fees (ECF Nos. 136, 138) and Defendant's Motion to Strike Plaintiffs' Reply Evidence (ECF No. 152). The Court **DENIES** all relief not expressly granted herein.

### BACKGROUND

Defendant formerly served as a deputy sheriff with the Collingsworth County Sheriff's Department. On June 20, 2016, in response to a domestic-violence call, Defendant entered Plaintiffs' home without a warrant. Defendant shot Plaintiffs' pit bull when responding to the call.

---

[1] The Court rendered judgment in this case on March 25, 2022. Defendant filed the instant Motion on April 15, 2022. Parties completed briefing related to the Motion on May 20, 2022. The Court immediately requested a transcript from its now-retired court reporter on May 13, 2022. The court reporter estimated it would take 35 days to complete the Court's request. The court reporter finished the transcript on June 24, 2022. Citations to "Pt. Tr." refer to the pre-trial transcript. Citations to "Tr." refer to the trial transcript.

On June 6, 2018, Plaintiffs sued Defendant under 42 U.S.C. § 1983 for unreasonable seizure of the pit bull, among other claims. *See* ECF No. 1.

Before addressing the merits of Defendant's Motion, the Court recounts several pre-trial and trial-related missteps that typified this litigation.

### A. Pre-Trial Proceedings

The Court begins by addressing matters that occurred *early* in this case. On July 16, 2018, the Court ordered Parties to propose a litigation schedule, and they did so. *See* ECF Nos. 9, 13. Parties' proposed schedule required them to designate expert witnesses in November and December 2018. *See* ECF No. 13 at 4 ("Parties seeking affirmative relief must designate expert witnesses on or before November 14, 2018 . . . . Parties opposing affirmative relief must designate expert witnesses on or before December 28, 2018 . . . ."). The Court adopted Parties' proposed dates. ECF No. 17 at 2. Yet — despite adopting Parties' proposed date — Plaintiffs failed to timely designate a single expert witness.

On November 27, 2019, the Court granted summary judgment for Defendant on all claims except for the unreasonable-seizure claim. ECF No. 60 at 4–5. Although lacking a final judgment, Plaintiffs attempted an interlocutory appeal based on the Court's ruling. *See* ECF No. 62. The Fifth Circuit held "the notice of appeal filed before all claims and all parties were disposed of [wa]s premature." ECF No. 64 at 2. Accordingly, the Fifth Circuit lacked "jurisdiction over th[e] appeal." *Id.*

The Court set trial for August 31, 2021. ECF No. 103 at 1. On August 25, 2021, the Court held a pre-trial conference. During the pre-trial conference, the Court expressly stated it would adjudicate untimely motions upon a showing of "good cause." Pt. Tr. at 16–17. The Court would entertain such motions "before close of business Friday," August 27, 2021. *Id.* at 17. But on August

27, 2021, after close of business, Plaintiffs moved to reconsider the Court's November 29, 2019 summary-judgment ruling. *See* ECF No. 113. In essence, Plaintiffs asked the Court to reconsider a two-year old summary-judgment order, on a Friday evening, on the eve of trial. *See* ECF No. 114 at 1 ("The parties were ordered to conclude discovery on [the unreasonable-seizure] claim on or before September 11, 2020. Exactly 350 days later and approximately 80 hours before trial, Plaintiffs filed the late-breaking Motion."). The Court denied the motion to reconsider the summary judgment rulings. *Id.* at 2.

The Court ordered Plaintiffs to "show cause why their conduct should not be sanctioned." *Id.* Plaintiffs offered several reasons for their delay in filing the motion to reconsider. For example, Plaintiffs amendnoted "the specific physical separation of persons involved in filing th[e] motion." ECF No. 115 at 1. Stated differently: Plaintiffs waited 350 days to file the untimely motion because their attorneys could not find a date, time, or place when they were all *physically* present in the same room. Plaintiffs also stated the basis for the motion "was not figured out by Plaintiffs' counsel until the early hours of 25 August 2021." *Id.* at 2. That is, Plaintiffs' lack of due diligence. *See id.* at 5 ("Plaintiffs' 'eureka' moment . . . occurred on 25 August 2021 at approximately 1:00 a.m."). Despite these risible rationalizations, the Court did not sanction Plaintiffs.

**B. Trial Proceedings**

Due to a medical emergency, the Court rescheduled trial for March 23, 2022. *See* ECF Nos. 116, 120. Plaintiffs tried their unreasonable seizure claim from March 23 to March 25, 2022. In the first five minutes of opening statements, Plaintiffs violated the Court's order in limine. *See* Tr. at 17. Background: months before trial, the Court issued an order in limine on "any evidence that Killian was charged with a crime, that he pleaded guilty to such crime, or that he took deferred adjudication on such charges." ECF No. 88 at 2. Defendant also moved for an

3

order in limine on "any evidence of 'official oppression investigation' regarding Deputy Killian's encounter with the plaintiffs, including testimony by the Texas Rangers who conducted such investigation and their investigative report." *Id.* The Court granted Defendant's limine motion.[2] ECF No. 106 at 5–6.

Despite these myriad orders, Plaintiffs' opening statement expressly referenced the Texas Rangers' investigation. Tr. at 17. When addressing Plaintiffs' violation of the Court's order, the Court recounted the sensitivity of the subject matter at issue. *See* ECF No. 122 at 1–2. First, the Court noted it agreed with the Magistrate Judge's recommendation that the Court should exclude evidence of: (1) Defendant's dishonorable discharge from the Collingsworth County Sheriff's Department; (2) Texas Rangers' investigative reports into Defendant's encounter with Plaintiffs; and (3) Defendant's deferred adjudication of the pending "official oppression" charge under Texas law. *Id.* at 1 (citing ECF No. 50 at 12–16). Second, the Court restated its evidentiary ruling on Defendant's limine motion. *See id.* at 2. And third, the Court cited the limine order's statement that Plaintiffs' counsel was to approach the bench and obtain a ruling from the Court outside the presence and hearing of the jury before mentioning information covered by the limine order. *See id.* Because Plaintiffs' counsel, "without warning and without approaching the bench," expressly referenced material covered by the limine order, the Court reprimanded Plaintiffs' counsel. Tr. at 96; ECF No. 122 at 1–2.[3]

---

[2] The Court also granted another of Defendant's limine motion, irrelevant here, in part. ECF No. 106 at 6–7.

