IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| RUBICELA RAMIREZ, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 2:18-CV-107-Z-BR |
| | § | |
| JAMES KILLIAN, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiffs Rubicela Ramirez's and Francisco Gonzales's ("Plaintiffs") Motion for Reconsideration ("Motion") (ECF No. 161) of the Court's Opinion and Order (ECF No. 159) granting Defendant James Killian's ("Defendant") Renewed Motion for Judgment as a Matter of Law (ECF No. 141).[1] Plaintiffs ask the Court to reconsider its August 12, 2022 Opinion and Order granting judgment as a matter of law for Defendant and to amend the corresponding Judgment (ECF No. 160) under Federal Rule of Civil Procedure 59(e). *See* ECF No. 161 at 1. Having considered the Motion and applicable law, the Court **DENIES** the Motion and **ORDERS** Plaintiffs' counsel to comply with the requirements set forth below.[2]

**BACKGROUND**

On August 12, 2022, the Court granted Defendant's Renewed Motion for Judgment as a Matter of Law. *See generally* ECF No. 159. Plaintiffs challenge the Court's ruling on three grounds. First, Plaintiffs claim the Court contradicts itself regarding qualified immunity, alleging

---

[1] Plaintiffs' counsel bring this Motion on behalf of "Plaintiffs" Rubicela Ramirez and Francisco Gonzales. ECF No. 161 at 1. Plaintiffs' counsel note — however — "Mr. Ramirez [sic] has passed away." *Id.* at 1 n.1. "Mr. Ramirez's [sic] wife, Plaintiff Rubicela Gonzales [sic], is determining whether the opening of an estate is necessary." *Id.* The Court will refer to "Plaintiffs" Ramirez and Gonzales together, as Plaintiffs' counsel have chosen to do.

[2] Although Defendant filed a Response to Plaintiffs' Motion, Plaintiffs appear to have chosen not to reply to Defendant's Response. *See* ECF Nos. 161, 167.

the Court held Defendant's qualified-immunity defense unavailable at trial but permitted the defense to go forward at trial. *See* ECF No. 161 at 1–4. Second, Plaintiffs assert they presented "abundant" evidence that "no reasonable officer" in Defendant Killian's position would have shot Plaintiffs' pit bull. *See id.* at 4–6. And third, Plaintiffs argue "qualified immunity is not available for knowing, malicious, or bad faith conduct or to the plainly incompetent." *See id.* at 6. Plaintiffs are wrong on all three grounds.

### LEGAL STANDARD

Federal Rule of Civil Procedure 50 governs motions for judgment as a matter of law. *See* FED. R. CIV. P. 50; *Weisgram v. Marley Co.*, 528 U.S. 440, 448–49 (2000). A motion for judgment as a matter of law "challenges the legal sufficiency of the evidence to support the verdict." *Hodges v. Mack Trucks, Inc.*, 474 F.3d 188, 195 (5th Cir. 2006). A court may render judgment as a matter of law at the close of trial "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *James v. Harris County*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting FED. R. CIV. P. 50(a)) (alteration in original); *see also Weisgram*, 528 U.S. at 448 (Rule 50 "allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'" (quoting 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2521 (2d ed. 1995))).

A court should "uphold a jury verdict unless the facts and inferences point so strongly and so overwhelmingly in favor of one party that reasonable [jurors] could not arrive at any verdict to the contrary." *Goodner v. Hyundai Motor Co.*, 650 F.3d 1034, 1039 (5th Cir. 2011) (quoting *Cousin v. Trans Union Corp.*, 246 F.3d 359, 366 (5th Cir. 2001) (alteration in original)). "In other words, the 'jury verdict must be upheld unless there is no legally sufficient evidentiary basis for a

reasonable jury to find as the jury did.'" *Id.* at 1039–40 (quoting *Foradori v. Harris*, 523 F.3d 477, 495 (5th Cir. 2008)). When considering a Rule 50 motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ."). Accordingly, "although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves*, 530 U.S. at 151.

Rule 59(e) permits a court "to alter or amend a judgment." Altering or amending a judgment is an extraordinary remedy, and the standard under Rule 59(e) favors "denial of motions to alter or amend a judgment." *S. Constructors Grp., Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993). "Accordingly, relief pursuant to that rule should only be granted where the moving party has presented substantial reasons for reconsideration." *Arlington Apartment Investors, LLC v. Allied World Assurance Co. (U.S.)*, No. 4:12-CV-061-Y, 2014 WL 12580459, at *1 (N.D. Tex. Sept. 11, 2014). A party should not use a Rule 59(e) motion to relitigate prior matters that should have been urged earlier. *Schiller v. Phys. Res. Grp., Inc.*, 342 F.3d 563, 567 (5th Cir. 2003).