[3] The Court did not issue a curative jury instruction because "unringing the bell" would only invite further attention. Instead, the Court explained to the jury "Defendant did enter a valid motion" and "the Court sustained that motion." Tr. at 24. In its explanation to the jury, the Court did not specify the type of motion, subject matter covered, parallel proceedings, or the Texas Rangers' investigation. In short, the Court sought to avoid drawing more attention to the very matters lying at the heart of the order in limine.

Trial continued despite Plaintiffs' violation. Plaintiffs had the opportunity to present witnesses in support of their case, including: Rey Ramirez (Plaintiffs' son), Plaintiffs Ramirez and Solis-Gonzales, and Collingsworth County Sheriff Kent Riley. *See* ECF No. 128 at 1. The Court excused Sheriff Riley, subject to recall, and attended to some housekeeping matters before releasing the jury for the day. Tr. at 80–92.

On March 24, 2022, the second day of trial, the Court called Plaintiffs' counsel to the bench outside the presence of the jury. *Id.* at 93. The Court handed Plaintiffs' counsel "a copy of a text [message]" that Plaintiffs' counsel sent to the Courtroom Deputy at 10:07 p.m. the prior evening, requesting a status report. *See id.* ("I guess I didn't realize the time as we were still working, and so I apologize for that."). The Court admonished Plaintiffs' counsel not to communicate with the Courtroom Deputy at unreasonable hours. *Id.*

Trial continued after the admonishment. Plaintiffs examined their remaining witnesses. *See id.* at 101–35. Plaintiffs did not recall Sheriff Riley before resting their case. *See id.* Before beginning Defendant's case-in-chief, Defendant asked whether Sheriff Riley had been released and dismissed as a witness. *Id.* at 136. Both Parties agreed to dismiss Sheriff Riley. *Id.* The Court "dismissed and released [Sheriff Riley] absent a subsequent showing of good cause" to recall the sheriff as a witness. *Id.* at 137–38.

Defendant then moved for judgment as a matter of law. *Id.*; *see also* ECF No. 124 (accompanying brief). In Defendant's motion and brief filed with the Court, Defendant argued: "Plaintiffs must offer evidence to defeat Defendant Killian's qualified immunity defense." ECF No. 124 at 3. "To overcome the defense of qualified immunity, Plaintiff must prove by a preponderance of the evidence that no reasonable officer could have believed that shooting the dog was lawful in order to have a finding of liability against Defendant Killian." *Id.* at 2 (citing *Wilson*

5

*v. Layne*, 526 U.S. 603, 615 (1999)). But, Defendant argued, "Plaintiffs offered no evidence of this." *Id.* at 3.

Defendant's arguments in open court mirrored those made on paper. *See* Tr. at 139–140. Defendant "suspected, once qualified immunity was remaining for trial, for the Plaintiffs to designate a law enforcement expert to come in here and say, yeah, another reasonable officer would have thought it was unlawful." *Id.* at 140. Yet "[t]hat deadline came and went." *Id.* Plaintiffs "did not designate any other law enforcement officer." *Id.* Then, Defendant assumed Plaintiffs "were calling Sheriff Riley to elicit testimony that, yeah, no other reasonable officer would have thought it was lawful to shoot the dog." *Id.* Plaintiffs, however, "did not elicit any testimony from Sheriff Riley regarding that." *Id.* Plaintiffs instead "went over whether [Defendant's] gun had safety, whether there was some training, but they did not go over whether the dog shooting was justified or whether an officer facing that similar situation would have thought it was lawful." *Id.* So, Defendant asserted, Plaintiffs "offered no evidence to support at trial to overcome their — their burden of overcoming the defense of qualified immunity." *Id.* Thus, "judgement as a matter of law," Defendant argued, "is proper in this case." *Id.*

The Court allowed Plaintiffs to respond. *Id.* at 140–41. Plaintiffs first argued "[t]o the extent that summary judgment was not appropriate in this case, . . . a Rule 50 motion would be similarly inappropriate." *Id.* at 141–42. Plaintiffs next argued the pit bull did not act aggressively towards Defendant. *Id.* at 142. Based on these two arguments, Plaintiffs argued the Court should deny Defendant's motion for judgment as a matter of law. *Id.* at 143.

The Court asked Plaintiffs "which particular witness called by the Plaintiff[s] should this Court look to regarding the testimony of what a reasonable officer would do, understanding that Plaintiff[s] put on significant evidence of the dog's behavior in video form and testimonial form?"