Three grounds exist for altering or amending a judgment, including to: (1) "accommodate an intervening change in controlling law"; (2) "account for newly discovered evidence;" and (3) "correct a clear error of law or prevent manifest injustice." *Arlington Apartment Investors*, 2014 WL 12580459, at *1; *see also Schiller*, 342 F.3d at 567.

3

ANALYSIS

The Court addresses Plaintiffs' three arguments in two parts. Because Plaintiffs' first and third arguments relate to Defendant's validly invoked qualified-immunity defense, the Court addresses those arguments together. The Court then addresses Plaintiffs' argument against their evidentiary failings. Last, the Court addresses Plaintiffs' attorneys' need to argue against the Court's acknowledgment of their inability to appropriately litigate this dispute and attorneys' attempts to justify their imprudent conduct.

### A. Defendant's Qualified-Immunity Defense Remained at Issue During Trial

Plaintiffs argue the Court ruled on Defendant's qualified-immunity defense at the summary-judgment stage and, therefore, qualified immunity was not at issue during trial. *See* ECF No. 161 at 2 ("While the Court stated in ECF 159 that it did not rule on Qualified Immunity in ECF 60, the language of ECF 60 belies that position. . . . The Court's summary judgment Order further establishes that qualified immunity is unavailable based solely on the video."). In the same paragraph, however, Plaintiffs argue: "It is not that the Court ruled that Deputy Killian was not entitled to qualified immunity, rather, it ruled that a jury would have to determine whether or not [the pit bull] was aggressive towards Defendant Killian." *Id.* While attempting to criticize the Court for contradicting itself, Plaintiffs, in fact, contradict themselves.

1. Plaintiffs misstate the Court's ruling.

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). Qualified immunity shields "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). A court should not deny immunity unless "existing precedent . . . placed the statutory or constitutional question

4

beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). A plaintiff seeking to overcome qualified immunity must show: (1) "the official violated a statutory or constitutional right"; and (2) "that right was 'clearly established' at the time of the challenged conduct." *Id.* at 735.

The Magistrate Judge addressed qualified immunity in her Findings, Conclusions, and Recommendation ("FCR"). The Magistrate Judge analyzed whether Defendant "seized" Plaintiffs' pit bull and whether qualified immunity protected Defendant. ECF No. 50 at 24–27. Although Defendant argued he "perceived [ ] an aggressive attack" from the pit bull, the Magistrate Judge determined "a reasonable jury could reach a contrary conclusion." *Id.* at 25. Analyzing "the totality of the circumstances with which Deputy Killian was presented," the Magistrate Judge concluded "a genuine material fact dispute as to whether the Pit Bull objectively posed a threat to Deputy Killian that justified his firing a first, second, and third shot into it" existed. *Id.* at 26, 27 ("Where, as here, the law frequently distinguishes between small details in determining whether the shooting of a dog is justified in a particular circumstance, the Court finds a fact question is created in a close call such as this case."). The Magistrate Judge thus recommended the Court deny summary judgment on Plaintiffs' unreasonable-seizure claims. *Id.* at 27.

The Court found "[t]he Magistrate Judge's analysis correctly draws attention to the contradiction between th[e] video evidence and Deputy Killian's affidavit stating that the Pit Bull moved toward him in 'an aggressive attack.'" ECF No. 60 at 2–3 (quoting ECF No. 50 at 25). Because "the video evidence does not reflect the 'aggressive behavior' deemed sufficient to necessitate lethal force in scenarios," the Court agreed "with the Magistrate Judge's findings and conclusions as to the Pit Bull." *Id.* at 3. That is, there existed "a genuine material fact dispute as to whether the Pit Bull objectively posed a threat to Deputy Killian." ECF No. 50 at 26. The Court

did not hold — and the Magistrate Judge did not find — Defendant's qualified-immunity defense failed.

To find qualified immunity did not protect Defendant, the Court would need to have held Defendant "violated a statutory or constitutional right." *Morgan*, 659 F.3d at 371 (quoting *al-Kidd*, 563 U.S. at 735). The qualified-immunity analysis requires that a right be "clearly established." *See id.* "A right is clearly established when it is defined 'with sufficient clarity to enable a reasonable official to assess the lawfulness of his conduct.'" *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 331 (5th Cir. 2002) (per curiam)). Whether a right is "clearly established" turns on "whether the violative nature of *particular* conduct is clearly established." *al-Kidd*, 563 U.S. at 742 (emphasis added).