*Id.* That is, which witness would Plaintiffs "direct this Court's attention to which spoke to the prototypical reasonable officer?" *Id.* Plaintiffs pointed to Sheriff Riley, who "testified that, when an individual that was in the position of Defendant Killian as we saw in the video was in such a situation, he should have his gun at the low ready." *Id.* Sheriff Riley, Plaintiffs noted, "also testified that a gun is supposed to be on safe," and Defendant's safety was not engaged. *Id.* at 144. "And, most importantly, Sheriff Riley testified that, during a dog encounter, pepper spray is the preferable option to gunfire." *Id.*

Defendant rebutted: "Plaintiffs' counsel had to affirmatively put on evidence of what a reasonable officer — that no reasonable officer would have thought shooting the dog was lawful, and that testimony came nowhere near Sheriff Riley." *Id.* at 145. Instead, Sheriff Riley "did not testify at all that any — no reasonable officer would have thought shooting that dog was unlawful." *Id.* Although Sheriff Riley "did testify about the low ready" and "the safety," Defendant argued "that d[id] not mean he testified what a reasonable officer would do regarding shooting that dog." *Id.*

The Court determined Plaintiffs had elicited some "references to officers shooting dogs." *Id.* at 146. Such statements were "as close as that testimony got to discussing what officers would do." *Id.* The Court, in fact, found there was "not a single reference to [a] reasonable officer in that line of testimony." *Id.* The Court stated "the muzzle discipline commentary" did not "relate[] to what the prototypical reasonable officer would do, but other responses specific to shooting dogs in those scenarios comes as close as Plaintiffs could." *Id.* at 147.

The Court deferred ruling on the Motion until the conclusion of Defendant's case-in-chief. *Id.* at 146–47, 344 (The Court "delayed adjudication of this motion because it was [the Court's] understanding that Plaintiff[s] counsel, in attempting to meet their burden of proof under qualified

immunity law and the Fifth Circuit, [ ] — was attempting to adduce some of that testimony about what a reasonable officer would or would not do during their cross-examination of the defendant in this case. So [the Court] wanted to hear that evidence and then allow for that before deciding this motion."). When doing so, the Court acknowledged Plaintiffs may have had a witness problem by agreeing to dismiss Sheriff Riley, who could have been used by Plaintiffs to elicit evidence of how a reasonable officer would act. *Id.* at 147. Although the Court would allow Plaintiffs to recall Sheriff Riley upon a showing of good cause, the Court admonished Plaintiffs that their "failure to address the issue [of how a reasonable officer would act] during [their] case-in-chief is not a strong argument for good cause." *Id.* at 148.

Defendant began his case-in-chief after the Court deferred ruling on the initial motion for judgment as a matter of law. *Id.* at 149. Defendant called himself and Martin Birkenfeld, Chief of the Amarillo Police Department, as witnesses. *Id.* at 150, 281. Plaintiffs had the opportunity to cross-examine Defendant and Chief Birkenfeld. *Id.* at 163, 293.

The next morning, after Defendant rested his case, the Court reheard arguments regarding judgment as a matter of law. *Id.* at 332. To oppose Defendant's motion and overcome the qualified-immunity issue, Plaintiffs sought to recall Sheriff Riley, who the Court had dismissed with Plaintiffs' blessing. *Id.* at 136, 333. The Court "d[id] not find good cause to exercise its broad discretion to allow the recall of a witness who has been on the witness list for some time, was part of the burden-bearing Plaintiffs' case-in-chief, [and] who was subject to direct examination." *Id.* at 339. The Court simply did not "find it plausible that there's any trial strategy where Plaintiffs' counsel did not know that they bore the burden to show that officers violated their clients' clearly established right" in order to overcome qualified immunity. *Id.* Based on the Court's findings, the Court determined "no good basis for recall" existed. *Id.* at 341.

Although the Court did not recall Sheriff Riley, the Court permitted Parties to reargue the then-pending motion for judgment as a matter of law. *Id.* at 342. The Court first heard from Defendant, who argued Plaintiffs simply adduced no evidence able to overcome the qualified-immunity defense. *See id.* at 343 ("Because they have not presented any evidence that no — and I quote — reasonable officer could have believed that shooting the dog was lawful, they have not met their burden, and this Court should grant [Defendant's] pending motion."). The Court then heard from Plaintiffs, who continually insisted — contrary to case law — that *Defendant* did not meet his "burden of production" related to his qualified-immunity defense.[4] *Id.* at 344.

After hearing Parties' arguments, the Court took a moment to *again* clarify Plaintiffs' burden:

> The nature of Defendant's motion here is really focused on whether you produced evidence or testimony, in whatever form, that shows officers violated a clearly-established right, and that's only done by reference to the prototypical reasonable officer, and then comparing that reasonable officer to the defendant in this case.

*Id.* at 348. The Court then denied the Motion for Judgment as a Matter of Law "out of an abundance of caution" because the Court determined it was for the jury to "decide the degree of aggressive behavior [from the pit bull] and the [Defendant's] reaction thereto." *Id.* at 349.

The Court — however — found its decision rested on "the thinnest possible reed [ ] ever seen for Plaintiffs surviving a Motion for Judgment as a Matter of Law under Rule 50(a)." *Id.* Plaintiffs produced evidence through Sheriff's Riley testimony, "although implicit, about his training and what officers do when they're dealing with aggressive dogs and the importance of avoidance." *Id.* But the Court noted Sheriff Riley did not reference "reasonable officers, [how]

---

[4] Minutes before this statement, the Court read a portion of *Templeton v. Jarmillo*, 28 F.4th 618 (5th Cir. 2022), to Plaintiffs. Tr. at 340. The Court's reading emphasized it was Plaintiffs' burden to overcome Defendant's qualified-immunity defense. *See id.* ("Page 3: Because the officers invoked a qualified immunity defense, the burden shifts to Templeton to show the officers violated his clearly-established rights."). Despite the Court's reading, Plaintiffs continued to insist it was Defendant's burden to prove qualified immunity. *See, e.g., id.* at 344, 346.

that standard applies, whether he learned that standard through training." *Id.* Though the Court could not "think of a closer call for Judgment as a Matter of the Law," the Court gave the "jump ball to the non-movant." *Id.*

On March 25, 2022, the third day of trial, the jury convened after closing arguments. When asked whether "Defendant Killian acted in an objectively unreasonable manner by shooting [Plaintiffs'] dog," the jury answered "yes." ECF No. 131 at 2. And when asked whether "no reasonable officer could have believed that shooting the dog was lawful," the jury answered "yes." *Id.* The jury also concluded Defendant's conduct proximately caused Plaintiff Gonzales's damages, and awarded punitive damages. *Id.* at 2–3. The Court adopted the jury's unanimous verdict and rendered judgment awarding no damages to Plaintiff Ramirez and awarding Plaintiff Gonzales $150 in compensatory damages and $100,150 in punitive damages. *See* ECF Nos. 131, 132.