"[A]n officer's shooting of a pet dog is *in some circumstances* a seizure under the Fourth Amendment." *Jones v. Lopez*, 689 F. App'x 337, 339 (5th Cir. 2017) (per curiam) (emphasis added); *compare Stephen v. McClelland*, 632 F. App'x 177, 184–85 (5th Cir. 2015) (per curiam), *and Grant v. City of Houston*, 625 F. App'x 670, 675 (5th Cir. 2015) (per curiam), *and Romero v. Bexar County*, 993 F. Supp. 2d 658, 661–62 (W.D. Tex. 2014), *with Jones*, 689 F. App'x 339–41, *and Kincheloe v. Caudle*, No. A-09-CA-010-LY, 2009 WL 3381047, at *6 (W.D. Tex. Oct. 16, 2009), *report and recommendation adopted*, 2009 WL 10699745 (W.D. Tex. Dec. 7, 2009). But not every circumstance in which an officer shoots a pet dog constitutes a Fourth Amendment violation.

Because the reasonability of Defendant's conduct remained at issue, the Court did not decide whether it was reasonable for Defendant to shoot the pit bull. *See* ECF No. 50 at 27 (acknowledging "the reasonableness of an officer's conduct under the Fourth Amendment is often a question that requires the input of a jury" (quoting *Kincheloe*, 2009 WL 3381047, at *7)). If the

jury determined it reasonable for Defendant to shoot the pit bull — for example, if the jury found the dog acted aggressively — then Defendant would not have violated Plaintiffs' constitutional rights. *See* ECF No. 131 at 2 (Question 1: "Did the Plaintiffs prove by a preponderance of the evidence that Defendant Killian acted in an objectively unreasonable manner by shooting their dog on June 20, 2016?").

If Defendant violated a constitutional right, however, the Court would then ask whether qualified immunity remained appropriate because Defendant's actions were "objectively reasonable" in light of "law which was clearly established at the time of the disputed action." *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004); *see also Wallace v. Comal County*, 400 F.3d 284, 289 (5th Cir. 2005) ("Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable."); *Thomas v. City of Dallas*, 175 F.3d 358, 364 (5th Cir. 1999) (holding qualified immunity requires showing that conduct "was objectively unreasonable in light of legal rules clearly established"); Lisa R. Eskow & Kevin W. Cole, *The Unqualified Paradoxes of Qualified Immunity: Reasonably Mistaken Beliefs, Reasonably Unreasonable Conduct, and the Specter of Subjective Intent That Haunts Objective Legal Reasonableness*, 50 BAYLOR L. REV. 869, 875–78 (1998) (distinguishing reasonableness inquiries in Fourth Amendment analysis and qualified-immunity analysis). Those actions should be judged in light of the circumstances confronted — without the benefit of hindsight. *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). A "defendant's acts are held to be objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Council — President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002) (internal marks omitted). In essence,

Plaintiffs would bear the burden to demonstrate that *no reasonable officer* could have believed shooting the pit bull to be proper. *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994).

"For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." *Thompson v. Upshur County*, 245 F.3d 447, 460 n.9 (5th Cir. 2001) (internal marks omitted). So, the Court asked the jury whether another reasonable officer in Defendant's position could have shot the pit bull.[3] *See* ECF No. 131 at 2 (Question 2: "Did the Plaintiffs prove by a preponderance of the evidence that no reasonable officer could have believed that shooting the dog was lawful?"). The Court could not have adjudicated Defendant's qualified-immunity defense without first deciding whether Defendant violated a clearly established constitutional right. And — as discussed — whether Defendant violated a clearly established constitutional right remained a question for the jury to answer.[4]

---

[3] Although "qualified immunity ordinarily should be decided by the court long before trial, if the issue is not decided until trial the defense goes to the jury which must then determine the objective legal reasonableness of the officers' conduct." *McCoy v. Hernandez*, 203 F.3d 371, 376 (5th Cir. 2000); *see also Snyder v. Trepagnier*, 142 F.3d 791, 799 (5th Cir. 1998).

[4] Plaintiffs' third argument asserts the jury could have found Defendant "knowingly violated the law" based on certain vague evidence they attempt to highlight — but do not cite — in the record. ECF No. 161 at 6; *cf. Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) ("Judges are not like pigs, hunting for truffles buried in briefs." (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (per curiam))); *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 n.7 (5th Cir. 1992) (It is not this Court's duty to "sift through the record in search of evidence to support a party's" position.). But subjective intent is not part of the qualified-immunity analysis. *See Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008). Whether qualified immunity applies is a "necessarily objective" determination, and "reasonableness" is the "touchstone." *Poole v. City of Shreveport*, 691 F.3d 624, 630 (5th Cir. 2012). In fact, "subjective intent is *irrelevant*." *Id.* (emphasis added).