## LEGAL STANDARDS

On April 22, 2022, Defendant filed the Motion before the Court today. *See* ECF No. 141. Defendant's Motion asks for three post-judgment actions: (1) judgment as a matter of law; (2) a new trial; or (3) conditional remittitur. ECF No. 142 at 9. Below, the Court individually details the appropriate standard of review for each form sought.

### A. Judgment as a Matter of Law

Federal Rule of Civil Procedure 50 governs motions for judgment as a matter of law in a jury trial. *See* FED. R. CIV. P. 50; *Weisgram v. Marley Co.*, 528 U.S. 440, 448–49 (2000). A court may render judgment as a matter of law at the close of trial "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient

evidentiary basis to find for the party on that issue." *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting FED. R. CIV. P. 50(a)) (alteration in original).

A motion for judgment as a matter of law "challenges the legal sufficiency of the evidence to support the verdict." *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006). "Judgment as a matter of law is appropriate with respect to an issue if 'there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on that issue.'" *Brennan's Inc. v. Dickie Brennan & Co., Inc.*, 376 F.3d 356, 362 (5th Cir. 2004) (quoting FED. R. CIV. P. 50(a)(1)) (alteration in original); *see also Weisgram*, 528 U.S. at 448 (Rule 50 "allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'" (quoting 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2521 (2d ed. 1995))). There is an absence of a legally sufficient evidentiary basis for a reasonable jury to find for a party on an issue "when the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary verdict." *Brennan's Inc.*, 376 F.3d at 362.

When considering a Rule 50 motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."). Accordingly, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151.

A court should "uphold a jury verdict unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable [jurors] could not arrive at any verdict to the contrary." *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1039 (5th Cir. 2011) (quoting *Cousin v. Trans Union Corp.*, 246 F.3d 359, 366 (5th Cir. 2001)). "In other words, the 'jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did.'" *Id.* at 1039–40 (quoting *Foradori v. Harris*, 523 F.3d 477, 495 (5th Cir. 2008)).

### B. New Trial

Federal Rule of Civil Procedure 59 allows a district court to order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). A new trial is appropriate when: (1) "the verdict is against the weight of the evidence"; (2) "the damages awarded are excessive"; or (3) "the trial was unfair, or prejudicial error was committed." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985). "The decision to grant or deny a motion for a new trial is generally within the sound discretion of the trial court . . . ." *Foradori*, 523 F.3d at 503–04 (5th Cir. 2008) (quoting *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982)).

The Fifth Circuit has cautioned "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great — not merely the greater — weight of the evidence." *Conway v. Chem. Leaman Tank Lines, Inc.*, 610 F.2d 360, 363 (5th Cir. 1980). "When a new trial is requested because the amount of the verdict is excessive or inadequate, the motion should not be granted unless the verdict is against the great weight, not merely the preponderance, of the evidence." *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1140 (5th Cir. 1991). A court should not grant a new trial "unless it is reasonably clear that prejudicial error has crept into the

record or that substantial justice has not been done." *Streber v. Hunter*, 221 F.3d 701, 736 (5th Cir. 2000). "[T]he burden of showing harmful error rests on the party seeking the new trial." *Id.*

### C. Conditional Remittitur

The discretion granted under Rule 59 and case law includes the power to order a remittitur, *i.e.*, a reduction of the damages granted by a jury. *See, e.g., Gasperini v. Ctr. for Humans., Inc.*, 116 S. Ct. 2211, 2222 (1996) (stating power to grant new trial includes ability to order remittitur). The Seventh Amendment requires that "no fact tried by a jury, shall be otherwise re-examined," which limits the ways a court can reduce an excessive damages award. *Hetzel v. Prince William County*, 523 U.S. 208, 211 (1998) (per curiam); *see also* U.S. CONST. amend. VII. But a conditional remittitur — offering a plaintiff the option of accepting the reduction of a verdict found to be excessive in lieu of a new trial — is a permissible option. *See Hetzel*, 523 U.S. at 211.

Remittitur is permissible only "on the strongest of showings." *Lebron v. United States*, 279 F.3d 321, 325 (5th Cir. 2002). A court may only order a remittitur if "left with the perception that the verdict is clearly excessive." *Alameda Films S A de C V v. Authors Rights Restoration Corp.*, 331 F.3d 472, 482 (5th Cir. 2003) (internal marks omitted); *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 462 (5th Cir. 1995) (per curiam). Although the Fifth Circuit holds that a remittitur is appropriate when damage awards are "merely excessive or so large as to appear contrary to right reason," a new trial — instead of remittitur — is the proper remedy if the excessive amount results from "passion or prejudice." *Brunnemann v. Terra Int'l, Inc.*, 975 F.2d 175, 178 (5th Cir.1992); *see also Wells v. Dall. Indep. Sch. Dist.*, 793 F.2d 679, 683–84 (5th Cir. 1986) ("[A]t some point . . . an excessive award becomes so large that it can no longer be considered merely excessive," but rather "indicate[s] bias, passion, prejudice, corruption, or other improper motive.").