*Harlow v. Fitzgerald* made clear that the qualified-immunity inquiry *precludes inquiries* into a defendant's actual knowledge of the law. 457 U.S. 800, 817 (1982); *Halperin v. Kissinger*, 807 F.2d 180, 186 (D.C. Cir. 1986) ("[T]he qualified immunity defense is not to be denied because the defendant official in fact knew (even though most people would not) that his action was categorically unlawful, or that it violated the plaintiff's rights because of the particular motive for which it was taken."). Thus, "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S at 341; *see also Graham*, 490 U.S. at 397 ("[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, *without regard to their underlying intent or motivation*." (emphasis added)); *Crawford-El v. Britton*, 523 U.S.

2. <u>Plaintiffs knew Defendant's qualified-immunity defense remained for trial.</u>

At least until the Defendant's Renewed Judgment as a Matter of Law, Plaintiffs understood qualified immunity remained an issue to be litigated at trial. *See* ECF No. 50 at 25, 27 (recommending summary judgment be denied on unreasonable-seizure and qualified-immunity issues related to the pit bull because "there is a genuine dispute of material fact as to whether the Plaintiffs' dogs objectively posed a threat to Deputy Killian that justified his use of force against them"); ECF No. 60 at 2–3 (adopting Magistrate Judge's pit bull-related FCR and leaving the reasonableness of Defendant's actions at issue for trial); ECF No. 89 at 9–10 (Plaintiffs object to qualified-immunity instruction in joint-proposed jury charge); ECF No. 89 at 16 (Defendant objects to Plaintiffs' proposed questions regarding qualified immunity in joint-proposed jury charge); ECF No. 92 at 3 (Plaintiffs discuss qualified-immunity question in joint-proposed jury charge); ECF No. 107 at 9 (Plaintiffs object to qualified-immunity instruction in amended joint-proposed jury charge); ECF No. 107 at 17 (Defendant objects to Plaintiffs' proposed questions regarding qualified immunity in amended joint-proposed jury charge); Pt. Tr. at 28 (discussing whether Chief Birkenfeld would testify about qualified immunity); Tr. at 85 (discussing again whether Chief Birkenfeld would testify about qualified immunity); Tr. at 99–100 (discussing cases related to qualified immunity); Tr. at 139–140 (Defendant states "one of the issues in this lawsuit was qualified immunity, and that issue remained for trial" when moving for judgment as a matter of law); ECF No. 124 at 2–3 (moving for judgment as a matter of law based on qualified-immunity defense); Tr. at 141 (Plaintiffs acknowledge "[q]ualified immunity was an

---

574, 588 (1998) ("Evidence concerning the defendant's subjective intent is simply irrelevant to [the qualified-immunity analysis]."); *Snyder*, 142 F.3d at 799; *Babb*, 33 F.3d at 487 n.8; William Baude, *Is Qualified Immunity Unlawful?*, 106 CAL. L. REV. 45, 60–61 (2018) ("[E]ven the official who acts in *bad faith* is entitled to the defense if a different official could have reasonably made the mistake."). Moreover, the jury made no explicit finding that Defendant *subjectively knew* shooting the pit bull violated the law, and the uncited evidence Plaintiffs attempt to highlight does not support such a finding.

issue that was brought up by the Defense in summary judgment, and this Court ruled by adopting the Report and Recommendation of the Magistrate [Judge] that summary judgment is not appropriate in this case"); Tr. at 164–66 (Plaintiffs cross-examine Defendant about qualified immunity); Tr. at 222 (discussing qualified immunity); Tr. at 303, 305–06 (Plaintiffs cross-examine Chief Birkenfeld about qualified immunity); Tr. at 328 (discussing expert report in qualified-immunity cases); Tr. at 338 (Plaintiffs acknowledge parties "still dispute this thing of qualified immunity"); Tr. at 338–39 (Defendant discusses qualified-immunity burden); Tr. at 339–40 (Court discusses qualified-immunity burden); Tr. at 343 (Defendant argues in favor of judgment as a matter of law on qualified-immunity grounds); Tr. at 343–44 (Court discusses why it deferred ruling on judgment as a matter of law motion based on qualified immunity); Tr. at 344 (Plaintiffs misstate qualified-immunity burden); Tr. at 346 (Plaintiffs acknowledge qualified-immunity is at issue during trial and again misstate burden); Tr. at 346–47 (Plaintiffs acknowledge: "there is a genuine dispute that has to be resolved by the jury if the pit bull's actions reasonably caused Mr. Killian to reasonably fear for his life so that qualified immunity could apply. . . . If the jury decides in their deliberation that the pit bull presented an objective threat . . . it would be appropriate for Mr. Killian to win the case on qualified immunity."); Tr. at 348 (Plaintiffs discuss qualified-immunity requirements); Tr. at 362–65 (Court discusses qualified immunity references in jury charge); ECF No. 130 at 5, 6–7 (instructing the jury regarding qualified immunity); Tr. at 403–05 (Court's charge references qualified immunity); Tr. at 430, 434 (Plaintiffs' attorney references qualified immunity and misstates burden in closing argument); Tr. at 445 (Defendant's counsel references qualified immunity in closing argument); ECF No. 131 at 2 (asking jury to answer questions related to qualified immunity); ECF No. 142 at 2–3 (moving for renewed judgment as a matter of law based on qualified-immunity defense).