ANALYSIS

The threshold issue submitted to the jury — and the crux of Defendant's Motion — is that Plaintiffs failed to meet their burden under long-established qualified-immunity doctrine. Qualified immunity protects a government official from suit when he exercises the discretionary functions of his office. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). A government defendant need only assert his qualified-immunity defense in good faith, putting forward no evidence in support of the defense. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). Defendant did so. *See* ECF No. 15; ECF No. 31 at 11. It was therefore Plaintiffs' burden to overcome Defendant's qualified-immunity defense. *See Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (Once the defendant asserts qualified immunity, "the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." (quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992))); *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) ("We do 'not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.'" (quoting *Salas*, 980 F.2d at 306)).

To overcome a qualified-immunity defense, a plaintiff must establish: (1) "the official violated a statutory or constitutional right"; and (2) "the right was 'clearly established' at the time of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). A plaintiff must demonstrate the defendant's conduct was objectively unreasonable in light of legal rules clearly established at the time of the defendant's actions. *See Thomas v. City of Dallas*, 175 F.3d 358, 364 (5th Cir. 1999). "A right is clearly established when it is defined 'with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct.'" *Templeton*, 28 F.4th at 621 (quoting *McClendon v. City of*

*Columbia*, 305 F.3d 314, 331 (5th Cir. 2002)). This requires a determination of "whether the violative nature of *particular conduct* is clearly established." *al-Kidd*, 563 U.S. at 742 (emphasis added). Although a plaintiff need not identify a case "directly on point" to satisfy this burden, the plaintiff must identify caselaw "plac[ing] the statutory or constitutional question beyond debate." *Id.* at 741. Conclusory allegations of wrongdoing will not satisfy these requirements. *Geter v. Fortenberry*, 849 F.2d 1550, 1553 (5th Cir. 1988).

Whether qualified immunity protects an official should not be judged with 20/20 hindsight. *See Graham v. Connor*, 490 U.S. 386, 396–97 (1989) ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving — about the amount of force that is necessary in a particular situation."); *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012) ("[W]e cannot ignore that qualified immunity 'gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Brumfield v. Hollins*, 551 F.3d 332, 336 (2008)) (internal marks omitted). Properly applied, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Preexisting law "must dictate" and "truly compel" the conclusion for every similarly situated, reasonable government agent, that the defendant's conduct violated federal law in the circumstances. *Pierce v. Smith*, 117 F.3d at 882. Conversely, "[i]f officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005).

### A. Plaintiffs Possessed Clearly Established Rights

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. "[T]he Fourth Amendment protects individuals against unreasonable seizures of property." *John Corp. v. City of Houston*, 214 F.3d 573, 577 (5th Cir. 2000); *see also Mayfield v. Bethards*, 826 F.3d 1252, 1256 (10th Cir. 2016) ("Although the Fourth Amendment uses the word 'effects,' the Supreme Court has long equated that term with personal property."). "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). To determine whether a seizure of property was reasonable, courts "look to the totality of the circumstances, balancing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake.'" *Grant v. City of Houston*, 625 F. App'x 670, 675 (5th Cir. 2015) (per curiam) (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 774 (2014)).

Pet dogs are personal property under Texas law. *See Lira v. Greater Hous. German Shepherd Dog Rescue, Inc.*, 488 S.W.3d 300, 304 (Tex. 2016) ("We recently recognized pet dogs as 'property in the eyes of the law.'" (quoting *Strickland v. Medlen*, 397 S.W.3d 184, 185 (Tex. 2013))). Accordingly, Plaintiffs right "against unreasonable . . . seizures" extended to their pet pit bulls. U.S. CONST. amend. IV; *see also Jones v. Lopez*, 689 F. App'x 337, 339 (5th Cir. 2017) ( curiam) ("The killing of a pet dog can be a seizure"); *Stephenson v. McClelland*, 632 F. App'x 177, 184 (5th Cir. 2015); *Grant*, 625 F. App'x at 675.

**B. Plaintiffs Failed to Prove a Violation of Their Clearly Established Rights**

Qualified immunity applies if a reasonable officer could have believed the disputed act was lawful in light of clearly established law and the information defendant possessed. *See Wilson*, 526 U.S. at 615. To overcome Defendant's qualified-immunity defense, Plaintiffs were required to prove by a preponderance of the evidence that no reasonable officer in Defendant's position could have believed shooting Plaintiffs' pit bull was lawful. *See Templeton*, 28 F.4th at 621 ("Because the officers invoked a qualified immunity defense, the burden shifts to Templeton to show the officers violated his clearly established rights."); *Jimenez v. Wood County*, 621 F.3d 372, 378 (5th Cir. 2010), *on reh'g en banc*, 660 F.3d 841 (5th Cir. 2011) ("When a defendant invokes the qualified immunity defense, the burden is on the plaintiff to show its inapplicability.").

The Court determined a factual dispute regarding whether, given the circumstances Defendant faced, it was reasonable for Defendant to shoot the pit bull. *See* ECF No. 60 at 3 (agreeing with Magistrate Judge's findings and conclusions as to the pit bull); ECF No. 50 at 25 (concluding "there is a genuine material fact dispute as to whether the Pit Bull objectively posed a threat to Deputy Killian that justified his firing a first, second, and third shot into it"). Because the Court did not itself decide the qualified-immunity question, it was the jury's task to "determine the objective legal reasonableness of [Defendant's] conduct." *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000).

Plaintiffs had several opportunities to present evidence demonstrating that a reasonable officer, placed in Defendant's situation, would not have shot Plaintiffs' pit bull. Excluding Defendant himself, Plaintiffs and Defendant examined two law-enforcement officers: (1) Collingsworth County Sheriff Alan "Kent" Riley; and (2) Amarillo Police Chief Martin Birkenfeld. Yet Plaintiffs failed *to even attempt* to present such evidence and elicit such testimony.