But despite previously proposing jury questions regarding and repeatedly referencing qualified immunity, Plaintiffs argue the Court resolved all qualified-immunity issues several years ago. *See* ECF No. 148 at 4, 8. The above-listed citations indicate Plaintiffs knew Defendant's qualified-immunity defense remained for trial. Accordingly, the Court has reason to believe Plaintiffs negligently —and perhaps *intentionally* — mischaracterized the issues remaining for trial. Under either circumstance, Plaintiffs' conduct is likely sanctionable. *See, e.g.*, FED. R. CIV. P. 11(b).

### B. Plaintiffs Failed to Present Evidence of How a Reasonable Officer Would Act in Defendant Killian's Shoes

Despite the caselaw cited above, Plaintiffs contend they "needed only to present evidence to the jury" that the pit bull was non-threatening. ECF No. 161 at 4. Plaintiffs argue they supplied "more than enough evidence to show qualified immunity is unavailable" and such evidence "was overwhelming." *Id.* The Court disagrees.

Notwithstanding repeated, explicit admonishments, Plaintiffs begin their evidentiary argument by *again* misstating the law: "Assuming *arguendo* that Plaintiffs did have an affirmative burden at trial to establish what a reasonable officer would or would not do, both Sheriff Riley and Chief Birkenfeld established that qualified immunity in this case turns on a credibility determination." *Id.* Plaintiffs' multiple misstatements may be attributable to their negligent legal research, rather than bad faith. But based on their abundance, the Court is unsure. *See, e.g.*, Tr. at 335 ("Plaintiff[s] never had to oppose [Defendant's] affirmative defense because it . . . . wasn't raised and supported by any evidence until [Defendant] testified, and then possibly when [Chief Birkenfeld] testified."); *id.* at 337 (seeking to recall Sheriff Riley because "new things were raised," *i.e.*, whether a reasonable officer would have shot the pit bull); *id.* at 344 ("Qualified immunity is an affirmative defense, and it's our position [Defendant] ha[s] not met [his] burden of

11

production related to that defense."); *id.* at 346 ("[T]he defense of qualified immunity, which is immunity from lawsuit, is in the position at trial as an affirmative defense, meaning that, in the trial, it was up to the Defense to raise — to meet their burden of production to put on evidence that no reasonable officer would — or any reasonable officer would have acted the way that [Defendant] did and in the circumstances that [Defendant] did.").

Plaintiffs were apprised of their burden as early as the Magistrate Judge's FCR. *See* ECF No. 50 at 9 n.12 ("Deputy Killian has asserted the defense of qualified immunity in his motion for summary judgment. Therefore, *the burden has shifted to the Plaintiffs to demonstrate that he is not entitled to qualified immunity.*" (emphasis added)). Plaintiffs were also reminded of their burden throughout this litigation and trial. *See, e.g.*, Tr. at 146–47, 344 (The Court "delayed adjudication of this motion because it was [the Court's] understanding that Plaintiff[s] counsel, in attempting to meet their burden of proof under qualified immunity law and the Fifth Circuit, [ ] — was attempting to adduce some of that testimony about what a reasonable officer would or would not do during their cross-examination of the defendant in this case. So [the Court] wanted to hear that evidence and then allow for that before deciding this motion."); Tr. at 338 (Defendant states it is Plaintiffs' burden to overcome qualified immunity); Tr. at 339 (Court did not "find it plausible that there's any trial strategy where Plaintiffs' counsel did not know that they bore the burden to show that officers violated their clients' clearly established right" in order to overcome qualified immunity.); Tr. at 340 (Court reads *Templeton v. Jarmillo*, 28 F.4th 618 (5th Cir. 2022), aloud, and emphasized Plaintiffs' burden); Tr. at 343 (Defendant argues Plaintiffs "have not met their burden."); Tr. at 348 (Court clarifies Plaintiffs' burden, again). And the Court apprised Plaintiffs of their burden as recently as August 12, 2022. *See, e.g.*, ECF No. 159 at 22–23.