1. ***Plaintiffs had numerous opportunities to elicit testimony from Sheriff Riley to rebut Defendant's qualified-immunity defense.***

Plaintiffs directly examined Sheriff Riley about the following matters:

- Sheriff Riley's law-enforcement background and his relationship with Defendant;

- Firearm safety, such as when a gun should be pointed at an object, when a safety may be disengaged, and how an officer should hold his firearm;

- When an officer should enter "a dangerous situation," with or without backup; and

- The logistics, pros, and cons of using pepper spray, including when "dealing with a dog."

*See* Tr. at 60–62; *id.* at 62–65, 68; *id.* at 65–66; *id.* at 66–67.

Defendant cross-examined Sheriff Riley about the following matters:

- Sheriff Riley's law-enforcement background and his relationship with Defendant;

- Defendant's law-enforcement training;

- Law-enforcement training as applied to canine interactions;

- Sheriff Riley's actions on June 20, 2016, and whether he or one of his deputies were available to backup Defendant that day; and

- Texas laws governing cruelty to animals.

*Id.* at 69–70; *id.* at 71; *id.* at 71–72; *id.* at 72–73; *id.* at 73–74; *id.* at 78.

In contrast to the testimony Plaintiffs elicited, Defendant elicited the following testimony from Sheriff Riley with respect to canine encounters generally:

> Most of the time, you know, you — you don't know what they're going to do because they can't communicate with you other than through body language, you know, so you don't know if you're gonna get bit, gonna get run by, or whatever. I mean, you can't tell.

*Id.* at 72. And when asked whether an officer may ever need to shoot a canine, Sheriff Riley responded: "Sometimes. . . . When they're — when it's — when it's pretty imminent that they're going to attack someone or livestock, if that happens to be the case at the time." *Id.* at 73.

On redirect examination, Plaintiffs only asked Sheriff Riley whether Billy Doss — a former Collingsworth County Sheriff's Deputy — was available to backup Defendant at the time of the shooting. *Id.* at 78–79. On recross examination, Defendant elicited testimony from Sheriff Riley that Billy Doss was "off shift" and the sheriff himself was "the only backup for [Defendant]" on the day of the shooting. *Id.* at 79–80.

Although Sheriff Riley testified about firearm safety, he did not testify that "no reasonable officer" would have shot the pit bull. *Id.* at 62–65. And although Sheriff Riley testified he would prefer to use pepper spray when dealing with a dog, Sheriff Riley stated he "would prefer not to [use a firearm] *if I don't have to.*" *Id.* at 67 (emphasis added). Importantly, Sheriff Riley did not say a reasonable officer *would not* use a firearm in the situation Defendant faced. *See id.*

### 2. *Plaintiffs had numerous opportunities to elicit testimony from Chief Birkenfeld to rebut Defendant's qualified-immunity defense.*

Defendant directly examined Chief Birkenfeld about the following matters:

- Chief Birkenfeld's expert-witness experience;

- Chief Birkenfeld's law-enforcement education and career;

- Chief Birkenfeld's experience with handling complaints against officers;

- Chief Birkenfeld's role as an expert witness and assignment;

- Chief Birkenfeld's experience reviewing canine encounters;

- Texas laws governing cruelty to animals; and

- Chief Birkenfeld's expert opinion that "Deputy Killian was justified in shooting the pit bull to protect himself from injury."

*Id.* at 281–82; *id.* at 281–86; *id.* at 286–87; *id.* at 287–89; *id.* at 289–90; *id.* at 290; *id.* at 290–92.

On cross-examination, Plaintiffs asked Chief Birkenfeld about the follow matters:

- Payments to Chief Birkenfeld for his expert testimony and the information he reviewed;

- The reasonableness of Defendant's actions;

- Whether an officer may use less-less lethal force when dealing with a canine;

- Whether Chief Birkenfeld considers his testimony to be neutral;

- The information an expert witness should consider;

- Cases Chief Birkenfeld considered;

- Investigative methods and who Chief Birkenfeld had spoken with regarding this case;

- Chief Birkenfeld's expert status and whether court proceedings in this case influenced his expert opinion;

- Whether Chief Birkenfeld reviewed Defendant's deposition and other materials;

- Training concerning exigent circumstances and whether Defendant lawfully entered Plaintiffs' home;

- Whether Chief Birkenfeld reviewed the bodycam footage and incident reports and discrepancies between the footage and reports;

- Whether "another reasonable officer would agree with [Chief Birkenfeld's] opinions";

- The accuracy of the offense report Defendant wrote; and

- Whether "a reasonable officer would agree with the opinions [Chief Birkenfeld] testified about."

*Id.* at 293–95; *id.* at 295–96; *id.* at 296; *id.* at 296–97; *id.* at 297–99; *id.* at 299–303; *id.* at 303–04; *id.* at 304–06; *id.* at 306; *id.* at 307–08; *id.* at 308–311; *id.* at 313–14; *id.* at 315; *id.* at 315–17; *id.* at 317.

During redirect examination of Chief Birkenfeld, Defendant elicited testimony regarding the information the chief relied upon in forming his opinions. *Id.* at 317–18. Defendant also elicited testimony clarifying what Chief Birkenfeld meant when he used the terms "exigent" and "immediate." *Id.* at 318–19. And finally, Defendant clarified that this is Chief Birkenfeld's first time to testify as an expert witness. *Id.* at 319. On recross examination, Plaintiffs elicited testimony concerning one case Chief Birkenfeld relied upon, and whether it was "the only case that related

to the shooting of a dog." *Id.* at 319–20, 323–25. Plaintiffs also examined Chief Birkenfeld about his affidavit, focusing on the cases Chief Birkenfeld relied upon. *Id.* at 326–29.