Contrary to the Court's constant reminders, to date, Plaintiffs will only assume their burden "*arguendo*." ECF No. 161 at 4. Plaintiffs' burden is — and has been — clear. *See Wilson v. Nino*, No. 21-40024, 2022 WL 3098689, at *1 (5th Cir. Aug. 4, 2022) (per curiam) ("Where, as here, a qualified immunity defense is pleaded, the burden shifts to the plaintiff to rebut it by establishing a genuine issue as to whether the defendants' allegedly wrongful conduct violated a clearly established constitutional right."); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (same); *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 250 (5th Cir. 2022) (same); *Salazar v. Molina*, 37 F.4th 278, 284 (5th Cir. 2022) (same); *Templeton*, 28 F.4th at 621 (same); *Solis v. Serrett*, 31 F.4th 975, 980 (5th Cir. 2022) (same); *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) (Once the defendant asserts qualified immunity, "the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." (quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992))); *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) ("We do 'not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.'" (quoting *Salas*, 980 F.2d at 306)). The Court could cite hundreds more readily available and easily accessible cases to make this point. Yet — as Plaintiffs have made clear from pre-trial to post-trial proceedings — they will continue to refuse to acknowledge *their* burden. The Court thus assumes Plaintiffs have made their burden-related arguments with professional negligence or in bad faith. Once again, Plaintiffs' conduct is likely sanctionable.

### C. Plaintiffs' Counsel Continues to Act Imprudently

At the end of their Motion, Plaintiffs address several previously noted "missteps that typified this litigation." ECF No. 161 at 7 (quoting ECF No. 159 at 2). Plaintiffs contend these — in their words — "alleged 'missteps' had little, if anything, to do with the Court's determination of whether qualified immunity requires judgment in favor of the defense." *Id.* Plaintiffs first

13

respond to the Court's statement that "Plaintiffs failed to timely designate a single expert witness." *Id.* (quoting ECF No. 159 at 2). Second, Plaintiffs quarrel with the Court's decision to highlight the premature appeal they took. *See id.*[5]

Whereas Plaintiffs did not detail in-depth their disagreements with the Court's decision to highlight the expert and premature appeal issues, Plaintiffs devoted significant briefing to addressing their motion to reconsider the Court's November 29, 2019 summary-judgment ruling. *Id.*; *see also* ECF No. 113. Plaintiffs correctly acknowledge "[t]he Court's written order explicitly invited 'untimely' motions." ECF No. 161 at 7–8 (quoting ECF No. 110 at 1). At the pre-trial conference — which occurred the same day the Court issued the Order Plaintiffs reference — the Court expressly stated it would adjudicate untimely motions upon a showing of "good cause" and entertain such motions "before close of business Friday." Pt. Tr. at 16–17. Plaintiffs met neither requirement. Plaintiffs filed their "untimely" motion after "close of business Friday" — making the motion doubly "untimely." Plaintiffs also failed to show "good cause." "In essence, Plaintiffs asked the Court to reconsider a two-year-old summary-judgment order, on a Friday evening, on the eve of trial." ECF No. 159 at 3; *see also* ECF No. 114 at 1 ("The parties were ordered to conclude discovery on [the unreasonable-seizure] claim on or before September 11, 2020. Exactly 350 days later and approximately 80 hours before trial, Plaintiffs filed the late-breaking Motion.").

---

[5] On December 27, 2019, after the Court adjudicated summary judgment, Plaintiffs attempted an interlocutory appeal. *See* ECF No. 62. Plaintiffs did so although the Court had not issued an appealable order or judgment. The Fifth Circuit subsequently dismissed the appeal for want of jurisdiction. *See generally* ECF No. 64. Later, despite obtaining a final judgment, Plaintiffs argued "[b]ecause the Plaintiffs have not exhausted their right to appeal . . . the ultimate success of [their] claims is not yet final" and, so, the Court should not require briefing on awardable attorney's fees and court costs. ECF No. 134 at 2. But as the Court noted: "That Plaintiffs *may attempt to appeal* their summarily adjudicated claims *does not mean* the Court's disposition of those claims is not final." ECF No. 135 at 2. And Plaintiffs acknowledged as much. *See* ECF No. 134 at 2 ("Plaintiffs may now perfect an appeal concerning the pretrial rulings."). So, the Court held, "Plaintiffs cannot argue both that resolution of their claims is 'not yet final' *and* they now 'wish to appeal the Court's pretrial rulings' on those same claims." ECF No. 135 at 2 (quoting ECF No. 134 at 1–2)).