Defendant elicited testimony from Chief Birkenfeld that Defendant "was justified in shooting the pit bull to protect himself from injury." *Id.* at 291. Chief Birkenfeld also stated "[a]nother reasonable officer, given that exact same set of circumstances, could have shot that pit bull to protect himself or others." *Id.* at 292. Chief Birkenfeld testified as much despite acknowledging "there are less lethal ways" to handle canine situations. *Id.*

Plaintiffs elicited testimony from Chief Birkenfeld "that an officer in the exact same circumstances as [Defendant] would reasonably act in the same way [Defendant] did" with "regards to shooting the pit bull." *Id.* at 295–96. Plaintiffs also elicited testimony from Chief Birkenfeld that "[t]here [are] always multiple force options" when dealing with a dog. *Id.* at 296. Moreover, Plaintiffs elicited testimony from Chief Birkenfeld that Defendant lawfully entered Plaintiffs' home without a warrant and that "another reasonable office would agree with [Chief Birkenfeld's] opinions." *Id.* at 308–11, 315, 317.

Whereas Sheriff Riley did not testify regarding whether a reasonable officer would have shot Plaintiffs' pit bull if placed in Defendant's situation, Chief Birkenfeld testified a reasonable officer would be justified in shooting the pit bull.

### 3. *Because Plaintiffs failed to elicit evidence to rebut Defendant's qualified-immunity defense, Plaintiffs sought to recall Sheriff Riley.*

After resting his case, Defendant asked the Court to again consider the pending judgment as a matter of law. *Id.* at 342. Plaintiffs — presumably realizing they had elicited no testimony concerning how a reasonable officer would act in the situation Defendant faced — sought to recall Sheriff Riley, who has been dismissed, subject to recall by a good-cause showing. *Id.* at 136–38, 333.

Although Plaintiffs incorrectly averred they "never had to oppose" Defendant's qualified-immunity affirmative defense because it had not been raised until Defendant's case-in-chief, Plaintiffs argued Sheriff Riley "would testify that [Defendant] Killian's conduct, *now that Killian has put it at issue, which it was not before*, during his examination was not objectively reasonable" and "that much of [Defendant's] conduct was not reasonable." *Id.* at 334–35, 337 (emphasis added). Defendant — by contrast — argued Plaintiffs had the opportunity to address the conduct of a reasonable officer in Defendant's situation yet failed to do so. *Id.* at 338. Defendant restated it is *Plaintiffs' burden* to overcome qualified immunity. *Id.* But Plaintiffs failed to even attempt to meet their burden. *See id.*

When determining whether to reopen a case, the trial court should analyze three factors: (1) "the importance and probative value of the evidence"; (2) "the reason for the moving party's failure to introduce the evidence earlier"; and (3) "the possibility of prejudice to the non-moving party." *Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 814 (5th Cir. 1996). A bona fide failure to introduce evidence may be good cause to reopen a case. But if "a district court conclude[s] that a litigant is engaging in any form of chicanery, it properly denies the motion [to reopen]." *Id.* "The same result obtains where the litigant was *negligent in failing to introduce the evidence*." *Id.* (emphasis added).

The Court analyzed each factor and agreed with Defendant. The first factor weighed in Plaintiffs' favor. If Sheriff Riley testified no reasonable officer would have shot the pit bull, then the proffered testimony would have been both important and probative. The second and third factors — however — weighed in Defendant's favor. Heavily.

Regarding the second factor, Plaintiffs' failure to elicit the proffered testimony could only be attributed to their negligence and, as they repeatedly demonstrated, misunderstanding of their

*burden* to prove the inapplicability of qualified immunity. Even after repeated admonishments by the Court about Plaintiffs' qualified-immunity burden, Plaintiffs insisted "[q]ualified immunity is an affirmative defense, and it's our position that [Defendant] ha[s] not met [his] burden of production related to that defense." Tr. at 344. *See, e.g., id.* at 335 ("Plaintiff[s] never had to oppose [Defendant's] affirmative defense because it . . . . wasn't raised and supported by any evidence until [Defendant] testified, and then possibly when [Chief Birkenfeld] testified."); *id.* at 337 (seeking to recall Sheriff Riley because "new things were raised," *i.e.*, whether a reasonable officer would have shot the pit bull); *id.* at 344 ("Qualified immunity is an affirmative defense, and it's our position [Defendant] ha[s] not met [his] burden of production related to that defense."); *id.* at 346 ("[T]he defense of qualified immunity, which is immunity from lawsuit, is in the position at trial as an affirmative defense, meaning that, in the trial, it was up to the Defense to raise — to meet their burden of production to put on evidence that no reasonable officer would — or any reasonable officer would have acted the way that [Defendant] did and in the circumstances that [Defendant] did."). *But see Poole*, 691 F.3d at 627 ("Although [qualified immunity is] nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised.").

Plaintiffs had the opportunity to examine Sheriff Riley, the witness for which Plaintiffs sought to reopen their case. And they did so — twice. Plaintiffs also had multiple opportunities to examine Defendant and Chief Birkenfeld, both law-enforcement officers. Yet despite these opportunities, Plaintiffs failed to elicit testimony concerning whether a reasonable officer would have shot the pit bull. The pleadings, motions, and trial record reflected that Plaintiffs failed to elicit the proffered testimony because Plaintiffs misunderstood — despite constant reminders by the Court — that it was *their burden* to prove the inapplicability of qualified immunity. That

misunderstanding can only be attributed to Plaintiffs' negligence in failing to adequately research applicable Fifth Circuit and Texas Supreme Court law — *i.e.*, law central to their claims.