Plaintiffs now emphasize "the motion was untimely *by 17 minutes*." ECF No. 161 at 8 (emphasis in original). Why Plaintiffs continue to argue against their tardiness is beyond the Court. Late is late. Plaintiffs also emphasize "the fact that the Court denied the motion and issued an order to show cause does not discount Plaintiffs' arguments [made in the motion]." *Id.* No. That the Court denied the motion and ordered Plaintiffs to show cause indicates Plaintiffs filed an inappropriate, untimely, and again, untimely, motion with the Court, on the eve of trial, 350 days after the Court's summary-judgment ruling. *See* ECF No. 114 at 2 (ordering Plaintiffs to "show cause why their conduct should not be sanctioned").

Plaintiffs also ignore the context in which the Court allowed parties to file "untimely" motions. At the pre-trial conference, the Court stated: "Regarding any untimely motions, . . . . [t]he Court is willing to adjudicate those. . . . So if upon review in case prep, you think that *there's something that should have been adjudicated*, I will order the parties to file those by close of business Friday." Pt. Tr. at 16–17 (emphasis added). Again, Plaintiffs ask the Court to reconsider its summary-judgment ruling 350 days after the Court issued its summary-judgment ruling.

Summary judgment was not "something that should have been adjudicated." *Id.* at 17. The Court adjudicated summary judgment on November 27, 2019. Therefore, in addition to being filed *after the untimely motion deadline* and *without good cause*, Plaintiffs' motion to reconsider the Court's summary-judgment ruling fell outside the class of untimely motions the Court indicated it would adjudicate before trial. Plaintiffs must have understood that again asking the Court to dispose of the entire case did not qualify as the type of "untimely" motion the Court agreed to consider.

Fourth, Plaintiffs take issue with the Court's acknowledgment that Plaintiffs' counsel violated the Court's Limine Order (ECF No. 106) during Plaintiffs' opening statements.

ECF No. 161 at 8. Plaintiffs acknowledge the Court determined (and Defendant agreed) it need not issue a curative instruction to the jury because "unringing the bell" would invite further attention. *See id.* at 9. But Plaintiffs fail to acknowledge that the Court issued a written reprimand to Plaintiffs' attorneys for their violation of the Limine Order. *See* ECF No. 122 at 2 ("Accordingly, counsel for Plaintiffs are hereby **REPRIMANDED** for their violation of this Court's Limine Order and **CAUTIONED** that additional violations may result in sanctions or disciplinary action.").

Fifth, Plaintiffs acknowledge Mr. Keller, one of Plaintiffs' counsel, sent a text message to the Courtroom Deputy at 10:07 p.m. ECF No. 161 at 9. Plaintiffs do not dispute the inappropriateness of the message. Instead, Plaintiffs claim — without evidence — the Courtroom Deputy "was unaffected by the timing of the text message." *Id.* Why Plaintiffs contend *it matters* whether the Courtroom Deputy was affected by the text message is perplexing. Plaintiffs are in no position to expound on whether the Courtroom Deputy was affected or unaffected by a text message sent approximately five hours after close of business.

Sixth, Plaintiffs state they "did not need to recall Sheriff Riley," as if Plaintiffs' failure to elicit testimony related to the reasonableness of Defendant's actions was a strategic decision on Plaintiffs' part. *Id.* Plaintiffs' explanation is unlikely. *See* Tr. at 339 (The Court did not "find it plausible that there's any trial strategy where Plaintiffs' counsel did not know that they bore the burden to show that officers violated their clients' clearly established right" in order to overcome qualified immunity.). Plaintiffs, in fact, did think it necessary to recall Sheriff Riley, and attempted to do so. *See id.* at 333.

The Court is unsure why Plaintiffs' counsel continue to argue against their imprudent conduct — conduct for which they have been reprimanded and have risked sanctions. Such arguments are likely made in bad faith, as Plaintiffs' counsel cannot seriously contend their actions

are not either unbecoming of members of the bar or disrespectful to this Court. Accordingly, such conduct is likely sanctionable.

### D. Plaintiffs' Counsel Must Show Cause for Their Conduct

Rule 11(c) permits a court to sanction attorneys "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated."[6] Rule 11(b) governs representations counsel make to a court: "By presenting to the court a pleading, written motion, or other paper . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the attorney makes certain representations. Such representations made in "pleading, written motion, or other paper" include: (1) "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) any "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; (3) all "factual contentions have evidentiary support." FED. R. CIV. P. 11(b)(1)–(3).[7] Sanctions "must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated" and "may include nonmonetary directives" or "an order to pay a penalty into court." FED. R. CIV. P. 11(c)(4). Northern District of Texas Local Rule 83.8 provides additional grounds for disciplinary action, including: (1) "conduct unbecoming a member of the bar"; (2) "unethical behavior"; and (3) "inability to conduct litigation properly."