As for the third factor, Defendant would have suffered substantial prejudice had Plaintiffs been allowed to reopen their case to examine Sheriff Riley. Parties would, in essence, need to relitigate *the entire case*. Specifically, Defendant would need to again examine Sheriff Riley, Chief Birkenfeld, and likely Defendant himself to deal with Sheriff Riley's new testimony — testimony Plaintiffs had the opportunity to elicit. Moreover, Defendant moved for judgment as a matter of law at the close of Plaintiffs' evidence. Tr. at 138. Defendant identified the basis for its motion — that Plaintiffs failed to produce evidence that no reasonable officer would have shot the pit bull — when moving for judgment as a matter of law. *Id.* at 139–40. Despite being aware of the basis of Defendant's motion, Plaintiffs could not elicit favorable testimony from Defendant's witnesses. Plaintiffs, therefore, sought to recall their earlier witness to rebut Defendant's evidence. Judgment as a matter of law — a procedural mechanism Defendant is entitled to — would be rendered meaningless if Plaintiffs had been permitted to recall their already-thoroughly examined witness.

Accordingly, the Court agreed with Defendant. The Court found no "good cause to exercise its broad discretion to allow the recall of a witness who has been on the witness list for some time, was part of the burden-bearing Plaintiffs' case-in-chief, who was subject to direct examination." *Id.* at 339. Qualified immunity could not, according to the Court, "be something that [was] not adduced until late in trial and goes to the heart of the case." *Id.* The Court did not find it plausible that Plaintiffs' "did not know that they bore the burden to show that officers violated their clients' clearly established right." *Id.* Accordingly, the Court found "no good basis for recall." *Id.* at 341.

### 4. *Despite Plaintiffs' evidentiary failings, the Court submitted the case to the jury.*

Before the jury convened, the Court denied Defendant's motion for judgment as a matter of law. The Court did so "out of an abundance of caution" and deference to the jury. *Id.* at 349. In doing so, the Court noted this was "the thinnest possible reed [the Court had] ever seen for Plaintiffs surviving a Motion for Judgment as a Matter of Law under Rule 50(a)." *Id.* At that time, the Court stated "this really isn't a close-call on the production side . . . . I've probably handled . . . over a hundred Fifth Circuit appeals as an AUSA and, you know, whatever caseload I've had now as a District [Judge], and I can't think of a closer call for Judgment as a Matter of the Law on Rule 50(a)." *Id.* at 350. The Court — however — gave "the jump ball to the non-movant" and "den[ied] the motion," thereby sending the case to the jury. *Id.*

### C. Because Plaintiffs Failed to Prove a Violation of Their Clearly Established Rights, Judgment as a Matter of Law Is Proper

On April 22, 2022, Defendant filed the Motion now before the Court. Defendant asks the Court to grant judgment as a matter of law, a new trial, or remittitur. Defendant simply argues Plaintiffs did not present legal sufficient evidence to support the jury's verdict. *See* ECF No. 142 at 3.

Plaintiffs' response to Defendant's Motion illustrates the friction between the parties. It details Defendant's prior relationship with Plaintiffs, the language Defendant used and the brashness with which he entered Plaintiffs' home, pepper-sprayed Plaintiffs, and shot their dog. *See* ECF No. 148 at 5–8. But recounting the events of June 20, 2016, and painting the officer as ill-intentioned is not enough. *See Poole*, 691 F.3d at 630 ("Officers' subjective intent is irrelevant."); *see also generally Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009) (focusing on entitlement to qualified immunity, not merits of claim). Plaintiffs *still* fail to identify evidence indicating no reasonable officer could have believed shooting Plaintiffs' pit bull to be

lawful. *See, e.g.*, Tr. at 146 ("There's not a single reference to [a] reasonable officer in [Sheriff Riley's] testimony."). In fact, Plaintiffs' response *does not once* use the term "reasonable" in the same sentence as "officer," "government employee," or a variation thereof. *See generally* ECF No. 148. Plaintiffs only employ the term "reasonable" when referring to the jury charge, the standard by which the Court should review Defendant's Motion, the reasonability of the jurors, and the reasonableness of punitive damages. *See generally id.*

Just as at trial, Plaintiffs still fail to identify evidence that no reasonable officer would have shot the pit bull were that officer in the same position as Defendant. Because Plaintiffs have consistently failed to satisfy the burden *they bear*, the Court holds judgment as a matter of law is appropriate and **GRANTS** Defendant's Motion.

### D. Motion for New Trial & Conditional Remittitur

Because the Court grants Defendant's Renewed Motion for Judgment as a Matter of Law, the Court does not grant a new trial or conditional remittitur. The Court notes a new trial is appropriate when "the verdict is against the great . . . weight of the evidence." *Conway*, 610 F.2d at 363. By finding judgment as a matter of law to be proper, the Court necessarily finds the jury's verdict to be against the great weight of the evidence. *See James*, 577 F.3d at 617 (stating judgment as a matter of law is proper "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have legally sufficient evidentiary basis to find for the party on that issue" (quoting FED. R. CIV. P. 50(a)) (alteration in original)); *Brennan's Inc.*, 376 F.3d at 362 ("Judgment as a matter of law is appropriate with respect to an issue if 'there is no legally sufficient evidentiary basis for a reasonable jury to find for [a] party on that issue.'" (quoting FED. R. CIV. P. 50(a)(1)) (alteration in original)). But Defendant did not move for a new trial on this ground. *See generally* ECF No. 142.

Defendant only moves for a new trial based on two grounds: Plaintiffs' violation of the Court's limine order and the amount of punitive damages. *Id.* at 3. Because the Court grants judgment as a matter of law, the Court does not assess whether Plaintiffs' violation of the Court's limine order warrants a new trial. The Court also does not assess whether the damages awarded are excessive in the instance judgment for Plaintiffs is proper.

CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion (ECF No. 141) and renders judgment as a matter of law in Defendant's favor. The Court **DENIES** Plaintiffs' Motions for Attorney's Fees (ECF Nos. 136, 138) and Defendant's Motion to Strike (ECF No. 152) as moot. The Court **DENIES** all relief not expressly granted herein.

**SO ORDERED**.

August 12, 2022

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

27