Courts also possess the inherent power "to protect the efficient and orderly administration of justice and . . . to command respect for the court's orders, judgments, procedures, and

---

[6] Courts can invoke Rule 11 *sua sponte*. *See* FED. R. CIV. P. 11(c)(3) ("On its own, the court may order an attorney . . . to show cause why conduct specifically described in the order has not violated Rule 11(b).").

[7] Rule 11(b), of course, governs other possible representations unlikely to be at issue here.

17

authority." *In re Stone*, 986 F.2d 898, 902 (5th Cir. 1993) (per curiam); *see also Nat. Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1407 (5th Cir. 1993) ("A long line of cases establishes that the Rules are not always the exclusive source of a federal court's powers in civil cases."); *cf. United States v. Torres*, 751 F.2d 875, 880 (7th Cir. 1984) ("The motto of the Prussian state — that everything which is not permitted is forbidden — is not a helpful guide."). "Reliance on this inherent authority is appropriate when there is a 'wide range of willful conduct' implicating multiple rules or when the conduct at issue is altogether 'beyond the reach of the rules.'" *Sarco Creek Ranch v. Greeson*, 167 F. Supp. 3d 835, 845 (S.D. Tex. 2016) (quoting *Woodson v. Surgitek, Inc.*, 57 F.3d 1406, 1418 (5th Cir. 1995) *and Chambers v. NASCO, Inc.*, 501 U.S. 32, 51 (1991)) (internal marks omitted).

Before trial began, Plaintiffs filed an untimely motion for which the Court ordered Plaintiffs' counsel to "show cause why their conduct should not be sanctioned." ECF No. 114 at 2. The Court did not sanction Plaintiffs' counsel. During trial, Plaintiffs violated the Court's Limine Order. *See* ECF No. 122. Although the Court issued a reprimand, the Court stopped short of sanctioning Plaintiffs' counsel. Now, post-trial, Plaintiffs' counsel again engage in conduct unbecoming of members of the bar and the attorney profession, as well as disrespectful to this Court.

*First*, despite their contrary contentions, Plaintiffs knew Defendant's qualified-immunity defense remained for trial. The Court has reason to believe Plaintiffs either made this argument in bad faith or negligently — and perhaps intentionally — mischaracterized the issues remaining for trial. Therefore, the Court finds Plaintiffs' attorneys' conduct is likely sanctionable.

*Second*, Plaintiffs continue to dispute the burden they bear regarding Defendant's qualified-immunity defense. As Plaintiffs have made clear from pre-trial to post-trial proceedings,

Plaintiffs do not intend to acknowledge their burden under the law. The Court thus assumes Plaintiffs have made their burden-related arguments with negligence or in bad faith. The Court finds Plaintiffs' attorneys' conduct is likely sanctionable.

*Third*, Plaintiffs continually quarrel with the Court's recognition of their professional missteps. For instance, although Plaintiffs acknowledge they filed their untimely motion late, they essentially argue "it was not really *that* late, so what's the big deal?" *See* ECF No. 161 at 8 (stating "the motion was untimely *by 17 minutes*" (emphasis in original)). Plaintiffs also argue their violation of the Court's Limine Order was, in essence, "not a big deal" despite being reprimanded for their violation. And perhaps most shockingly, Plaintiffs argue — without evidence — that the Courtroom Deputy "was unaffected by the timing of the text message" Plaintiffs' counsel sent her at 10:07 p.m. after the first day of trial. ECF No. 161 at 9. Plaintiffs have no basis for their assertion and fail to provide any reason why the Courtroom Deputy's feelings about the inappropriate text message justifies their actions. Collectively — and alongside their flippant arguments — the Court finds Plaintiffs' attorneys' conduct is likely sanctionable.

In short, Plaintiffs' counsel continue to engage in conduct unbecoming of members of the bar and the attorney profession, disrespectful to this Court, and offensive to the United States judiciary. From pre-trial to post-trial, and whether considered separately or in total, Plaintiffs' attorneys' conduct is likely sanctionable. Accordingly, the Court **ORDERS** Plaintiffs' counsel to **SHOW CAUSE** for their conduct. Plaintiffs' counsel must show good cause in writing **by 5:00 p.m. (CDT), on or before October 7, 2022.** Each member of Plaintiffs' counsel must separately apprise the Court — in no more than ten (10) pages — as to why he or other members of Plaintiffs' counsel should not be sanctioned. If Plaintiffs' counsel fail to show good cause for

their conduct, the Court may order Plaintiffs' counsel to appear in person, reprimand counsel, or issue appropriate sanctions, monetary or otherwise.

**SO ORDERED.**

September 30, 2022

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE